# EXHIBIT B

Hearing Date: 6/28/2023 9:30 AM
Location: Court Room 2008
Judge: Calendar, 9

FILED
2/28/2023 9:37 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH01940
Calendar, 9
21648072

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (03/15/21) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

JOSE LOPEZ,
on behalf of Plaintiff and a class,

Plaintiff(s)

v.

BANK OF ORRICK
and KENDALL BANK,

Defendant(s)

Kendall Bank, c/o Register Agent
Mark E. Emley, 11225 College Blvd., Suite 150
Overland Park, KS 66210
Address of Defendant(s)

Case No. 2023CH01940

Please serve as follows (check one): ○ Certified Mail ○ Sheriff Service ● Process Server Alias

## SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE**: **Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/ answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/ approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 2/28/2023 9:37 AM 2023CH01940

Summons - Alias Summons                                    (03/15/21) CCG 0001 B

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

⊙ Atty. No.: 41106           Witness date _____
○ Pro Se 99500

Name: Daniel A. Edelman      2/28/2023 9:37 AM IRIS Y. MARTINEZ

Atty. for (if applicable):          Iris Y. Martinez, Clerk of Court

Jose Lopez

Address: 20 S. Clark St., Ste. 1500     ☐ Service by Certified Mail: _____

City: Chicago          ☐ Date of Service: _____
           (To be inserted by officer on copy left with employer or other person)

State: IL   Zip: 60603

Telephone: (312) 739-4200

Primary Email: courtcl@edcombs.com

FILED DATE: 2/28/2023 9:37 AM 2023CH01940

FILED DATE: 2/28/2023 9:37 AM    2023CH01940

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date.  Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:    (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:    (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:    (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:    (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:    (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:    (708) 232-4551

FILED
2/28/2023 10:42 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH01940
Calendar, 9
21650711

Atty. No. 41106

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| JOSE LOPEZ,<br>on behalf of Plaintiff and the class<br>described herein,<br><br>    Plaintiff,<br><br>vs.<br><br>BANK OF ORRICK<br>and KENDALL BANK,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 2023-CH-01940

Zoom Meeting ID: 956 5899 1093
Password: 129359

**NOTICE OF MOTION**

**TO:**    Bank of Orrick              Kendall Bank
         11225 College Blvd., Suite 150    c/o Registered Agent Mark E. Emley
         Overland Park, KS 66210       11225 College Blvd., Suite 150
                                Overland Park, KS 66210

   **PLEASE TAKE NOTICE** that, on Monday, May 1, 2023 at 9:00 a.m., we shall appear
before the Honorable Judge Horan, presiding in Room 2008 of the Richard J. Daley Center, 50
W. Washington Street, Chicago, Illinois 60602 **via Zoom or telephonic means** and there present
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**, a copy of which is attached
hereto and hereby served upon you.

                     Respectfully submitted,

                     */s/ Daniel A. Edelman*
                     Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER**
   **& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

1

**CERTIFICATE OF SERVICE**

I, Daniel A. Edelman, certify that on Tuesday, February 28, 2023, this document was placed for service with the complaint to the following parties:

Bank of Orrick
11225 College Blvd., Suite 150
Overland Park, KS 66210

Kendall Bank
c/o Registered Agent Mark E. Emley
11225 College Blvd., Suite 150
Overland Park, KS 66210

<em>/s/ Daniel A. Edelman</em><br>Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER**
 **& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

FILED DATE: 2/28/2023 10:42 AM  2023CH01940

Hearing Date: 6/28/2023 9:30 AM
Location: Court Room 2008
Judge: Calendar, 9

FILED
2/28/2023 9:37 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH01940
Calendar, 9
21648072

Atty. No. 41106

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

JOSE LOPEZ,                             )
on behalf of Plaintiff and the class    )
described herein,                       )
                                        )
          Plaintiff,                    )
                                        )
     vs.                                )     2023CH01940
                                        )
BANK OF ORRICK                          )
and KENDALL BANK,                       )
                                        )
          Defendants.                   )

<u>**COMPLAINT – CLASS ACTION**</u>

1.      Plaintiff Jose Lopez brings this action to secure redress for violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), and the Illinois Consumer Fraud Act, 815 ILCS 505/2, by Defendants Bank of Orrick and Kendall Bank, in connection with "Vault" open end credit agreements.

**PARTIES**

2.      Plaintiff Jose Lopez is a resident of Chicago.

3.      Defendant Bank of Orrick is a Missouri chartered bank with a place of business at 11225 College Blvd., Suite 150, Overland Park, KS 66210. It does business under the assumed name of "Vault by Bank of Orrick."

4.      Defendant Kendall Bank is a Kansas chartered bank with a place of business at 11225 College Blvd., Overland Park, KS 66210. It also does business under the assumed name of "Vault." Its registered agent is Mark E. Emley, 11225 College Blvd., Overland Park, KS 66210.

5.      Defendants are under common ownership and management and act in concert to make high-interest lines of credit under the name "Vault."

**FACTS**

6.      Plaintiff Jose Lopez obtained an open-end "Vault" line of credit in June 2022.

FILED DATE: 2/28/2023 9:37 AM   2023CH01940

7.     The account opening documents are issued by Kendall Bank (Exhibit A). They are a form document.

8.     Later documents such as monthly statements (Exhibits B through Q) purport to come from "Vault" or "Vault by Bank of Orrick" and direct inquiries to "Vault by Bank of Orrick." They are also form documents.

9.     The obligation to issue monthly statements that comply with TILA is that of the "creditor."

10.    Plaintiff Jose Lopez borrowed money on the line of credit.

11.    Plaintiff used the money for personal, family or household purposes and not for business purposes.

12.    The "Vault" credit arrangement constitutes "open end" credit.

13.    "Open end" credit is defined in 15 U.S.C. § 1602(j) as follows:

(j)The terms "open end credit plan" and "open end consumer credit plan" mean a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance. A credit plan or open end consumer credit plan which is an open end credit plan or open end consumer credit plan within the meaning of the preceding sentence is an open end credit plan or open end consumer credit plan even if credit information is verified from time to time.

14.    The annual percentage rate on the line of credit was 379%.

15.    Mr. Lopez was sent monthly statements of which examples are attached as Exhibits B-Q. They purport to come from "Vault" or "Vault by Bank of Orrick" and direct inquiries to "Vault by Bank of Orrick."

16.    Both Kendall Bank, the issuer and original creditor of the line of credit, and Bank of Orrick, identified as the creditor on the monthly statements, are responsible for the contents of the monthly statements.

17.    TILA, at 15 U.S.C. § 1637, requires certain information about the length of time necessary to repay open end credit to appear on each monthly statement:

(b)    Statement required with each billing cycle

2

FILED DATE: 2/28/2023 9:37 AM   2023CH01940

The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable: . . .

    (11) . . .

        (B)    Repayment information that would apply to the outstanding balance of the consumer under the credit plan, including—

                (i)    the number of months (rounded to the nearest month) that it would take to pay the entire amount of that balance, if the consumer pays only the required minimum monthly payments and if no further advances are made;

                (ii)    the total cost to the consumer, including interest and principal payments, of paying that balance in full, if the consumer pays only the required minimum monthly payments and if no further advances are made;

                (iii)    the monthly payment amount that would be required for the consumer to eliminate the outstanding balance in 36 months, if no further advances are made, and the total cost to the consumer, including interest and principal payments, of paying that balance in full if the consumer pays the balance over 36 months; and

                (iv)    a toll-free telephone number at which the consumer may receive information about accessing credit counseling and debt management services.

        (C)

                (i)    Subject to clause (ii), in making the disclosures under subparagraph (B), the creditor shall apply the interest rate or rates in effect on the date on which the disclosure is made until the date on which the balance would be paid in full.

                (ii)    If the interest rate in effect on the date on which the disclosure is made is a temporary rate that will change under a contractual provision applying an index or formula for subsequent interest rate adjustment, the creditor shall apply the interest rate in effect on the date on which the disclosure is made for as long as that interest rate will apply under that contractual provision, and then apply an interest rate based on the index or formula in effect on the applicable billing date.

        (D)    All of the information described in subparagraph (B) shall—

                (i)    be disclosed in the form and manner which the Bureau shall

FILED DATE: 2/28/2023 9:37 AM    2023CH01940

prescribe, by regulation, and in a manner that avoids duplication; and

(ii)    be placed in a conspicuous and prominent location on the billing statement.

(E)    In the regulations prescribed under subparagraph (D), the Bureau shall require that the disclosure of such information shall be in the form of a table that—

(i)    contains clear and concise headings for each item of such information; and

(ii)    provides a clear and concise form stating each item of information required to be disclosed under each such heading.

(F)    In prescribing the form of the table under subparagraph (E), the Bureau shall require that—

(i)    all of the information in the table, and not just a reference to the table, be placed on the billing statement, as required by this paragraph; and

(ii)    the items required to be included in the table shall be listed in the order in which such items are set forth in subparagraph (B).

(G)    In prescribing the form of the table under subparagraph (D), the Bureau shall employ terminology which is different than the terminology which is employed in subparagraph (B), if such terminology is more easily understood and conveys substantially the same meaning.

18.    This disclosure is commonly known as the "Schumer Box."

## CLASS ALLEGATIONS

19.    Plaintiff brings this action on behalf of a class.

20.    The class consists of (a) all individuals with Illinois addresses (b) who were sent monthly statements on a "Vault" line of credit with a positive outstanding balance (c) at any time during a period beginning one year (Count I) or three years (Count II) prior to the filing of this action and ending 20 days after the filing of this action.

21.    Plaintiff may alter the class definition to conform to developments in the case and discovery.

4

FILED DATE: 2/28/2023 9:37 AM  2023CH01940

22.     On information and belief, based on the use of form documents by Defendants, there are more than forty class members, and the class is so numerous that joinder of all members is not practicable.

23.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a.    Whether the monthly statements violate TILA;

    b.    Whether the monthly statements violate the Illinois Consumer Fraud Act.

24.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

25.     A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.    Individual actions are not economically feasible.

    b.    Members of the class are likely to be unaware of their rights;

    c.    Congress intended class actions to be the principal enforcement mechanism under TILA.

## COUNT I – TILA

26.     Plaintiff incorporates paragraphs 1-25.

27.     Defendants failed to provide the "Schumer Box."

28.     It is the standard policy and practice of Defendants to fail to provide the "Schumer Box."

29.     As a result, Plaintiff paid Defendants an excessive amount of interest.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendants for:

    a.    Actual damages;

    b.    Statutory damages;

FILED DATE: 2/28/2023 9:37 AM   2023CH01940

    c.     Attorney's fees, litigation expenses and costs of suit; and

    d.     Such other or further relief as is proper.

<u>**COUNT II – CONSUMER FRAUD ACT**</u>

30.    Plaintiff incorporates paragraphs 1-25 and 27-29.

31.    Defendants intentionally omitted required disclosures for the purpose and with the effect of inducing consumers to use unconscionably priced credit.

32.    Defendants engaged in such conduct in the course of trade and commerce.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendants for:

    a.     Actual damages;

    b.     Punitive damages;

    c.     Attorney's fees, litigation expenses and costs of suit;

    d.     Such other or further relief as is proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com
Atty. No. 41106 (Cook)

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

/s/ *Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
**EDELMAN, COMBS, LATTURNER**
**& GOODWIN, LLC**
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

FILED DATE: 2/28/2023 9:37 AM  2023CH01940

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

Atty. No. 41106

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| JOSE LOPEZ,<br>on behalf of Plaintiff and the class<br>described herein,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF ORRICK<br>and KENDALL BANK,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF DANIEL A. EDELMAN

Daniel A. Edelman declares under penalty of perjury, as provided for by 735 ILCS 5/1-109, that the following statements are true:

1.      Edelman, Combs, Latturner & Goodwin, LLC, has 5 principals, Daniel A. Edelman, Tara L. Goodwin, Julie Clark, Heather Kolbus, and Cassandra P. Miller, and four associates. Member James O. Latturner retired in 2020 and Cathleen M. Combs at the end of 2021.

2.      **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, through both class and individual actions. He is the author of the chapters on the "Fair Debt Collection Practices Act," "Truth in Lending Act," and "Telephone Consumer Protection Act" in *Illinois Causes of Action* (Ill. Inst. For Cont. Legal Educ. 2020 and earlier editions), author of *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2008, 2011, 2014, 2019, 2022), author of *Predatory Mortgage Lending* and Servicing (Ill. Inst. for Cont. Legal. Educ. 2022), co-author of Rosmarin & Edelman, *Consumer Class Action Manual* (2d-4th editions), National Consumer Law Center 1990, 1995 and 1999);, *Illinois Consumer Law*, in Consumer Fraud and Deceptive Business Practices Act and Related Areas Update (Chicago Bar Ass'n 2002); *Payday Loans: Big Interest Rates and Little Regulation*, 11 Loy.Consumer L.Rptr. 174 (1999); author of *Consumer Fraud and Insurance Claims*, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," *Ohio Consumer Law* (1995 ed.); co-author of *Fair Debt Collection: The Need for Private Enforcement*, 7 Loy.Consumer L.Rptr. 89 (1995); author of *An Overview of The Fair Debt Collection Practices Act*, in Financial Services Litigation, Practicing Law Institute (1999); co-author of *Residential Mortgage Litigation*, in Financial Services Litigation, Practicing Law Institute (1996); author of *Automobile Leasing: Problems and Solutions*, 7 Loy.Consumer L.Rptr. 14 (1994); author of *Current Trends in Residential Mortgage Litigation*, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); co-author of *Illinois Consumer Law* (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, *Attorney Liability Under the Fair Debt Collection Practices Act* (Chicago Bar Ass'n 1996); and author of *The Fair Debt Collection Practices Act: Recent Developments*, 8 Loy.Consumer L. Rptr. 303 (1996), among

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

others. Mr. Edelman is also a frequent speaker on consumer law topics for various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conference, and the Illinois Institute for Continuing Legal Education, and he has testified on behalf of consumers before the Federal Trade Commission and the Illinois legislature. He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Sixth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Courts for the Eastern and Western Districts of Wisconsin, and the Supreme Court of Illinois. He is a member of the Northern District of Illinois trial bar.

3.      **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988) and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). Ms. Goodwin was Chair of the Chicago Bar Association's Consumer Law Committee from 2007 - 2010, and she has previously been on the faculty of the Practicing Law Institute's Consumer Financial Services Institute in Chicago, speaking on issues relating to the Fair Debt Collection Practices Act and mortgage litigation. Ms. Goodwin spoke at the 2016 Conference on Consumer Finance Law on mortgage servicing issues. Ms. Goodwin has also been a frequent speaker at the Chicago Bar Association, speaking on topics such as how to assist consumers with credit reporting problems, developments in class action law and arbitration agreements in consumer contracts. **Reported Cases.** *Aleksic v. Experian Information Solutions, Inc.*, 13cv7802, 2014 WL 2769122, 2014 U.S. Dist. LEXIS 83086 (N.D.Ill. June 18, 2014); *Taylor v. Screening Reports, Inc.*, 13cv2886, 2015 WL 4052824, 2015 U.S. Dist. LEXIS 86262 (N.D.Ill. July 2, 2015); *Williams v. Chartwell Financial Services, Ltd.*, 204 F.3d 748 (7th Cir. 2000); *Hillenbrand v. Meyer Medical Group*, 288 Ill.App.3d 871, 682 N.E.2d 101 (1st Dist. 1997), later opinion, 308 Ill.App.3d 381, 720 N.E.2d 287 (1st Dist. 1999); *Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2000); *Large v. Conseco Fin. Servicing Co.*, 292 F.3d 49 (1st Cir. 2002); *Flippin v. Aurora Bank, FSB*, 12cv1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Henry v. Teletrack, Inc.,* 11cv4424, 2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill. March 7, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11cv 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917  (N.D.Ill. Feb. 9, 2012); *Bunton v. Cape Cod Village, LLC*, 09cv1044, 2009 WL 2139441, 2009 U.S. Dist. LEXIS 57801 (C.D.Ill. July 6, 2009); *Wilson v. Harris N.A.*, 06cvJuly 9, 20205840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007); *Carbajal v. Capital One*, 219 F.R.D. 437 (N.D.Ill. 2004); *Russo v. B&B Catering*, 209 F.Supp.2d 857 (N.D.Ill. 2002); *Romaker v. Crossland Mtg. Co.*, 94cv3328, 1996 WL 254299, 1996 U.S.Dist. LEXIS 6490 (N.D.Ill. May 10, 1996); *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill 1996). Ms. Goodwin is a member of the Illinois bar and is admitted in the Seventh, First, and D.C. Circuit Courts of Appeals, and the United States District Courts for the Northern and Central Districts of Illinois, and the Northern District of Indiana. She is also a member of the Northern District of Illinois trial bar.

4.      **Julie Clark** (neé Cobalovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644, 48 N.E.3d 1060 (Ill.Sup.Ct.) ; *Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Qualkenbush v. Harris Trust & Savings Bank*, 219 F. Supp.2d 935 (N.D.Ill. 2002); *Covington-McIntosh v. Mount Glenwood Memory Gardens*, 00cv186, 2002 WL 31369747, 2002 U.S. Dist. LEXIS 20026 (N.D.Ill., Oct. 21, 2002), later opinion, 2003 WL 22359626, 2003 U.S. Dist. LEXIS 18370 (N.D.Ill. Oct. 15, 2003); *Western Ry. Devices Corp. v. Lusida Rubber Prods.*, 06cv52, 2006 WL 1697119, 2006 U.S. Dist. LEXIS 43867 (N.D.Ill. June 13, 2006); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06cv4286, 2007 U.S. Dist. LEXIS

2

FILED DATE: 2/28/2023 10:11 AM 2023CH01940

42380 (N.D.Ill. June 4, 2007); *Ballard Nursing Center, Inc. v. GF Healthcare Products, Inc.*, 07cv5715, 2007 WL 3448731, 2007 U.S. Dist. LEXIS 84425 (N.D.Ill. Nov. 14, 2007); *Sadowski v. Med1 Online, LLC*, 07cv2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill. May 17, 2008); *Sadowski v. OCO Biomedical, Inc.*, 08cv3225, 2008 WL 5082992, 2008 U.S. Dist. LEXIS 96124 (N.D.Ill. Nov. 25, 2008); *ABC Bus. Forms, Inc. v. Pridamor, Inc.*, 09cv3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy v. Promius Pharma, LLC*, 09cv2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Lab., Inc.*, 10cv1315, 2010 WL 4074379, 2010 U.S. Dist. LEXIS 108339 (N.D.Ill. Oct. 12, 2010); *Garrett v. Sharps Compliance, Inc.*, 10cv4030, 2010 WL 4167157, 2010 U.S. Dist. LEXIS 109912 (N.D.Ill. Oct. 14, 2010).

     5.    **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude,* 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** *Clark v. Experian Info. Solutions, Inc.*, 8:00cv1217-22, 2004 WL 256433, 2004 U.S. Dist. LEXIS 28324 (D.S.C., Jan. 14, 2004); *DeFrancesco v. First Horizon Home Loan Corp.*, 06cv0058, 2006 WL 3196838, 2006 U.S. Dist. LEXIS 80718 (S.D.Ill. Nov. 2, 2006); *Jeppesen v. New Century Mortgage Corp.*, 2:05cv372, 2006 WL 3354691, 2006 U.S. Dist. LEXIS 84035 (N.D.Ind. Nov. 17, 2006); *Benedia v. Super Fair Cellular, Inc.*, 07cv1390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill. Sept. 26, 2007); *Gonzalez v. Codilis & Assocs., P.C.*, 03cv2883, 2004 WL 719264, 2004 U.S. Dist. LEXIS 5463 (N.D.Ill. March 30, 2004); *Centerline Equipment Corp. v. Banner Personnel Svc., Inc.*, 07cv1611, 2009 WL 1607587, 2009 U.S. Dist. LEXIS 48092 (N.D.Ill. June 9, 2009); *R. Rudnick & Co. v. G.F. Protection, Inc.*, 08cv1856, 2009 WL 112380, 2009 U.S. Dist. LEXIS 3152 (N.D.Ill. Jan. 15, 2009); *Pollack v. Cunningham Financial Group, LLC*, 08cv1405, 2008 WL 4874195, 2008 U.S. Dist. LEXIS 4166 (N.D.Ill. June 2, 2008); *Pollack v. Fitness Innovative Techs., LLC*, 08 CH 03430, 2009 WL 506280, 2009 TCPA Rep. 1858 (Ill. Cir. Ct., Jan. 14, 2009); *R. Rudnick & Co. v. Brilliant Event Planning, Inc.*, No. 09 CH 18924, 2010 WL 5774848, 2010 TCPA Rep. 2099 (Ill. Cir. Ct., Nov. 30, 2010).

     6.    **Cassandra P. Miller** is a graduate of the University of Wisconsin – Madison (B.A. 2001) and John Marshall Law School (now University of Illinois Chicago School of Law) (J.D. *magna cum laude* 2006). **Reported Cases:** *Pietras v. Sentry Ins. Co.*, 513 F.Supp.2d 983 (N.D.Ill. 2007); *Hernandez v. Midland Credit Mgmt.*, 04cv7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill. Sept. 25, 2007); *Balogun v. Midland Credit Mgmt.*, 1:05cv1790, 2007 WL 2934886, 2007 U.S. Dist. LEXIS 74845 (S.D.Ind. Oct. 5, 2007); *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870 (N.D.Ill. 2008); *Miller v. Midland Credit Management, Inc.*, 08cv780, 2009 WL 528796, 2009 U.S. Dist. LEXIS 16273 (N.D.Ill. March 2, 2009); *Frydman v. Portfolio Recovery Associates, LLC*, 11cv524, 2011 WL 2560221, 2011 U.S. Dist. LEXIS 69502 (N.D.Ill. June 28, 2011).

     7.    **Associates:**

     a.    **Carly Roman (formerly Cengher)** is a graduate of the University of Oregon (B.A., 2011), the University of California (M.A., 2015), and the University of New Hampshire School of Law (J.D. 2019). She is a member of the Illinois Bar.

     b.    **Stephen J. Pigozzi** is a graduate of the University of Wisconsin - Madison (B.A. 2007) and Chicago-Kent College of Law (J.D. 2018). He is a member of the Illinois Bar.

     c.    **Julia Ozello** is a graduate of the University of Chicago (B.A. 2016) and Case Western University School of Law (J.D. 2020). She is a member of the Illinois Bar.

     d.    **Matthew J. Goldstein** is a graduate of Lake Forest College (B.A., *magna cum laude,* 2018) and the University of Illinois Chicago School of Law (J.D., May 2021). He is a member of the Illinois Bar.

8.    The firm also has a dozen legal assistants and support staff.

9.    Since its inception, the firm has recovered more than $500 million for consumers. The types of cases handled by the firm are illustrated by the following:

10.    **Collection practices:** The firm has brought numerous cases under the Fair Debt Collection Practices Act, both class and individual.  Decisions include:  *Jenkins v. Heintz,* 25 F.3d 536 (7th Cir. 1994), aff'd  514 U.S. 291 (1995) (FDCPA coverage of attorneys); *Suesz v. Med-1 Solutions, LLC,* 757 F.3d 636 (7th Cir. 2014)(en banc); *Janetos v. Fulton, Friedman & Gullace, LLP,* 825 F.3d 317  (7th Cir. 2016); *Barbato v. Greystone Alliance, LLC,* 916 F.3d 260 (3d Cir. 2019); *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076 (7th Cir. 2013); *Soppet v. Enhanced Recovery Co.,* 679 F.3d 637 (7th Cir. 2012); *Ruth v. Triumph Partnerships,* 577 F.3d 790 (7th Cir. 2009); *Hale v. Afni, Inc.,* 08cv3918, 2010 WL 380906, 2010 U.S. Dist. LEXIS 6715 (N.D.Ill. Jan. 26, 2010); *Parkis v. Arrow Fin Servs.,* 07cv410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Foster v. Velocity Investments,* 07cv824, 2007 WL 2461665, 2007 U.S. Dist. LEXIS 63302 (N.D. Ill. Aug. 24, 2007); *Foreman v. PR-4 III, LLC,* 05cv3372, 2007 WL 704478, 2007 U.S. Dist. LEXIS 15640 (N.D. Ill. March 5, 2007); *Schutz v. Arrow Fin. Services,* 465 F. Supp. 2d 872 (N.D.Ill. 2006); *McMahon v. LVNV Funding, LLC,* 744 F.3d 1010 (7th Cir. 2014),  later opinion, 807 F.3d 872 (7th Cir. 2015) (collection of time-barred debts); *Siwulec v. J.M. Adjustment Servs., LLC,* 465 Fed. Appx. 200 (3d Cir. 2012) (activities of mortgage company field agents); *Fields v. Wilber Law Firm, P.C.,* 383 F.3d 562 (7th Cir. 2004); *Peter v. GC Servs. L.P.,* 310 F.3d 344 (5th Cir. 2002); *Nielsen v. Dickerson,* 307 F.3d 623 (7th Cir. 2002) (attorney letters without attorney involvement); *Boyd v. Wexler,* 275 F.3d 642 (7th Cir. 2001); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.,* 214 F.3d 872 (7th Cir. 2000); *Johnson v. Revenue Management, Inc.,* 169 F.3d 1057 (7th Cir.1999); *Keele v. Wexler & Wexler,* 95cv3483, 1995 WL 549048, 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. Sept. 12, 1995) (motion to dismiss); later opinion, 1996 WL 124452, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), aff'd, 149 F.3d 589 (7th Cir. 1998); *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Maguire v. Citicorp Retail Services, Inc.,* 147 F.3d 232 (2nd Cir. 1998); *Young v. Citicorp Retail Services, Inc.,* 97-9397, 1998 U.S.App. LEXIS 20268, 159 F.3d 1349 (2nd Cir., June 29, 1998) (unpublished); *Charles v. Lundgren & Assocs., P.C.,* 119 F.3d 739 (9th Cir. 1997); *Avila v. Rubin,* 84 F.3d 222 (7th Cir. 1996), aff'g *Avila v. Van Ru Credit Corp.,* 94cv3234, 1994 WL 649101, 1994 U.S. Dist. LEXIS 16345 (N.D.Ill., Nov. 14, 1994), later opinion, 1995 WL 22866, 1995 U.S. Dist. LEXIS 461  (N.D.Ill., Jan. 18, 1995), later opinion, 1995 WL 41425, 1995 U.S. Dist. LEXIS 461 (N.D.Ill., Jan. 31, 1995), later opinion, 1995 WL 55255, 1995 U.S. Dist. LEXIS 1502 (N.D.Ill., Feb. 8, 1995), later opinion, 1995 WL 683775, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 16, 1995);  *Tolentino v. Friedman,* 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); *Diaz v. Residential Credit Solutions, Inc.,* 965 F.Supp.2d 249 (E.D.N.Y. 2013), later opinion,  297 F.R.D. 42 (E.D.N.Y.  2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014); *Stubbs v. Cavalry SPV I,* 12cv7235,  2013 WL 1858587,  2013 U.S. Dist. LEXIS 62648 (N.D.Ill., May 1, 2013); *Osborn v. J.R.S.-I., Inc.,* , 949 F. Supp. 2d 807 (N.D.Ill. 2013); *Terech v. First Resolution Mgmt. Corp.,* 854 F.Supp.2d 537, 544 (N.D.Ill. 2012); *Casso v. LVNV Funding, LLC,* 955 F. Supp. 2d 825 (N.D.Ill.  2013); *Simkus v. Cavalry Portfolio Services, LLC,* 11cv7425, 2012 WL 1866542, 2012 U.S. Dist. LEXIS 70931 (N.D.Ill., May 22, 2012); *McDonald v. Asset Acceptance LLC,* 296 F.R.D. 513 (E.D.Mich. 2013); *Ramirez v. Apex Financial Management, LLC,* 567 F. Supp.2d 1035 (N.D. Ill. 2008); *Cotton v. Asset Acceptance, LLC,*  07cv5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill., June 26, 2008); *Buford v. Palisades Collection, LLC,* 552 F. Supp. 2d 800 (N.D.Ill. 2008); *Martin v. Cavalry Portfolio Servs., LLC,* 07cv4745, 2008 WL 4372717, 2008 U.S. Dist. LEXIS 25904 (N.D.Ill., March 28, 2008); *Ramirez v. Palisades Collection LLC,* 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07cv3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Hernandez v. Midland Credit Mgmt.,* 04cv7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill., Sept. 25, 2007) (balance transfer program); *Blakemore v. Pekay,* 895 F.Supp.972 (N.D.Ill. 1995); *Oglesby v. Rotche,* 93cv4183, 1993 WL 460841, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 5, 1993), *later opinion,* 1994 U.S.Dist. LEXIS

FILED DATE: 2/28/2023 10:11 AM  2023CH01940

4

4866, 1994 WL 142867 (N.D.Ill., April 18, 1994); *Laws v. Cheslock*, 98cv6403, 1999 WL 160236, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999); *Davis v. Commercial Check Control, Inc.*, 98cv631, 1999 WL 89556, 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); *Hoffman v. Partners in Collections, Inc.*, 93cv4132, 1993 WL 358158, 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); *Vaughn v. CSC Credit Services, Inc.*, 93cv4151, 1994 WL 449247, 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 WL 51402, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); *Beasley v. Blatt*, 93cv4978, 1994 WL 362185, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 11, 1994); *Taylor v. Fink*, 93 C 4941, 1994 WL 669605, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); *Gordon v. Fink*, 93cv4152, 1995 WL 55242, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); *Brujis v. Shaw*, 876 F.Supp. 198 (N.D.Ill. 1995).

11.     *Jenkins v. Heintz* is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act. Mr. Edelman argued it before the Supreme Court and Seventh Circuit. *Avila v. Rubin* and *Nielsen v. Dickerson* are leading decisions on phony "attorney letters." *Suesz v. Med-1 Solutions, LLC* is a leading decision on the FDCPA venue requirements. *McMahon v. LVNV Funding, LLC* is a leading decision on the collection of time-barred debts.

12.     **Debtors' rights.** Important decisions include: *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07cv3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied) (Illinois statute of limitations for credit card debts); *Parkis v. Arrow Fin Servs.*, 07cv410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Rawson v. Credigy Receivables, Inc.*, 05cv6032, 2006 WL 418665, 2006 U.S. Dist. LEXIS 6450 (N.D.Ill., Feb. 16, 2006) (same); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (collection of time-barred debts without disclosure); *Jones v. Kunin*, 99cv818, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000) (scope of Illinois bad check statute); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002) (failure to allow cosigner to take over obligation prior to collection action); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc) (venue abuse).

13.     **Telephone Consumer Protection Act.** The firm has brought a number of cases under the Telephone Consumer Protection Act, 47 U.S.C. §227, which prohibits "junk faxes," spam text messages, robocalls to cell phones, and regulates telemarketing practices. Important junk fax and spam text message decisions include: *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005); *Sadowski v. Med1 Online, LLC*, 07cv2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Benedia v. Super Fair Cellular, Inc.*, 07cv01390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill., Sept. 26, 2007); *Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768 (N.D.Ill. 2008); *ABC Business Forms, Inc. v. Pridamor, Inc.*, 09cv3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy, Inc. v. Promius Pharma, LLC*, 09cv2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Laboratory, Inc.*, 10cv1315, 2010 WL 3034709, 2010 U.S. Dist. LEXIS, 108339 (N.D.Ill., Aug. 3, 3010).

14.     The firm has also brought a number of cases complaining of robocalling and telemarketing abuse, in violation of the Telephone Consumer Protection Act. Decisions in these cases include: *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Balbarin v. North Star Capital Acquisition, LLC*, 10cv1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 21, 2011), *motion to reconsider denied*, 2011 U.S. Dist. LEXIS 58761 (N.D.Ill. 2011); *Sojka v. DirectBuy, Inc.*, 12cv9809 et al., 2014 WL 1089072, 2014 U.S.Dist. LEXIS 34676 (N.D.Ill., Mar. 18, 2014), later opinion, 35 F. Supp. 3d 996 (N.D.Ill. 2014). The firm has a leadership role in Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act Litigation, MDL No. 2295, and Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation, MDL No. 2286.

FILED DATE: 2/28/2023 10:11 AM  2023CH01940

15.   **Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, which include: *Henry v. Teletrack, Inc.,* 11cv4424,  2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill.  March 7, 2012).

16.   Another line of cases under the Fair Credit Reporting Act which we have brought, primarily as class actions, alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA.  *Cole v. U.S. Capital, Inc.,* 389 F.3d 719 (7th Cir. 2004);  *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948 (7th Cir. 2006); *Perry v. First National Bank,* 459 F.3d 816 (7th Cir. 2006).

17.   **Class action procedure:**  Important decisions include *McMahon v. LVNV Funding, LLC,* 807 F.3d 872 (7th Cir. 2015);  *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076 (7th Cir. 2013); *Crawford v. Equifax Payment Services, Inc.,* 201 F.3d 877 (7th Cir. 2000); *Blair v. Equifax Check Services, Inc.,* 181 F.3d 832 (7th Cir. 1999); *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997); *McMahon v. LVNV Funding, LLC,* 744 F.3d 1010 (7th Cir. 2014) (mootness); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.,* 2015 IL 118644, 48 N.E.3d 1060 (Ill.Sup.Ct.) (mootness),  and *Gordon v. Boden,* 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

18.   **Landlord-tenant:**  The firm has brought more than 20 class actions against landlords to enforce tenants' rights.  Claims include  failing to pay interest on security deposits or commingling security deposits.  Reported decisions include *Wang v. Williams,* 343 Ill. App. 3d 495; 797 N.E.2d 179 (5th Dist. 2003); *Dickson v. West Koke Mill Vill. P'Ship,* 329 Ill. App. 3d 341; 769 N.E.2d 971 (4th Dist. 2002); and *Onni v. Apartment Inv. & Mgmt. Co.,*  344 Ill. App. 3d 1099; 801 N.E.2d 586 (2nd Dist. 2003).

19.   **Mortgage charges and servicing practices:**  The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices.  These include MDL-899, *In re Mortgage Escrow Deposit Litigation,* and MDL-1604, *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation,* as well as the Fairbanks mortgage servicing litigation.  Decisions in the firm's mortgage cases include: *Hamm v. Ameriquest Mortg. Co.,* 506 F.3d 525 (7th Cir. 2007); *Johnson v. Thomas,* 342 Ill.App.3d 382,  794 N.E.2d 919 (1st Dist. 2003);  *Handy v. Anchor Mortgage Corp.,* 464 F.3d 760 (7th Cir. 2006); *Christakos v. Intercounty Title Co.,* 196 F.R.D. 496 (N.D.Ill. 2000); *Flippin v. Aurora Bank, FSB,* 12cv1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Kesten v. Ocwen Loan Servicing, LLC,* 11cv6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917 (N.D.Ill. Feb. 9, 2012); *Johnstone v. Bank of America, N.A.,* 173 F.Supp.2d 809 (N.D.Ill. 2001); *Leon v. Washington Mut. Bank, F.A.,* 164 F.Supp.2d 1034 (N.D.Ill. 2001); *Williamson v. Advanta Mortg. Corp.,* 99cv4784, 1999 WL 1144940, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); *McDonald v. Washington Mut. Bank, F.A.,* 99cv6884, 2000 WL 875416, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); *GMAC Mtge. Corp. v. Stapleton,* 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); *Leff v. Olympic Fed. S. & L. Ass'n,* 86cv3026, 1986 WL 10636 (N.D.Ill. Sept. 19, 1986); *Aitken v. Fleet Mtge. Corp.,* 90cv3708, 1991 WL 152533, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. July 30, 1991), later opinion, 1992 WL 33926, 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); *Poindexter v. National Mtge. Corp.,* 94cv45814, 1995 WL 242287, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); *Sanders v. Lincoln Service Corp.,* 91cv4542, 1993 WL 1125433, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. April 5, 1993); *Robinson v. Empire of America Realty Credit Corp.,* 90cv5063, 1991 WL 26593, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); *In re Mortgage Escrow Deposit Litigation,* M.D.L. 899, 1994 WL 496707, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 9, 1994); *Greenberg v. Republic Federal S. & L. Ass'n,* 94cv3789, 1995 WL 263457, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

20.   The recoveries in the escrow overcharge cases alone are over $250 million.  *Leff*

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

was the seminal case on mortgage escrow overcharges.

21.     The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

22.     **Bankruptcy:**  The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric. *Conley v. Sears, Roebuck*, 1:97cv11149 (D.Mass); *Fisher v. Lechmere Inc.*, 1:97cv3065 (N.D.Ill.).  These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. *Bessette v. Avco Financial Services*, 230 F.3d 439  (1st Cir. 2000).

23.     **Automobile sales and financing practices:**  The firm has brought many cases challenging practices relating to automobile sales and financing, including:

        a.      Hidden finance charges resulting from pass-on of discounts on auto purchases. *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927 (7th Cir. 1998).

        b.      Misrepresentation of amounts disbursed for extended warranties. *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689 (7th Cir. 1998); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); *Slawson v. Currie Motors Lincoln Mercury, Inc.*, 94cv2177, 1995 WL 22716, 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 13, 1995); *Cirone-Shadow v. Union Nissan, Inc.*, 955 F.Supp. 938 (N.D.Ill. 1997) (same); *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302 (N.D.Ill. 1995); *Shields v. Lefta, Inc.*, 888 F. Supp. 891 (N.D.Ill. 1995).

        c.      Spot delivery. *Janikowski v. Lynch Ford, Inc.*, 98cv8111, 1999 WL 608714, 1999 U.S. Dist. LEXIS 12258 (N.D.Ill., Aug. 5, 1999); *Diaz v. Westgate Lincoln Mercury, Inc.*, 93cv5428, 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. Nov. 14, 1994); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

        d.      Force placed insurance. *Bermudez v. First of America Bank Champion, N.A.*, 860 F.Supp. 580 (N.D.Ill. 1994); *Travis v. Boulevard Bank*, 93cv6847, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill. 1995); *Moore v. Fidelity Financial Services, Inc.*, 884 F. Supp. 288 (N.D.Ill. 1995).
        e.      Improper obligation of cosigners. *Lee v. Nationwide Cassell*, 174 Ill.2d 540, 675 N.E.2d 599 (1996); *Taylor v. Trans Acceptance Corp.*, 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002).

        f.      Evasion of FTC holder rule. *Brown v. LaSalle Northwest Nat'l Bank*, 148 F.R.D. 584 (N.D.Ill. 1993), later opinion, 820 F.Supp. 1078 (N.D.Ill. 1993), later opinion, 92cv8392, 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

24.     These cases also had a substantial effect on industry practices.  The warranty cases, such as *Grimaldi, Gibson, Slawson, Cirone-Shadow, Chandler*, and *Shields*, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

25.     **Predatory lending practices:**  The firm has brought numerous cases challenging

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

predatory mortgage and "payday" lending practices, both as individual and class actions. *Jackson v. Payday Financial LLC*, 764 F.3d 765 (7th Cir. 2014), *cert. denied*, 135 S.Ct. 1894 (2015); *Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572 (Ind. Sup. Ct. 2001); *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748 (7th Cir. 2000); *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007); *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760 (7th Cir. 2006); *Laseter v. Climateguard Design & Installation LLC*, 931 F.Supp.2d 862 (N.D.Ill. 2013); *Hubbard v. Ameriquest Mortg. Co.*, 624 F.Supp.2d 913 (N.D.Ill. 2008); *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D.Ill. 2007); *Pena v. Freedom Mortg. Team, Inc.*, 07cv552, 2007 WL 3223394, 2007 U.S. Dist. LEXIS 79817 (N.D.Ill., October 24, 2007); *Miranda v. Universal Fin. Group, Inc.*, 459 F. Supp. 2d 760 (N.D.Ill. 2006); *Parker v. 1-800 Bar None, a Financial Corp., Inc.*, 01cv4488, 2002 WL 215530 (N.D.Ill., Feb. 12, 2002); *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D.Mich. 2001); *Van Jackson v. Check 'N Go of Illinois, Inc.*, 193 F.R.D. 544 (N.D.Ill. 2000), later opinion, 114 F. Supp. 2d 731 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1085 (N.D.Ill. 2000); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D.Tex. 2000); *Donnelly v. Illini Cash Advance, Inc.*, 00cv94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); *Jones v. Kunin*, 99cv818, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); *Davis v. Cash for Payday*, 193 F.R.D. 518 (N.D.Ill. 2000); *Reese v. Hammer Fin. Corp.*, 99cv716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); *Pinkett v. Moolah Loan Co.*, 99cv2700, 1999 WL 1080596, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); *Gutierrez v. Devon Fin. Servs.*, 99cv 2647, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); *Vance v. National Benefit Ass'n*, 99cv2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

26.   **Other consumer credit issues:** The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

a.   Phony nonfiling insurance. *Edwards v. Your Credit Inc.*, 148 F.3d 427 (5th Cir. 1998); *Adams v. Plaza Finance Co.*, 168 F.3d 932 (7th Cir. 1999); *Johnson v. Aronson Furniture Co.*, 96cv117, 1997 U.S. Dist. LEXIS 3979 (N.D.Ill., March 31, 1997), later opinion, 1993 WL 641342 (N.D.Ill., Sept. 11, 1998).

b.   The McCarran Ferguson Act exemption. *Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037 (7th Cir. 1998).

c.   Loan flipping. *Emery v. American General*, 71 F.3d 1343 (7th Cir. 1995). *Emery* limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

d.   Home improvement financing practices. *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; *Heastie v. Community Bank of Greater Peoria*, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).

e.   Insurance packing. *Elliott v. ITT Corp.*, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

27.   **Automobile leases:** The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include *Lundquist v. Security Pacific Automotive Financial Services Corp.*, 993 F.2d 11 (2d Cir. 1993); *Kedziora v. Citicorp Nat'l Services, Inc.*, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 91cv3428, 1995

U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); *Johnson v. Steven Sims Subaru and Subaru Leasing*, 92cv6355, 1993 WL 761231, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 WL 13074115, 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); *McCarthy v. PNC Credit Corp.*, 2:91CV00854 (PCD), 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994); *Simon v. World Omni Leasing Inc.*, 146 F.R.D. 197 (S.D.Ala. 1992).

28.     *Lundquist* and *Highsmith* are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the *Lundquist* case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

29.     **Insurance litigation:** Often securing recovery for a class requires enforcement of the rights under the defendant's insurance policy. The firm has extensive experience with such litigation. Reported decisions in such cases include: *Record-A-Hit, Inc. v. Nat'l Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Pietras v. Sentry Ins. Co.*, 06cv3576, 2007 WL 715759, 2007 U.S. Dist. LEXIS 16015 (N.D.Ill., March 6, 2007), later opinion, 513 F. Supp. 2d 983 (N.D.Ill. 2007); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 06cv2092, 2007 WL 2608559, 2007 U.S. Dist. LEXIS 65339 (N.D.Ill., Aug. 31, 2007); *National Fire Ins. Co. v. Tri-State Hose & Fitting, Inc.*, 06cv5256, 2007 U.S. Dist. LEXIS 45685 (N.D.Ill., June 21, 2007); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06cv4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill., June 4, 2007).

30.     Some of the other reported decisions in our cases include: *Elder v. Coronet Ins. Co.*, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); *Smith v. Keycorp Mtge., Inc.*, 151 B.R. 870 (N.D.Ill. 1992); *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); *Armstrong v. Edelson*, 718 F.Supp. 1372 (N.D.Ill. 1989); *Newman v. 1st 1440 Investment, Inc.*, 89cv6708, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. Jan. 15, 1993); *Mountain States Tel. & Tel. Co.*, v. District Court, 778 P.2d 667 (Colo. 1989); *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522 (N.D.Ill. 1988); *Haslam v. Lefta, Inc.*, 93cv4311, 1994 WL 117463, 1994 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); *Source One Mortgage Services Corp. v. Jones*, 88cv8441, 1994 WL 13664, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994); *Wilson v. Harris N.A.*, 06cv5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007). *Wendorf v. Landers*, 755 F.Supp.2d 972 (N.D.Ill. 2010); *QuickClick Loans LLC v. Russell*, 407 Ill.App.3d 46; 943 N.E.2d 166 (1st Dist. 2011), *pet. denied*, 949 N.E.2d 1103 (2011) and *Adkins v. Nestle Purina Petcare Co.*, 973 F.Supp.2d 905 (N.D.Ill. 2013).

31.     *Gordon v. Boden* is the first decision approving "fluid recovery" in an Illinois class action. *Elder v. Coronet Insurance* held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

# EXHIBIT A

## CONSENT TO ELECTRONIC COMMUNICATIONS:

You must consent to transact business with **Kendall Bank** through electronic communications in order for us to process your loan request. The following terms and conditions govern electronic communications in connection with your loan request, Open-End Credit Agreement (if approved), and any communications regarding your account with us (the "Consent").

By electronically signing this Consent, you are confirming that you have agreed to the terms and conditions of the Consent and that you have downloaded or printed a copy of this Consent for your records.

You agree that:

- Any disclosure, notice, record or other type of information that is provided to you in connection with your transaction with us, including but not limited to, the Open-End Credit Agreement, this Consent, the Truth in Lending disclosures set forth in the Open-End Credit Agreement, Privacy Policy, fee and transaction information, statements, notices of adverse action, and transaction information (collectively, "Communications"), may be sent to you electronically by posting the information at our website, www.myvaultloan.com or by sending it to you by email from us or any vendor/servicer contracted through us at any time.

- We will not be obligated to provide any Communication to you in paper form unless you specifically request us to do so.

- You may obtain a copy of any Communication by contacting us at info@myvaultloan.com or by calling us at 1-888-227-1935. You can withdraw your consent to ongoing electronic communications in the same manner, and ask that Communications be sent to you in paper or non-electronic form. We will provide you with paper copies at no charge.

- You agree to provide us with your current email address for notices, which unless notified otherwise we assume is the email address indicated above. If your email address, telephone number(s), or residence address changes, you must send us a notice of the new address/telephone number(s) by sending us an email, using secure messaging, at least five (5) days before the change.

- In order to receive electronic Communications in connection with this transaction, you will need a device with a working connection to the Internet and a working email account. Your internet browser must support the 128 bit Secure Sockets Layer (SSL) protocol, such as recent versions of Internet Explorer, Firefox, Chrome, or Safari. SSL provides a secure channel to send and receive data over the Internet through HS encryption capabilities. You will also need a printer connected to your computer to print disclosures/notices. We do not provide ISP services. You must have your own Internet Service Provider. You must also have software that permits you to receive and access documents in Portable Document form (.pdf files), such as Adobe Acrobat Reader®. To retain Communications, your access device must also have the ability to either download to your hard drive or any external media storage with sufficient electronic storage capacity, or be able to print documents.

- We may amend (add to, delete or change) the terms of this Consent by providing you with advance notice.

- You agree that you are able to view and/or electronically store the information presented at this website. You also agree to print and retain a copy of this Consent for your records.

You are free to withdraw your Consent at any time and at no charge. If at any time you wish to withdraw your Consent, you can send us your written request by mail to **11225 College Blvd, STE 150, Overland Park, KS 66210** with the details of such request. If you decide to withdraw your Consent, we will terminate your credit line account and you will no longer be able to request credit advances. You agree to pay any amount owed to Kendall Bank even if you withdraw your Consent and we terminate your credit line account. In addition, the legal effectiveness, validity, and enforceability of prior electronic Communications will not be affected.

6/28/2022 | 6:46 AM PDT

**Customer Signature**                                        **Date**

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

## OPEN-END CREDIT AGREEMENT

| Application Date: 06/28/2022<br>Effective Date: 06/29/2022 | Loan No.: ▮▮▮86<br>Credit Limit: $1,800.00 |
|---|---|
| **Lender:**<br>Kendall Bank<br>11225 College Blvd, Suite 150<br>Overland Park, KS 66210<br>Phone: 1-888-227-1935<br>Email: info@myvaultloan.com | **Borrower Name:** Jose Lopez<br>**Address:** ▮▮▮<br>**Phone:** ▮▮▮<br>**Cell Phone:**<br>**Email address:** ▮▮▮ |

### TRUTH IN LENDING DISCLOSURES

| Interest Rates and Interest Charges | |
|---|---|
| **Annual Percentage Rate (APR) for Credit Advances** | **379%** |
| **Paying Interest** | Your due date is at least 14 days after the close of each billing cycle. We begin charging interest on each credit advance from the first business day after the Disbursement Date for the credit advance proceeds. |
| **Minimum Interest Charge** | If you are charged interest, the charge will be no less than $5. |

| Fees | |
|---|---|
| **Annual Fee** | None |
| **Transaction Fees for Credit advances** | No transaction fee per advance. |
| **Penalty Fees**<br>• Late Payment<br>• Returned Payment | **None**<br>$10 |

**How We Will Calculate Your Balance**: We use a method called the "average daily balance method (including current transactions)." See Balance Computation Method below for more details.

**Billing Rights:** For information on your rights to dispute transactions and how to exercise those rights, see Billing Error Rights statement.

**Definitions:** In this Open-End Credit Agreement (the "Agreement"), the words "you," "your," and "I" mean the borrower who electronically signed this Agreement. The words "we," "us," and "our" mean Kendall Bank, a Kansas state-chartered bank. The words "Credit Line" and "Credit Line Account" means the open-end revolving line of credit described by and governed by this Agreement. The term "business day" means any calendar day other than a Saturday, Sunday or a bank or federal holiday, between the hours of 9 a.m. and 5 p.m. CST.

**Agreement; Promise to Pay:** You agree to the terms and conditions of this Agreement, and you promise to pay us, or any subsequent holder of this Agreement, all amounts advanced and any applicable Finance Charges and fees owed to us under this Agreement. You promise to timely pay at least the Minimum Payment Due set forth in each periodic billing statement and on or before the date listed in the applicable periodic billing statement (each a "Due Date"). If any Due Date falls on a date we are not open for business, then you agree to pay us on the next business day, and we will credit such payment as if we received it on the appropriate Due Date. Time is of the essence.

**Term:** The term of your Credit Line will begin as of the date of this Agreement and will continue until terminated by us as provided in this Agreement or upon your request for cancellation as further described in Canceling Your Credit Line below. We may terminate your Credit Line (1) upon the occurrence and continuance of a default under this Agreement or (2) if there is no outstanding principal balance on your Credit Line Account for one hundred eighty (180) consecutive days. All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon termination. Upon termination of your Credit Line, your ability to request credit advances will be terminated, but your obligations under this Agreement will remain in full force and effect until you pay us all amounts you owe us.

**Minimum Payment:** You agree to make the "Minimum Payment Due" shown on each periodic billing statement on or before the Due Date for such payment. The Minimum Payment Due will be a fixed amount, calculated at the time of each credit advance, equal to an amount sufficient to amortize the total outstanding principal balance (including any new credit

FILED DATE: 2/28/2023 10:11 AM    2023CH01940

advance) over an assumed period of twelve (12) to twenty four (24) months such that one half of one percent (0.5%) of the total outstanding principal balance (including any new credit advance) would be paid, assuming a normal billing cycle, by the first Minimum Payment Due following the credit advance. Your first billing cycle may be shorter or longer than a normal billing cycle. If your first billing cycle is shorter than a normal billing cycle, your first Minimum Payment Due will pay more of the outstanding principal balance. If your first billing cycle is longer than a normal billing cycle, your first Minimum Payment Due will pay less of the outstanding principal balance. The Minimum Payment Due will include all Finance Charges accrued in the applicable billing cycle, which will decline over time resulting in a higher amount of the Minimum Payment Due being applied to principal. The Minimum Payment Due will remain constant until the earlier of (1) the outstanding principal balance is paid off or (2) a new credit advance.

**Payment Methods:** You may make payments by personal check, certified check, money order, ACH debit, or as otherwise agreed in writing. All payments must be made in U.S dollars. Payments must be consistent with any payment instructions by us, including any address change provided on or with your periodic billing statement. Payments by personal check, certified check, or money order must be received by us at: Kendall Bank **11225 College Blvd, STE 150, Overland Park, KS 66210.** If payment is made consistent with our payment instructions but received after 5:00 p.m. CST on a business day, we will apply your payment to your Credit Line on the next business day.

**Application of Payments:** Unless otherwise agreed or required by applicable law, payments and other credits will be applied first to any charges or fees owing, then to accrued Finance Charges, and then to unpaid principal.

**Credit Limit:** Your Credit Line Account is an open-end line of credit for the principal amount of $1,800.00, which will be your "Credit Limit" under this Agreement. You may borrow, repay and re-borrow amounts from time to time up to your Credit Limit, subject to your continuing eligibility under this Agreement. Your "Available Credit" is the difference between your Credit Limit and all amounts you owe on your Credit Line Account, including all principal amounts and fees. Your Credit Limit is established by us and is based on the information you provide to us and on our underwriting criteria. You agree that we have the right to reevaluate the information about you from time to time to determine your Credit Limit, including requesting updated information from you and obtaining updated information about you from consumer reporting agencies or other sources. You further agree that we have the right to increase or decrease your Credit Limit, including to zero dollars ($0), at our sole discretion, subject to applicable law. Your periodic billing statement will show any changes in your Credit Limit and our current Available Credit amount. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account balance exceeds your Credit Limit, even if we have not billed you.

**Credit Advances:** We will make credit advances to you upon request from time to time up to your Credit Limit. As you repay advanced amounts, your available Credit Limit will be restored and will be available for future credit advances. Requests for credit advances must be made in increments of $100.00 and be for a minimum of $200.00. You may request a credit advance initially when signing this Agreement and in the future through your online account at **secure.myvaultloan.com.** You are not entitled to obtain a credit advance if (1) the request exceeds your Credit Limit, (2) your previous periodic payment was not paid in full and on time, or (3) if your Credit Line Account is not otherwise in good standing. We may restrict or delay the availability of credit advances to protect you and us against potential fraud, unauthorized transactions, account misconduct or misuse, or for other risk management reasons. You may not allow anyone else to use your Credit Line Account. If you do, you will be responsible for paying for all amounts borrowed and any resulting charges.

**Disbursements:** If your request for a credit advance is approved, we will process the disbursement of your credit advance proceeds within one (1) business day of the approval. You authorize us to use commercially reasonable efforts to initiate an ACH credit entry to deposit the proceeds of your credit advance into your Bank Account as described in this section. Therefore, you hereby voluntarily authorize us, our successors or assigns, to initiate an ACH credit entry to your bank account: Account type: Checking; Bank routing and transit number:⬛⬛⬛⬛and Account Number:⬛⬛⬛⬛ ("Bank Account"). You agree that we will initiate an ACH credit entry to your Bank Account for an amount consistent with this Agreement on or before the Effective Date. The date that we initiate the ACH credit entry is the "Disbursement Date." If you revoke this authorization before we credit a credit advance, then we will not be able to deposit the credit advance proceeds into your Bank Account. Despite our best efforts, unavoidable delays as a result of bank holidays, the untimely receipt of borrower verification details (if required), inadvertent processing errors, "acts of God", and/or "acts of terror" may extend the time for the deposit and may cause a change in the Disbursement Date. In the event that disbursement is delayed, the Disbursement Date will automatically adjust to the actual date of disbursement.

**Finance Charges:** Periodic Finance Charges for credit advances under your Credit Line Account will begin to accrue on the Disbursement Date of such credit advance. There is not a grace period that would allow you to avoid a Finance Charge on your credit advances. We assess a Finance Charge on your account by applying a Daily Periodic Rate to the Average Daily Balance of your Credit Line Account for each day in the billing cycle. The "Daily Periodic Rate" for your Credit Line Account is 1.03836%, which is based on an annual percentage rate of 379%. We get the Daily Periodic Rate by dividing the annual percentage rate by 365. If you are charged a Finance Charge for a billing cycle, the charge will be

DocuSign Envelope ID: F7FFFB16-AE74-437F-9B3C-2A150C54EBE7

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

no less than five dollars ($5.00). You agree that we have the right to increase or decrease the Daily Periodic Rate and the annual percentage rate it is based on, at our sole discretion, subject to applicable law. If we change the Daily Periodic Rate and you do not pay the outstanding balance on your Credit Line Account in full prior to the time the new Daily Periodic Rate goes into effect, then you will be obligated to pay the interest charges computed using the new Daily Periodic Rate. Your periodic billing statement will show any changes in the Daily Periodic Rate.

**Balance Computation Method:** To get the "Average Daily Balance" we take the beginning balance of your Credit Line Account each day, add any new credit advances, and subtract any unpaid Finance Charges and any payments or credits. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "Average Daily Balance."

**Periodic Billing Statements:** You will receive a periodic billing statement at the end of each billing cycle. The periodic billing statement will show your Credit Line Account information, including new credit advances, accrued Finance Charges, previous payments, your "New Balance," Available Credit, the Minimum Payment Due and Due Date, and other Credit Line Account information. Unless you notify us of a billing error as provided in the Billing Error Rights statement provided with this Agreement, you accept your periodic billing statement as an accurate statement of your Credit Line Account. Your periodic billing statement will be generated 14 days prior to the applicable "Payment Due Date" for such billing cycle.

**Prepayment:** You may prepay us in part or in full at any time, without incurring an additional charge, fee, or penalty. To make arrangements for prepayment, you must contact us by email at info@myvaultloan.com or by phone at 1-888-227-1935. We will then communicate with you to arrange an authorization to debit funds from your bank account, or make other arrangements for the prepayment. Partial prepayments will not eliminate your requirement to make your scheduled minimum payment.

**Returned Payment Fee:** If your check or ACH debit for payment is stopped, denied or otherwise dishonored, then, for each payment due, you agree to pay us a returned payment fee of $10.

**Verification:** You certify that the information given in connection with this Agreement is true and correct. You authorize us to verify all of the information that you gave us such as any past and/or present employment history, income and bank account details as may be necessary to process your application for a loan, determine your Credit Line, and administer your Credit Line Account with us. You also give us consent to obtain information about you from consumer reporting agencies or other sources, including to update your Credit Limit from time to time. You represent that you are not a debtor under any proceeding in bankruptcy and have no intention to file a petition for relief under any chapter of the United States Bankruptcy Code. We reserve the right to withhold funding of any credit advance, at any time prior to disbursement, to allow us to verify the information you have provided to us.

**Contact Information:** You represent that any phone number that you provide to us belongs to you and/or that you are authorized to provide that number to us. You also agree to tell us right away if you change your address or any phone number. Your address on file is the address you provided in your Credit Line Account application, unless: (a) we have received and processed a notice of a change in address that you provided in accordance with this Agreement or your most recent periodic billing statement; or (b) we are notified by the U.S. Postal Service of an address correction for you, and we decide, in good faith, to rely on the address correction notice we receive from the Postal Service. You agree to notify us immediately of any change in your mailing address, telephone numbers, or other contact information, such as your email addresses.

**Cancelling Your Credit Line Account:** You may request to cancel your Credit Line Account by contacting Customer Service at info@myvaultloan.com or 1-888-227-1935. Upon cancellation, we will terminate your ability to request credit advances. Despite cancellation, your Credit Line Account will not be closed and your obligations under this Agreement will remain in full force and effect until you pay us all amounts you owe us.

**Change in Terms:** We may change the terms of this Agreement from time to time, including, but not limited to, the annual percentage rate, Daily Periodic Rate, and other fees and charges. We may also add new terms or delete terms. Our ability to make changes to this agreement is limited by applicable law. You agree that we may communicate amendments to this Agreement to you via mail, email or other electronic means, or included in your periodic billing statements as permitted by law.

**Default and Post Judgment Interest.** You will be in default if you do not comply with your repayment obligations with respect to any borrowings on your Credit Line Account or if you fail to comply with any other terms of this Agreement. If you default, then we may give you notice of your right to cure such default as required by K.S.A. § 16a-5-110. If you fail to cure such default, then pursuant to K.S.A. § 16a-5-111, we may declare the entire outstanding principal balance plus all accrued and unpaid Finance Charges that you owe under this Agreement at once due and payable. We may initiate legal proceedings against you in accordance with the terms of this Agreement. If we accelerate the balance owing for any reason and judgment is obtained, you agree that the unpaid balance of the debt will be calculated, less any legal offset, as if payment in full had been made on the date judgment was entered. Pursuant to K.S.A. § 16-205, interest on any judgment shall continue to accrue at the rate set forth above.

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

**Our Rights and Remedies.** By choosing any one or more of the remedies provided, we do not give up our right to use another remedy later. By deciding not to use any remedy if you are in default for a particular event, we do not give up our right to consider the same event a default if it happens again. We may delay or refrain from enforcing any of its rights without waiving those rights. We reserve all other rights under applicable law.

**Right of Setoff:** To the extent permitted by applicable law, we reserve a right of setoff in all your accounts with us (whether checking, savings, or some other account), including without limitation, all accounts you may open in the future. However, this does not include any IRA or Keogh accounts or any trust accounts for which setoff would be prohibited by law. You authorize us, to the extent permitted by applicable law, and subject to any applicable notice requirements or cure rights, to charge or setoff all sums owing on this Agreement against any and all such accounts.

**Consumer Reports:** You authorize us to obtain consumer reports about you in connection with your request for credit, with respect to updating your Credit Limit, and at any time that you owe us money under this or any Agreement.

**Report of Negative Credit Information:** We may report information about your account to credit bureaus.   Late payments, missed payments, or other defaults on your loan may be reflected in your credit report.

**Complaints and Questions:** If you have a complaint or question arising out of or related to this Agreement, please contact us at info@myvaultloan.com. We may request additional documentation from you to assist us in resolving any complaints, disputes, or questions you have, and you agree to provide all reasonable assistance to facilitate us resolving any such complaint or dispute.

**Assignment and Execution:** We may assign or transfer this Agreement or any of our rights hereunder. If this Agreement is consummated, then you agree that the electronically signed Agreement we receive from you will be considered the original executed Agreement, which is binding and enforceable as to both parties.

**Severability:** If any provision of this Agreement or the application of any provision of this Agreement will be determined to be invalid, unenforceable or void, the remaining provisions of the Agreement will remain in full force and effect.

**Governing Law:** This Agreement is governed by federal law, and, to the extent state law applies, the laws of Kansas, regardless of the conflicts of laws principles of any jurisdiction, except where such application is prohibited by applicable law.

**Venue and Claims Process:** By signing this Agreement, you agree that all Disputes (as defined below) relating to this Agreement shall be decided by a state or federal court located in or having jurisdiction over Johnson County, Kansas, to the extent allowable by applicable federal and state law. For purposes hereof, "Disputes" shall mean and includes all claims arising from or related to this agreement, your application, and all other agreements with us, including, without limitation, claims related to information you previously gave us, all current and past agreements, extensions, renewals, refinancings, payment plans, collections, privacy, customer information, and also includes claims about the validity and scope of any terms of this Agreement. You further agree that prior to initiating litigation, you will contact us in attempt to settle the Dispute by calling 1-888-227-1935 or by writing to us at 11225 College Blvd, STE 150, Overland Park, KS 66210. Within fifteen days of the date we receive notice from you, telephonically or in writing, we will make written settlement offer ("Settlement Offer"). If you choose to reject the Settlement Offer, you may proceed with litigation.

**Limitation of Damages:** In no event shall we be liable to you in contract, tort, strict liability or any other cause of action for any consequential, incidental or speculative damages arising out of this Agreement in an amount greater than the principal amount of the loan under this Agreement.

**Attorneys' Fees and Costs:** You agree to pay our reasonable costs of collection, including, but not limited to court costs and attorneys' fees, not to exceed 15% of the amount due after default.

**Jury Waiver: You hereby irrevocably waive the right to a trial by jury in any action or proceeding brought by any party in connection with this Agreement or any related document.  By signing this Agreement, you acknowledge that you have made this waiver knowingly, intentionally, and voluntarily, and you acknowledge reading and understanding the meaning and ramifications of this waiver provision.  You agree that you are not relying upon any oral or written statements made by us or on our behalf, other than those contained herein, either to induce this waiver of trial by jury or to modify or nullify its effect.  You agree to take all such actions as may be required by applicable law to allow this waiver to be enforceable.**

**Final Agreement:** This Loan Agreement is a final expression of the Loan Agreement between you and Lender and may not be contradicted by evidence of any prior oral agreement or of a contemporaneous oral agreement between you and Lender. In accordance with K.S.A. § 16-118, if there are any additional terms, they are reduced in writing as follows: NONE.

**Privacy Policy:** By signing this Agreement, you acknowledge and agree to our Privacy Policy as provided with this Agreement and as stated on our website at the following link: https://www.myvaultloan.com/privacy-policy and further agree that you have reviewed and are in possession of a copy of the Privacy Policy.

FILED DATE: 2/28/2023 10:11 AM    2023CH01940

**Right to Cancel:** YOU MAY CANCEL THIS AGREEMENT, WITHOUT FINANCE CHARGES OR ANY COSTS, NO LATER THAN 5:00 PM CST OF THE NEXT BUSINESS DAY IMMEDIATELY FOLLOWING THE EFFECTIVE DATE ("CANCELLATION DEADLINE") BY EMAILING info@myvaultloan.com. IN THE EVENT THAT WE TIMELY RECEIVE YOUR WRITTEN NOTICE OF CANCELLATION ON OR BEFORE THE CANCELLATION DEADLINE BUT BEFORE ANY CREDIT ADVANCE PROCEEDS HAVE BEEN CREDITED TO YOUR BANK ACCOUNT, BOTH YOUR OBLIGATIONS AND OUR OBLIGATIONS UNDER THIS AGREEMENT WILL BE CANCELED. IN THE EVENT THAT WE TIMELY RECEIVE YOUR WRITTEN NOTICE OF CANCELLATION ON OR BEFORE THE CANCELLATION DEADLINE BUT AFTER ANY CREDIT ADVANCE PROCEEDS HAVE BEEN CREDITED TO YOUR BANK ACCOUNT, THEN YOU AUTHORIZE US TO EFFECT A DEBIT ENTRY TO YOUR BANK ACCOUNT FOR THE PRINCIPAL AMOUNT OF SUCH CREDIT ADVANCE SUBJECT TO THE FOLLOWING (1) IF WE RECEIVE THE PAYMENT OF THE PRINCIPAL AMOUNT BY THE DEBIT ENTRY TO YOUR BANK ACCOUNT, THEN BOTH YOUR OBLIGATIONS AND OUR OBLIGATIONS UNDER THIS AGREEMENT WILL BE CANCELED, OR (2) IF WE DO NOT RECEIVE PAYMENT OF THE PRINCIPAL AMOUNT OF YOUR LOAN BY DEBIT ENTRY TO YOUR BANK ACCOUNT, THEN THIS AGREEMENT WILL REMAIN IN FULL FORCE AND EFFECT.

**Consent to Telephone Communications and Messages; Call Monitoring.** By signing below, you authorize us and our servicers to call or text you on any telephone number for any mobile device or landline you provide, now or in the future to discuss your account or the repayment of your loan. Such calls or texts may be made using an automatic telephone dialing system and prerecorded or artificial voice calls and may include ringless voicemail messages by which a prerecorded voice message will be sent directly to your voicemail without causing your phone to ring. You understand you may decline to provide or revoke your consent at any time. You further understand that call and text may result in fees from your service provider. You may withdraw your consent by calling customer service at 1-888-227-1935 or by following the instructions in such communication. You understand that, from time to time, we may monitor or record telephone calls between us, and by signing below you hereby expressly consent to have your calls monitored or recorded.

**Electronic Signature**: In order to complete your transaction with us, you must electronically sign this Agreement by clicking the acknowledgement button below. The Agreement will be consummated once you sign and submit this Agreement to us.

**Customer Representations.** By signing this Agreement:

1) You acknowledge that it was filled in before you did so, and that you have received a completed copy of it. You agree that the information you provided to us prior to entering into this Agreement is accurate;
2) You warrant that you are not a debtor under any proceeding in bankruptcy and have no intention to file a petition for relief under any chapter of the United States Bankruptcy Code;
3) You agree that you are over 18 years of age;
4) You acknowledge that you have read, understand, and agree to all of the terms of the Privacy Policy.
5) You acknowledge that you have read, understand, and agree to all of the terms of this Agreement.

6/28/2022 | 6:46 AM PDT

**Customer Signature**                    **Date**

**STATE LAW NOTICES:**

5

DocuSign Envelope ID: F7FFFB16-AE74-437F-9B3C-2A150C54EBE7

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

ALL BORROWERS, INCLUDING CALIFORNIA, NEW YORK, RHODE ISLAND, UTAH, AND VERMONT RESIDENTS: You give Kendall Bank and its agents, successors, and assigns permission to obtain one or more consumer credit reports from one or more credit reporting agencies in connection with any transaction, or extension of credit, and on an ongoing basis, for the purpose of reviewing the account created by this Agreement, taking collection action on this Agreement, or for any other legitimate purposes associated with this Agreement. Upon your request, you will be informed of whether or not a consumer credit report was ordered, and if it was, you will be given the name and address of the consumer reporting agency that furnished the report. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

ALL BORROWERS, INCLUDING IOWA, MAINE, MISSOURI, NEBRASKA, OREGON, UTAH, AND WASHINGTON RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt, including promises to extend or renew such debt, are not enforceable. To protect you (borrower) and us (Kendall Bank) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between Kendall Bank and you, except as we may later agree in writing to modify.

ALL BORROWERS, INCLUDING KANSAS AND IOWA RESIDENTS: IMPORTANT: Read this Agreement before signing it. The terms of this Agreement should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this written contract may be legally enforced. We may change the terms of this Agreement only by another written agreement, except as provided by this Agreement. You are entitled to a copy of this contract. You may prepay the unpaid balance at any time without penalty.

CALIFORNIA RESIDENTS: A married applicant may apply for a separate account.

MASSACHUSETTS RESIDENTS: Massachusetts law prohibits discrimination based upon marital status or sexual orientation.

NEW JERSEY RESIDENTS: The section headings of the Agreement are a table of contents and not contract terms. Portions of this Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Agreement, acts or practices (i) by you which are or maybe permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

TEXAS RESIDENTS: This written loan agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

WISCONSIN RESIDENTS: For married Wisconsin residents, you signature confirms that this loan is being incurred in the interest of your marriage or family. No provision of any martial property agreement (pre-martial agreement), unilateral statement, or court decree under Wisconsin's Marital Property Act will adversely affect a credit's interest unless, prior to the time credit is granted, the creditor is furnished a copy of that agreement or decree or is given complete information about the agreement or decree. If you loan for which you are applying granted, you will notify Kendall Bank if you have a spouse who needs to receive notification that credit has been extended to you.

DocuSign Envelope ID: F7FFFB16-AE74-437F-9B3C-2A160C54EBE7

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

# BILLING ERROR RIGHTS

## YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**What to Do if You Find a Mistake on Your Periodic Statement**

If you think there is an error on your periodic billing statement, write to us at:

> Kendall Bank
> Attn: Compliance
> 11225 College Blvd., Suite 150
> Overland Park, KS 66210
> You may also contact us on the Web: www.myvaultloan.com/contact

In your correspondence, give us the following information:

- **Account information:** Your name and Credit Line Account number.
- **Dollar amount:** The dollar amount of the suspected error.
- **Description of problem:** If you think there is an error in your periodic billing statement, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error first appeared on your periodic statement; and
- At least three (3) business days before an automated payment is scheduled if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors *in writing or electronically*. You may call us, but if you do we are not required to investigate any potential errors, and you may have to pay the amount in question.

**What Will Happen After We Receive Your Correspondence**

When we receive your correspondence, we must do two things:

1. Within 30 days of receiving your correspondence, we must tell you that we received your correspondence. We will also tell you if we have already corrected the error.

2. Within 90 days of receiving your correspondence, we must either correct the error or explain to you why we believe the periodic statement is correct.

While we investigate whether or not there has been an error:

- We cannot try to collect the amount in question or report you as delinquent on that amount.

- The charge in question may remain on your periodic statement, and we may continue to charge you interest on that amount.

- While you do not have to pay the amount in question, you are responsible for the remainder of the balance.

- We can apply any unpaid amount against your Credit Limit.

After we finish our investigation, one of two things will happen:

1. **If we made a mistake:** You will not have to pay the amount in question or any interest or other fees related to that amount.

2. **If we do not believe there was a mistake:** You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your periodic billing statement is wrong, you must write to us within *ten (10) days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your periodic statement. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question, even if your periodic billing statement is correct.

DocuSign Envelope ID: F7FFFB16-AE74-437F-9B3C-2A150C54EBE7

## PAYMENT ELECTION AND AUTHORIZATION

| Application Date: 06/28/2022 | Loan No.: ░░░░86 |
|---|---|
| Effective Date: 06/29/2022 | Credit Limit: 1,800.00 |
| Lender:<br>Kendall Bank<br>11225 College Blvd, Suite 150<br>Overland Park, KS 66210<br>Phone: 1-888-227-1935<br>Email: info@myvaultloan.com | Borrower Name: Jose Lopez<br>Address: ░░░░ |

By selecting a payment option below and signing this Payment Election and Authorization ("Authorization") I, Jose Lopez, agree to remit at least my minimum payments as listed in my periodic billing statements provided by Lender in connection with my Open-End Credit Agreement (No. ░░░░░86) (my "Agreement"). I also acknowledge that multiple payment options, including manual payment and recurring ACH debits, were disclosed to me at the time of the application and the specific payment option I have chosen in this Authorization was not required to obtain credit. I also acknowledge that this Authorization only covers my payment of my minimum payments and that I can make additional one-time payments by calling 1-888-227-1935 or through the self-service portal at secure.myvaultloan.com.

x  **Recurring ACH Debits:** I hereby authorize Lender and its successors and assigns to initiate, and Lender's servicers and agents to process, ACH debit entries to withdraw my Minimum Payment Due (as defined in my Agreement) from my Bank Account on the date listed in the applicable periodic billing statement or the next business day if the scheduled date falls on a date Lender is not open for business.

The following is the Bank Account that will be debited:

| Depository Name: | Account Type: | Routing Number | Account Number |
|---|---|---|---|
| ░░░░ | ░░░░ | ░░░░ | ░░░░ |

I further authorize Lender and its successors and assigns to initiate, and Lender's servicers and agents to process, a separate ACH for or include in the ACH debit entry to my Bank Account any applicable late payment fee, returned payment fee, or other fee in the amounts set forth in my Agreement. I have the right to receive notice of all transfers varying in amounts. I elect to receive such notice only when a transfer exceeds the scheduled minimum payment amount plus, as applicable, any other amounts I may owe under my Agreement (e.g., a late charge) up to an additional $100. I acknowledge that the origination of ACH transactions must comply with the provisions of applicable law and the Rules and Operating Guidelines of NACHA (formerly the National Automated Clearing House Association).

I understand and acknowledge that this payment option is completely voluntary and offered for my convenience. I may revoke this authorization by emailing info@myvaultloan.com or calling 1-888-227-1935. I must contact Lender at least three (3) business days prior to the date I wish the authorization to terminate.

**Manual Pay:** I agree to make my Minimum Payments Due by personal check, certified check or money order by mailing my payment to Lender at 11225 College Blvd, STE 150, Overland Park, KS 66210. I acknowledge and agree that my minimum payment must be received no later than 5:00 p.m. CST on the date that it is due according to my Agreement.

**I acknowledge that I received and read this Authorization.**

6/28/2022 | 6:46 AM PDT

**Customer Signature**                                      **Date**

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

DocuSign Envelope ID: F7FFFB16-AE74-437F-9B3C-2A150C54EBE7

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

# CORRECTION AGREEMENT

DATE OF LOAN:                                              06/29/2022

CREDIT LIMIT:                    :                         $1,800.00

BORROWER:                                                 Jose Lopez

ACCOUNT HOLDER;                                           Kendall Bank

In consideration of a credit line from Kendall Bank, we agree that Kendall Bank may correct clerical errors and/or execute any documentation reasonably necessary to accurately reflect the true and correct terms of the account. We understand that this may mean correction of the existing open-end credit agreement or execution of an open-end credit agreement or other documents. We agree that, upon the written request of Kendall Bank (or persons acting on Kendall Bank's behalf), we will comply with Kendall Bank's reasonable request to supply additional documentation.

We agree that this Correction Agreement constitutes an additional covenant under the account documents. If we do not correct, execute and deliver any and all additional documents within ten calendar days of such request, Kendall Bank may in its sole and absolute discretion deem our failure to timely cooperate as a default under the account documents and Kendall Bank may then proceed to enforce its rights under the account documents, which enforcement may include acceleration of the maturities of all remaining payments under the note and, if such sums are not promptly paid, foreclosure of Kendall Bank's liens in any collateral securing repayment of the loan.



6/28/2022 | 6:46 AM PDT

**Customer Signature**                      **Date**

DocuSign Envelope ID: F7FFFB16-AE74-437F-9B3C-2A150C54EBE7

FILED DATE: 2/28/2023 10:11 AM    2023CH01940

# USA PATRIOT ACT CUSTOMER IDENTIFICATION PROGRAM NOTICE

**Important Information You Need to Know About Opening A New Account**

To help the government fight the funding of terrorism and money laundering activities, federal law requires financial institutions to obtain, verify, and record information that identifies each person who opens an account

**Types of Information You Will Need to Provide**

When you open an account, we are required to collect information such as the following from you:

- Your name
- Date of birth
- Address
- Identification number
- US Citizen: taxpayer identification number (Social Security Number)
- Non-US Citizen: taxpayer identification number, passport number and country of issuance, alien identification card number, or government-issued identification showing nationality, residence and a photograph of you

You may also need to show your driver's license or other identifying documents.

**If Your Identity Cannot Be Verified**

We may not be able to open an account for you.

We thank you for your patience and hope that you will support the financial industry's efforts to deny terrorists and money launderers access to America's financial system.

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

## PRIVACY POLICY

Rev. 11/2021

| FACTS | WHAT DOES KENDALL BANK DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include: <br>• Social Security number and income <br>• Account balances and payment history <br>• Credit history and credit scores <br><br>When you are no longer our customer, we continue to share your information as described in this notice |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the <br><br>reasons Kendall Bank chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Kendall Bank share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes—** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes—** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes—** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes—** information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | Yes | Yes |

| | • Call 1-866.218.4020 or <br>• Contact us via email at privacy@kendallbank.com |
|---|---|
| **To limit our sharing** | Please note: <br><br>If you are a new customer, we can begin sharing your information 30 days from the date we sent this notice. When you are no longer our customer, we continue to share your information as described in this notice. <br><br>However, you can contact us at any time to limit our sharing. |

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

## PAGE 2

### Who we are

| Who is providing this notice? | KENDALL BANK |
|---|---|

### What we do

| How does Kendall Bank protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
|---|---|
| How does Kendall Bank collect my personal information? | We collect your personal information, for example, when you <br> • give us your contact information or open an account <br> • use your credit or debit card or apply for a loan <br> • give us your income information <br> We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only <br> • sharing for affiliates' everyday business purposes – information about your creditworthiness <br> • affiliates from using your information to market to you <br> • sharing for nonaffiliates to market to you <br> State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account. |

### Definitions

| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. <br><br> *Our affiliates include Northeast Kansas Insurance Agency.* |
|---|---|
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies. <br><br> *Non-affiliates we can share with include mortgage companies, insurance companies, direct marketing companies, nonprofit organizations, and third-party service providers.* |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. <br><br> *Our joint marketing partners include financial services providers.* |

### Other important information

Special Note to State Residents: You may have other privacy protections under applicable state laws. To the extent these state laws apply, we will comply with them when we share information about you.

For California Residents: In accordance with California law, we will not share information we collect about you with companies outside of our corporate family, except as permitted by law: for example, with your consent or to service your account. We will limit sharing among our companies to the extent required by California law.

For helpful information about identity theft, visit the Federal Trade Commission's consumer website at http://www.ftc.gov/idtheft.

DocuSign Envelope ID: F7FFFB18-AE74-437F-9B3C-2A150C54EBE7

Kendall Bank is subject to regulatory oversight by the FDIC. Any consumer wishing to file a complaint against Kendall Bank should contact the FDIC though one of the following means: In person, by U.S. Mail: 1100 Walnut Street; Suite 2100; Kansas City, MO 64106, by Telephone (800) 209-7459, or Online at: https://ask.fdic.gov/FDICCustomerAssistanceForm

FILED DATE: 2/28/2023 10:11 AM 2023CH01940

FILED DATE: 2/28/2023 10:11 AM    2023CH01940

## Kendall Bank
## Your Credit Score and the Price You Pay for Credit

| **Your Credit Score** | |
|---|---|
| **Your credit score** | |
| | Source: **Clarity Services, Inc.**          Date: **06/28/2022** |

| **Understanding Your Credit Score** | |
|---|---|
| **What you should know about credit scores** | Your credit score is a number that reflects the information in your credit report. |
| | Your credit report is a record of your credit history. It includes information about whether you pay your bills on time and how much you owe to creditors. |
| | Your credit score can change, depending on how your credit history changes. |
| **How we use your credit score** | Your credit score can affect whether you can get a loan and how much you will have to pay for that loan. |
| **The range of scores** | Scores range from a low of **300** to a high of **850.** |
| | Generally, the higher your score, the more likely you are to be offered better credit terms. |
| **How your score compares to the scores of other consumers** |  |

Clear Credit Risk™ Score

% of consumers with score in particular range

Score Bands

File Date: October 2019

| **Checking Your Credit Report** | |
|---|---|
| **What if there are mistakes in your credit report?** | You have a right to dispute any inaccurate information in your credit report. If you find mistakes on your credit report, contact the consumer reporting agency. |
| | It is a good idea to check your credit report to make sure the information it contains is accurate. |
| **How can you obtain a copy of your credit report?** | Under Federal law, you have the right to obtain a free copy of your credit report from each of the nationwide consumer reporting agencies once a year. |
| | To order your free annual credit report— |
| | *By telephone:* Call toll-free:     1-877-322-8228 |
| | *On the web:*  Visit www.annualcreditreport.com |
| | *By mail:*     Mail your completed Annual Credit Report Request Form (which can be obtained from the Federal Trade Commission's website at http://www.ftc.gov/bcp/conline/include/requestformfinal.pdf) to: |

DocuSign Envelope ID: F7FFFB16-AE74-437F-9B3C-2A150C54EBE7

| | Annual Credit Report Request Service<br>P.O. Box 105281<br>Atlanta, GA 30348-5281 |
|---|---|
| **How can you get more information?** | For more information about credit reports and your rights under Federal law, visit the Consumer Financial Protection Bureau's website at www.consumerfinance.gov/learnmore. |

FILED DATE: 2/28/2023 10:11 AM    2023CH01940

FILED DATE: 2/28/2023 10:11 AM    2023CH01940

# EXHIBIT B

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

**Vault**
11225 College Blvd, Suite 150
Overland Park, KS 66210

Jose Lopez



| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,968.21 |
| Payments | -$270.67 |
| Other Credits | -$0.00 |
| Advances | +$0.00 |
| Past Due Amount | +0.00 |
| **Fees Charged** | **+0.00** |
| **Interest Charged** | **+259.62** |
| New Balance | $1,957.16 |
| Credit limit | $1,800.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 07/21/2022 |
| Days in Billing Cycle | 14 |

| Account Number | 86 |
|---|---|

| Payment Information | |
|---|---|
| New Balance | $1,957.16 |
| Minimum Payment Due | $270.67 |
| Payment Due Date | 08/04/2022 |

**Minimum Payment Warning**: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

Questions?  Call Customer Service **888-227-1935**

Please send billing inquiries and correspondence to:
**11225 College Blvd, Suite 150**
**Overland Park, KS 66210**

| Transactions | | |
|---|---|---|
| **Transaction Date** | **Description of Transaction** | **Amount** |
| **Payments and Other Credits** | | |
| 07/21/2022 | Payment | $270.67 |
| **Advances** | | |
| | None | $0.00 |
| **Fees** | | |
| | None | $0.00 |
| | **TOTAL FEES FOR THIS PERIOD** | **$0.00** |
| **Interest Charged** | | |
| | Interest Charge | $259.62 |
| | **TOTAL INTEREST FOR THIS PERIOD** | **$259.62** |

| 2022 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2022 | $0.00 |
| Total interest charged in 2022 | $427.84 |

| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Advances | 379.0000% | $1,792.68 | $259.62 |

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

**BALANCE COMPUTATION METHOD**

We determine the Balance Subject to Interest Rate using a method called "average daily balance (including new transactions)." The "average daily balance (including new transactions)" of your account for a billing cycle is figured by taking the beginning balance of your account each day, adding any new cash advances and subtracting any payment or credits and unpaid finance charges. This gives us the daily balance. Then we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle.

**GRACE PERIOD**

There is no "grace" or "free ride" period within which you may pay your balance to avoid interest charges.

**CREDIT BALANCES**

If there is a credit balance on your account, it will be shown by a minus sign next to the amount shown as the New Balance. This is money we owe you.

**BILLING RIGHTS SUMMARY**

**_What To Do If You Think You Find A Mistake On Your Statement_**

If you think there is an error on your statement, write to us at:

Vault
11225 College Blvd, Suite 150
Overland Park, KS 66210
You may also contact us on the Web: info@myvaultloan.com

In your letter, give us the following information:

- _Account information:_ Your name and account number.
- _Dollar amount:_ The dollar amount of the suspected error.
- _Description of problem:_ If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors _in writing or electronically_. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM    2023CH01940

# EXHIBIT C

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

**Vault**
11225 College Blvd, Suite 150
Overland Park, KS 66210

Jose Lopez



| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,957.16 |
| Payments | -$270.67 |
| Other Credits | -$0.00 |
| Advances | +$0.00 |
| Past Due Amount | +0.00 |
| **Fees Charged** | +0.00 |
| **Interest Charged** | +247.55 |
| New Balance | $1,934.04 |
| Credit limit | $1,800.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 08/04/2022 |
| Days in Billing Cycle | 14 |

| Account Number | 86 |
|---|---|
| **Payment Information** | |
| New Balance | $1,934.04 |
| Minimum Payment Due | $270.67 |
| Payment Due Date | 08/18/2022 |

**Minimum Payment Warning**: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

Questions?  Call Customer Service **888-227-1935**

Please send billing inquiries and correspondence to:
**11225 College Blvd, Suite 150**
**Overland Park, KS 66210**

| Transactions | | |
|---|---|---|
| **Transaction Date** | **Description of Transaction** | **Amount** |
| **Payments and Other Credits** | | |
| 08/04/2022 | Payment | $270.67 |
| **Advances** | | |
| | None | $0.00 |
| **Fees** | | |
| | None | $0.00 |
| | **TOTAL FEES FOR THIS PERIOD** | **$0.00** |
| **Interest Charged** | | |
| | Interest Charge | $247.55 |
| | **TOTAL INTEREST FOR THIS PERIOD** | **$247.55** |

| 2022 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2022 | $0.00 |
| Total interest charged in 2022 | $676.36 |

| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Advances | 379.0000% | $1,696.82 | $247.55 |

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

## BALANCE COMPUTATION METHOD

We determine the Balance Subject to Interest Rate using a method called "average daily balance (including new transactions)." The "average daily balance (including new transactions)" of your account for a billing cycle is figured by taking the beginning balance of your account each day, adding any new cash advances and subtracting any payment or credits and unpaid finance charges. This gives us the daily balance. Then we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle.

## GRACE PERIOD

There is no "grace" or "free ride" period within which you may pay your balance to avoid interest charges.

## CREDIT BALANCES

If there is a credit balance on your account, it will be shown by a minus sign next to the amount shown as the New Balance. This is money we owe you.

## BILLING RIGHTS SUMMARY

### *What To Do If You Think You Find A Mistake On Your Statement*

If you think there is an error on your statement, write to us at:

Vault
11225 College Blvd, Suite 150
Overland Park, KS 66210
You may also contact us on the Web: info@myvaultloan.com

In your letter, give us the following information:

- *Account information:* Your name and account number.
- *Dollar amount:* The dollar amount of the suspected error.
- *Description of problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors *in writing or electronically.* You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

# EXHIBIT D

**Vault**
11225 College Blvd, Suite 150
Overland Park, KS 66210

Jose Lopez

| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,934.04 |
| Payments | -$270.67 |
| Other Credits | -$0.00 |
| Advances | +$0.00 |
| Past Due Amount | +0.00 |
| **Fees Charged** | **+0.00** |
| **Interest Charged** | **+244.92** |
| New Balance | $1,908.29 |
| Credit limit | $1,800.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 08/18/2022 |
| Days in Billing Cycle | 14 |

| Account Number | 86 |
|---|---|
| **Payment Information** | |
| New Balance | $1,908.29 |
| Minimum Payment Due | $270.67 |
| Payment Due Date | 09/01/2022 |

**Minimum Payment Warning**: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

Questions? Call Customer Service 888-227-1935

Please send billing inquiries and correspondence to:
**11225 College Blvd, Suite 150**
**Overland Park, KS 66210**

| Transactions | | |
|---|---|---|
| **Transaction Date** | **Description of Transaction** | **Amount** |
| **Payments and Other Credits** | | |
| 08/18/2022 | Payment | $270.67 |
| **Advances** | | |
| | None | $0.00 |
| **Fees** | | |
| | None | $0.00 |
| | **TOTAL FEES FOR THIS PERIOD** | **$0.00** |
| **Interest Charged** | | |
| | Interest Charge | $244.92 |
| | **TOTAL INTEREST FOR THIS PERIOD** | **$244.92** |

| 2022 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2022 | $0.00 |
| Total interest charged in 2022 | $920.40 |

| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Advances | 379.0000% | $1,685.76 | $244.92 |

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM  2023CH01940

**BALANCE COMPUTATION METHOD**
We determine the Balance Subject to Interest Rate using a method called "average daily balance (including new transactions)." The "average daily balance (including new transactions)" of your account for a billing cycle is figured by taking the beginning balance of your account each day, adding any new cash advances and subtracting any payment or credits and unpaid finance charges. This gives us the daily balance. Then we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle.

**GRACE PERIOD**
There is no "grace" or "free ride" period within which you may pay your balance to avoid interest charges.

**CREDIT BALANCES**
If there is a credit balance on your account, it will be shown by a minus sign next to the amount shown as the New Balance. This is money we owe you.

**BILLING RIGHTS SUMMARY**

***What To Do If You Think You Find A Mistake On Your Statement***

If you think there is an error on your statement, write to us at:

Vault
11225 College Blvd, Suite 150
Overland Park, KS 66210
You may also contact us on the Web: info@myvaultloan.com


In your letter, give us the following information:

- *Account information:* Your name and account number.
- *Dollar amount:* The dollar amount of the suspected error.
- *Description of problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors *in writing or electronically*. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

# EXHIBIT E

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

**Vault by Bank of Orrick**
113 E South Front St.
Orrick, MO  64077

Jose Lopez



| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,908.29 |
| Payments | -$270.67 |
| Other Credits | -$0.00 |
| Advances | +$0.00 |
| Past Due Amount | +0.00 |
| **Fees Charged** | **+0.00** |
| **Interest Charged** | **+241.55** |
| | |
| New Balance | $1,879.17 |
| | |
| Credit limit | $1,800.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 09/01/2022 |
| Days in Billing Cycle | 14 |

| Account Number | 86 |
|---|---|
| **Payment Information** | |
| New Balance | $1,879.17 |
| Minimum Payment Due | $270.67 |
| Payment Due Date | 09/15/2022 |

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

Questions?  Call Customer Service **888-227-1935**

Please send billing inquiries and correspondence to:
**113 E South Front St.
Orrick, MO  64077**

| Transactions | | |
|---|---|---|
| **Transaction Date** | **Description of Transaction** | **Amount** |
| **Payments and Other Credits** | | |
| 09/01/2022 | Payment | $270.67 |
| **Advances** | | |
| | None | $0.00 |
| **Fees** | | |
| | None | $0.00 |
| | **TOTAL FEES FOR THIS PERIOD** | **$0.00** |
| **Interest Charged** | | |
| | Interest Charge | $241.55 |
| | **TOTAL INTEREST FOR THIS PERIOD** | **$241.55** |

| 2022 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2022 | $0.00 |
| Total interest charged in 2022 | $1,162.09 |

| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Advances | 379.0000% | $1,661.64 | $241.55 |

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

## BALANCE COMPUTATION METHOD

We determine the Balance Subject to Interest Rate using a method called "average daily balance (including new transactions)." The "average daily balance (including new transactions)" of your account for a billing cycle is figured by taking the beginning balance of your account each day, adding any new cash advances and subtracting any payment or credits and unpaid finance charges. This gives us the daily balance. Then we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle.

## GRACE PERIOD

There is no "grace" or "free ride" period within which you may pay your balance to avoid interest charges.

## CREDIT BALANCES

If there is a credit balance on your account, it will be shown by a minus sign next to the amount shown as the New Balance. This is money we owe you.

## BILLING RIGHTS SUMMARY

### *What To Do If You Think You Find A Mistake On Your Statement*

If you think there is an error on your statement, write to us at:

Vault by Bank of Orrick
113 E South Front St.
Orrick, MO 64077
You may also contact us on the Web: info@myvaultloan.com

In your letter, give us the following information:

- *Account information:* Your name and account number.
- *Dollar amount:* The dollar amount of the suspected error.
- *Description of problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors *in writing or electronically*. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

# EXHIBIT F

FILED DATE: 2/28/2023 10:11 AM  2023CH01940

**Vault by Bank of Orrick**
113 E South Front St.
Orrick, MO  64077

Jose Lopez



| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,879.17 |
| Payments | -$270.67 |
| Other Credits | -$0.00 |
| Advances | +$0.00 |
| Past Due Amount | +0.00 |
| **Fees Charged** | **+0.00** |
| **Interest Charged** | **+237.75** |
| New Balance | $1,846.25 |
| Credit limit | $1,800.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 09/15/2022 |
| Days in Billing Cycle | 14 |

| Account Number | 86 |
|---|---|

| Payment Information | |
|---|---|
| New Balance | $1,846.25 |
| Minimum Payment Due | $270.67 |
| Payment Due Date | 09/29/2022 |

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

Questions?  Call Customer Service **888-227-1935**

Please send billing inquiries and correspondence to:
**113 E South Front St.**
**Orrick, MO  64077**

| Transactions | | |
|---|---|---|
| **Transaction Date** | **Description of Transaction** | **Amount** |
| **Payments and Other Credits** | | |
| 09/15/2022 | Payment | $270.67 |
| **Advances** | | |
| | None | $0.00 |
| **Fees** | | |
| | None | $0.00 |
| | **TOTAL FEES FOR THIS PERIOD** | **$0.00** |
| **Interest Charged** | | |
| | Interest Charge | $237.75 |
| | **TOTAL INTEREST FOR THIS PERIOD** | **$237.75** |

| 2022 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2022 | $0.00 |
| Total interest charged in 2022 | $1,399.85 |

| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Advances | 379.0000% | $1,635.78 | $237.75 |

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM    2023CH01940

**BALANCE COMPUTATION METHOD**

We determine the Balance Subject to Interest Rate using a method called "average daily balance (including new transactions)." The "average daily balance (including new transactions)" of your account for a billing cycle is figured by taking the beginning balance of your account each day, adding any new cash advances and subtracting any payment or credits and unpaid finance charges. This gives us the daily balance. Then we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle.

**GRACE PERIOD**

There is no "grace" or "free ride" period within which you may pay your balance to avoid interest charges.

**CREDIT BALANCES**

If there is a credit balance on your account, it will be shown by a minus sign next to the amount shown as the New Balance. This is money we owe you.

**BILLING RIGHTS SUMMARY**

***What To Do If You Think You Find A Mistake On Your Statement***

If you think there is an error on your statement, write to us at:

Vault by Bank of Orrick
113 E South Front St.
Orrick, MO  64077
You may also contact us on the Web: info@myvaultloan.com

In your letter, give us the following information:

- *Account information:*  Your name and account number.
- *Dollar amount:*  The dollar amount of the suspected error.
- *Description of problem:*  If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors *in writing or electronically.*  You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

# EXHIBIT G

FILED DATE: 2/28/2023 10:11 AM    2023CH01940

**Vault by Bank of Orrick**
113 E South Front St.
Orrick, MO 64077

Jose Lopez



| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,879.17 |
| Payments | -$270.67 |
| Other Credits | -$0.00 |
| Advances | +$0.00 |
| Past Due Amount | +0.00 |
| **Fees Charged** | **+0.00** |
| **Interest Charged** | **+237.75** |
| New Balance | $1,846.25 |
| Credit limit | $1,800.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 09/15/2022 |
| Days in Billing Cycle | 14 |

| Account Number | 86 |
|---|---|

| Payment Information | |
|---|---|
| New Balance | $1,846.25 |
| Minimum Payment Due | $270.67 |
| Payment Due Date | 09/29/2022 |

**Minimum Payment Warning**: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

Questions? Call Customer Service **888-227-1935**

Please send billing inquiries and correspondence to:
**113 E South Front St.**
**Orrick, MO 64077**

| Transactions | | |
|---|---|---|
| **Transaction Date** | **Description of Transaction** | **Amount** |
| | **Payments and Other Credits** | |
| 09/15/2022 | Payment | $270.67 |
| | **Advances** | |
| | None | $0.00 |
| | **Fees** | |
| | None | $0.00 |
| | **TOTAL FEES FOR THIS PERIOD** | **$0.00** |
| | **Interest Charged** | |
| | Interest Charge | $237.75 |
| | **TOTAL INTEREST FOR THIS PERIOD** | **$237.75** |

| 2022 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2022 | $0.00 |
| Total interest charged in 2022 | $1,399.85 |

| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Advances | 379.0000% | $1,635.78 | $237.75 |

CORE/3522882.0010/168050611.1

**BALANCE COMPUTATION METHOD**

We determine the Balance Subject to Interest Rate using a method called "average daily balance (including new transactions)." The "average daily balance (including new transactions)" of your account for a billing cycle is figured by taking the beginning balance of your account each day, adding any new cash advances and subtracting any payment or credits and unpaid finance charges. This gives us the daily balance. Then we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle.

**GRACE PERIOD**

There is no "grace" or "free ride" period within which you may pay your balance to avoid interest charges.

**CREDIT BALANCES**

If there is a credit balance on your account, it will be shown by a minus sign next to the amount shown as the New Balance. This is money we owe you.

**BILLING RIGHTS SUMMARY**

***What To Do If You Think You Find A Mistake On Your Statement***

If you think there is an error on your statement, write to us at:

Vault by Bank of Orrick
113 E South Front St.
Orrick, MO 64077
You may also contact us on the Web: info@myvaultloan.com

In your letter, give us the following information:

- *Account information:* Your name and account number.
- *Dollar amount:* The dollar amount of the suspected error.
- *Description of problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors *in writing or electronically*. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

FILED DATE: 2/28/2023 10:11 AM    2023CH01940

# EXHIBIT H

FILED DATE: 2/28/2023 10:11 AM 2023CH01940

**Vault by Bank of Orrick**
113 E South Front St.
Orrick, MO 64077

Jose Lopez



| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,846.25 |
| Payments | -$270.67 |
| Other Credits | -$0.00 |
| Advances | +$0.00 |
| Past Due Amount | +0.00 |
| Fees Charged | +0.00 |
| Interest Charged | +233.48 |
| New Balance | $1,809.06 |
| Credit limit | $1,800.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 09/29/2022 |
| Days in Billing Cycle | 14 |

| Account Number | 86 |
|---|---|
| **Payment Information** | |
| New Balance | $1,809.06 |
| Minimum Payment Due | $270.67 |
| Payment Due Date | 10/13/2022 |

**Minimum Payment Warning**: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

Questions? Call Customer Service **888-227-1935**

Please send billing inquiries and correspondence to:
**113 E South Front St.
Orrick, MO 64077**

| Transactions | | |
|---|---|---|
| **Transaction Date** | **Description of Transaction** | **Amount** |
| **Payments and Other Credits** | | |
| 09/29/2022 | Payment | $270.67 |
| **Advances** | | |
| | None | $0.00 |
| **Fees** | | |
| | None | $0.00 |
| | TOTAL FEES FOR THIS PERIOD | $0.00 |
| **Interest Charged** | | |
| | Interest Charge | $233.48 |
| | TOTAL INTEREST FOR THIS PERIOD | $233.48 |

| 2022 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2022 | $0.00 |
| Total interest charged in 2022 | $1,633.37 |

| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Advances | 379.0000% | $1,606.39 | $233.48 |

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

## BALANCE COMPUTATION METHOD

We determine the Balance Subject to Interest Rate using a method called "average daily balance (including new transactions)." The "average daily balance (including new transactions)" of your account for a billing cycle is figured by taking the beginning balance of your account each day, adding any new cash advances and subtracting any payment or credits and unpaid finance charges. This gives us the daily balance. Then we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle.

## GRACE PERIOD

There is no "grace" or "free ride" period within which you may pay your balance to avoid interest charges.

## CREDIT BALANCES

If there is a credit balance on your account, it will be shown by a minus sign next to the amount shown as the New Balance. This is money we owe you.

## BILLING RIGHTS SUMMARY

### *What To Do If You Think You Find A Mistake On Your Statement*

If you think there is an error on your statement, write to us at:

Vault by Bank of Orrick
113 E South Front St.
Orrick, MO 64077
You may also contact us on the Web: info@myvaultloan.com

In your letter, give us the following information:

- *Account information:* Your name and account number.
- *Dollar amount:* The dollar amount of the suspected error.
- *Description of problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors *in writing or electronically.* You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

# EXHIBIT I

FILED DATE: 2/28/2023 10:11 AM 2023CH01940

**Vault by Bank of Orrick**
113 E South Front St.
Orrick, MO 64077

Jose Lopez



| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,809.06 |
| Payments | -$270.67 |
| Other Credits | -$0.00 |
| Advances | +$0.00 |
| Past Due Amount | +0.00 |
| **Fees Charged** | **+0.00** |
| **Interest Charged** | **+228.66** |
| New Balance | $1,767.05 |
| Credit limit | $1,800.00 |
| Available Credit | $32.95 |
| Statement Closing Date | 10/13/2022 |
| Days in Billing Cycle | 14 |

| Account Number | |
|---|---|
| | 86 |
| **Payment Information** | |
| New Balance | $1,767.05 |
| Minimum Payment Due | $270.67 |
| Payment Due Date | 10/27/2022 |

**Minimum Payment Warning**: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

Questions? Call Customer Service **888-227-1935**

Please send billing inquiries and correspondence to:
**113 E South Front St.**
**Orrick, MO 64077**

| Transactions | | |
|---|---|---|
| **Transaction Date** | **Description of Transaction** | **Amount** |
| | **Payments and Other Credits** | |
| 10/13/2022 | Payment | $270.67 |
| | **Advances** | |
| | None | $0.00 |
| | **Fees** | |
| | None | $0.00 |
| | **TOTAL FEES FOR THIS PERIOD** | **$0.00** |
| | **Interest Charged** | |
| | Interest Charge | $228.66 |
| | **TOTAL INTEREST FOR THIS PERIOD** | **$228.66** |

| 2022 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2022 | $0.00 |
| Total interest charged in 2022 | $1,862.06 |

**Interest Charge Calculation**

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
|---|---|---|---|
| Advances | 379.0000% | $1,573.21 | $228.66 |

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

# EXHIBIT J

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

**Vault by Bank of Orrick**
113 E South Front St.
Orrick, MO  64077

Jose Lopez



| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,767.05 |
| Payments | -$270.67 |
| Other Credits | -$0.00 |
| Advances | +$0.00 |
| Past Due Amount | +0.00 |
| **Fees Charged** | **+0.00** |
| **Interest Charged** | **+223.20** |
| New Balance | $1,719.58 |
| Credit limit | $1,800.00 |
| Available Credit | $80.42 |
| Statement Closing Date | 10/27/2022 |
| Days in Billing Cycle | 14 |

| Account Number | 86 |
|---|---|

| Payment Information | |
|---|---|
| New Balance | $1,719.58 |
| Minimum Payment Due | $270.67 |
| Payment Due Date | 11/10/2022 |

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

Questions? Call Customer Service **888-227-1935**

Please send billing inquiries and correspondence to:
**113 E South Front St.**
**Orrick, MO  64077**

| Transactions | | |
|---|---|---|
| **Transaction Date** | **Description of Transaction** | **Amount** |
| | **Payments and Other Credits** | |
| 10/27/2022 | Payment | $270.67 |
| | **Advances** | |
| | None | $0.00 |
| | **Fees** | |
| | None | $0.00 |
| | **TOTAL FEES FOR THIS PERIOD** | **$0.00** |
| | **Interest Charged** | |
| | Interest Charge | $223.20 |
| | **TOTAL INTEREST FOR THIS PERIOD** | **$223.20** |

| 2022 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2022 | $0.00 |
| Total interest charged in 2022 | $2,085.30 |

| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Advances | 379.0000% | $1,535.71 | $223.20 |

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

# EXHIBIT K

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

**Vault by Bank of Orrick**
113 E. South Front St.
Orrick, MO 64077

Jose Lopez



| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,719.58 |
| Payments | -$270.67 |
| Other Credits | -$0.00 |
| Advances | +$0.00 |
| Past Due Amount | +0.00 |
| **Fees Charged** | +0.00 |
| **Interest Charged** | +217.04 |
| New Balance | $1,665.95 |
| Credit limit | $1,800.00 |
| Available Credit | $134.05 |
| Statement Closing Date | 11/10/2022 |
| Days in Billing Cycle | 14 |

| Account Number | 86 |
|---|---|

| Payment Information | |
|---|---|
| New Balance | $1,665.95 |
| Minimum Payment Due | $270.67 |
| Payment Due Date | 11/24/2022 |

**Minimum Payment Warning**: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

Questions? Call Customer Service **888-227-1935**

Please send billing inquiries and correspondence to:
**113 E South Front St.**
**Orrick, MO 64077**

| Transactions | | |
|---|---|---|
| **Transaction Date** | **Description of Transaction** | **Amount** |
| **Payments and Other Credits** | | |
| 11/10/2022 | Payment | $270.67 |
| **Advances** | | |
| | None | $0.00 |
| **Fees** | | |
| | None | $0.00 |
| | **TOTAL FEES FOR THIS PERIOD** | **$0.00** |
| **Interest Charged** | | |
| | Interest Charge | $217.04 |
| | **TOTAL INTEREST FOR THIS PERIOD** | **$217.04** |

| 2022 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2022 | $0.00 |
| Total interest charged in 2022 | $2,302.39 |

| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Advances | 379.0000% | $1,493.35 | $217.04 |

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

# EXHIBIT L

FILED DATE: 2/28/2023 10:11 AM  2023CH01940

**Vault by Bank of Orrick**
113 E South Front St.
Orrick, MO 64077

Jose Lopez



| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,665.95 |
| Payments | -$270.67 |
| Other Credits | -$0.00 |
| Advances | +$0.00 |
| Past Due Amount | +0.00 |
| **Fees Charged** | **+0.00** |
| **Interest Charged** | **+210.07** |
| | |
| New Balance | $1,605.35 |
| | |
| Credit limit | $1,800.00 |
| Available Credit | $194.65 |
| Statement Closing Date | 11/24/2022 |
| Days in Billing Cycle | 14 |

| Account Number | 86 |
|---|---|
| **Payment Information** | |
| New Balance | $1,605.35 |
| Minimum Payment Due | $270.67 |
| Payment Due Date | 12/08/2022 |

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

Questions? Call Customer Service **888-227-1935**

Please send billing inquiries and correspondence to:
**113 E South Front St.**
**Orrick, MO 64077**

| Transactions | | |
|---|---|---|
| **Transaction Date** | **Description of Transaction** | **Amount** |
| | **Payments and Other Credits** | |
| 11/24/2022 | Payment | $270.67 |
| | **Advances** | |
| | None | $0.00 |
| | **Fees** | |
| | None | $0.00 |
| | **TOTAL FEES FOR THIS PERIOD** | **$0.00** |
| | **Interest Charged** | |
| | Interest Charge | $210.07 |
| | **TOTAL INTEREST FOR THIS PERIOD** | **$210.07** |

| 2022 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2022 | $0.00 |
| Total interest charged in 2022 | $2,512.51 |

| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Advances | 379.0000% | $1,445.49 | $210.07 |

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

# EXHIBIT M

FILED DATE: 2/28/2023 10:11 AM 2023CH01940

**Vault by Bank of Orrick**
113 E South Front St.
Orrick, MO 64077

Jose Lopez



| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,605.35 |
| Payments | -$280.67 |
| Other Credits | -$0.00 |
| Advances | +$0.00 |
| Past Due Amount | +0.00 |
| **Fees Charged** | **+0.00** |
| **Interest Charged** | **+202.01** |
| | |
| New Balance | $1,526.69 |
| | |
| Credit limit | $1,800.00 |
| Available Credit | $273.31 |
| Statement Closing Date | 12/08/2022 |
| Days in Billing Cycle | 14 |

| Account Number | |
|---|---|
| | 86 |
| **Payment Information** | |
| New Balance | $1,526.69 |
| Minimum Payment Due | $270.67 |
| Payment Due Date | 12/22/2022 |

**Minimum Payment Warning**: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

Questions? Call Customer Service **888-227-1935**

Please send billing inquiries and correspondence to:
**113 E South Front St.**
**Orrick, MO 64077**

| Transactions | | |
|---|---|---|
| **Transaction Date** | **Description of Transaction** | **Amount** |
| **Payments and Other Credits** | | |
| 12/08/2022 | Payment | $270.67 |
| 12/08/2022 | Payment | $10.00 |
| **Advances** | | |
| | None | $0.00 |
| **Fees** | | |
| | None | $0.00 |
| | **TOTAL FEES FOR THIS PERIOD** | **$0.00** |
| **Interest Charged** | | |
| | Interest Charge | $202.01 |
| | **TOTAL INTEREST FOR THIS PERIOD** | **$202.01** |

| 2022 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2022 | $0.00 |
| Total interest charged in 2022 | $2,714.58 |

| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Advances | 379.0000% | $1,390.70 | $202.01 |

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

# EXHIBIT N

FILED DATE: 2/28/2023 10:11 AM 2023CH01940

**Vault by Bank of Orrick**
113 E South Front St.
Orrick, MO 64077

Jose Lopez

| Summary of Account Activity | |
| --- | --- |
| Previous Balance | $1,526.69 |
| Payments | -$270.67 |
| Other Credits | -$0.00 |
| Advances | +$0.00 |
| Past Due Amount | +0.00 |
| **Fees Charged** | **+0.00** |
| **Interest Charged** | **+191.95** |
| New Balance | $1,447.97 |
| Credit limit | $1,800.00 |
| Available Credit | $352.03 |
| Statement Closing Date | 12/22/2022 |
| Days in Billing Cycle | 14 |

| Account Number | 86 |
| --- | --- |
| **Payment Information** | |
| New Balance | $1,447.97 |
| Minimum Payment Due | $270.67 |
| Payment Due Date | 01/05/2023 |

**Minimum Payment Warning**: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

Questions?  Call Customer Service **888-227-1935**

Please send billing inquiries and correspondence to:
**113 E South Front St.**
**Orrick, MO  64077**

| Transactions | | |
| --- | --- | --- |
| **Transaction Date** | **Description of Transaction** | **Amount** |
| **Payments and Other Credits** | | |
| 12/22/2022 | Payment | $270.67 |
| **Advances** | | |
| | None | $0.00 |
| **Fees** | | |
| | None | $0.00 |
| | **TOTAL FEES FOR THIS PERIOD** | **$0.00** |
| **Interest Charged** | | |
| | Interest Charge | $191.95 |
| | **TOTAL INTEREST FOR THIS PERIOD** | **$191.95** |

| **2022 Totals Year-to-Date** | |
| --- | --- |
| Total fees charged in 2022 | $0.00 |
| Total interest charged in 2022 | $2,906.69 |

| Interest Charge Calculation | | | |
| --- | --- | --- | --- |
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Advances | 379.0000% | $1,320.31 | $191.95 |

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

# EXHIBIT O

FILED DATE: 2/28/2023 10:11 AM  2023CH01940

**Vault by Bank of Orrick**
113 E South Front St.
Orrick, MO 64077

Jose Lopez

| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,447.97 |
| Payments | -$270.67 |
| Other Credits | -$0.00 |
| Advances | +$0.00 |
| Past Due Amount | +0.00 |
| **Fees Charged** | **+0.00** |
| **Interest Charged** | **+181.77** |
| | |
| New Balance | $1,359.07 |
| | |
| Credit limit | $1,800.00 |
| Available Credit | $440.93 |
| Statement Closing Date | 01/05/2023 |
| Days in Billing Cycle | 14 |

| Account Number | 86 |
|---|---|
| **Payment Information** | |
| New Balance | $1,359.07 |
| Minimum Payment Due | $270.67 |
| Payment Due Date | 01/19/2023 |

**Minimum Payment Warning**: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

Questions? Call Customer Service **888-227-1935**

Please send billing inquiries and correspondence to:
**113 E South Front St.**
**Orrick, MO 64077**

| Transactions | | |
|---|---|---|
| **Transaction Date** | **Description of Transaction** | **Amount** |
| **Payments and Other Credits** | | |
| 01/05/2023 | Payment | $270.67 |
| **Advances** | | |
| | None | $0.00 |
| **Fees** | | |
| | None | $0.00 |
| | **TOTAL FEES FOR THIS PERIOD** | **$0.00** |
| **Interest Charged** | | |
| | Interest Charge | $181.77 |
| | **TOTAL INTEREST FOR THIS PERIOD** | **$181.77** |

| 2023 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2023 | $0.00 |
| Total interest charged in 2023 | $64.33 |

| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Advances | 379.0000% | $1,251.08 | $181.77 |

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

# EXHIBIT P

FILED DATE: 2/28/2023 10:11 AM 2023CH01940

**Vault by Bank of Orrick**
113 E South Front St.
Orrick, MO 64077

Jose Lopez



| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,359.07 |
| Payments | -$270.67 |
| Other Credits | -$0.00 |
| Advances | +$0.00 |
| Past Due Amount | +0.00 |
| **Fees Charged** | **+0.00** |
| **Interest Charged** | **+170.22** |
| New Balance | $1,258.62 |
| Credit limit | $1,800.00 |
| Available Credit | $541.38 |
| Statement Closing Date | 01/19/2023 |
| Days in Billing Cycle | 14 |

| Account Number | 86 |
|---|---|

| Payment Information | |
|---|---|
| New Balance | $1,258.62 |
| Minimum Payment Due | $270.67 |
| Payment Due Date | 02/02/2023 |

**Minimum Payment Warning**: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

Questions? Call Customer Service **888-227-1935**

Please send billing inquiries and correspondence to:
**113 E South Front St.**
**Orrick, MO 64077**

| Transactions | | |
|---|---|---|
| **Transaction Date** | **Description of Transaction** | **Amount** |
| **Payments and Other Credits** | | |
| 01/19/2023 | Payment | $270.67 |
| **Advances** | | |
| | None | $0.00 |
| **Fees** | | |
| | None | $0.00 |
| | TOTAL FEES FOR THIS PERIOD | $0.00 |
| **Interest Charged** | | |
| | Interest Charge | $170.22 |
| | TOTAL INTEREST FOR THIS PERIOD | $170.22 |

| 2023 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2023 | $0.00 |
| Total interest charged in 2023 | $234.65 |

| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Advances | 379.0000% | $1,171.62 | $170.22 |

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

# EXHIBIT Q

FILED DATE: 2/28/2023 10:11 AM  2023CH01940

**Vault by Bank of Orrick**
113 E South Front St.
Orrick, MO  64077

Jose Lopez

| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,258.62 |
| Payments | -$270.67 |
| Other Credits | -$0.00 |
| Advances | +$0.00 |
| Past Due Amount | +0.00 |
| **Fees Charged** | **+0.00** |
| **Interest Charged** | **+157.18** |
| | |
| New Balance | $1,145.13 |
| | |
| Credit limit | $1,800.00 |
| Available Credit | $654.87 |
| Statement Closing Date | 02/02/2023 |
| Days in Billing Cycle | 14 |

| Account Number | 86 |
|---|---|
| **Payment Information** | |
| New Balance | $1,145.13 |
| Minimum Payment Due | $270.67 |
| Payment Due Date | 02/16/2023 |

**Minimum Payment Warning**: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.

Questions?  Call Customer Service **888-227-1935**

Please send billing inquiries and correspondence to:
**113 E South Front St.**
**Orrick, MO  64077**

| Transactions | | |
|---|---|---|
| **Transaction Date** | **Description of Transaction** | **Amount** |
| **Payments and Other Credits** | | |
| 02/02/2023 | Payment | $270.67 |
| **Advances** | | |
| | None | $0.00 |
| **Fees** | | |
| | None | $0.00 |
| | **TOTAL FEES FOR THIS PERIOD** | **$0.00** |
| **Interest Charged** | | |
| | Interest Charge | $157.18 |
| | **TOTAL INTEREST FOR THIS PERIOD** | **$157.18** |

| 2023 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2023 | $0.00 |
| Total interest charged in 2023 | $391.92 |

| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Advances | 379.0000% | $1,081.99 | $157.18 |

CORE/3522882.0010/168050611.1

FILED DATE: 2/28/2023 10:11 AM    2023CH01940

# EXHIBIT R

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

Atty. No. 41106

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |
|---|---|
| JOSE LOPEZ, on behalf of Plaintiff and the class described herein, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| BANK OF ORRICK and KENDALL BANK, | ) ) ) ) |
| Defendants. | ) ) |

## DECLARATION OF DANIEL A. EDELMAN

Daniel A. Edelman declares under penalty of perjury, as provided for by 735 ILCS 5/1-109, that the following statements are true:

1.     Edelman, Combs, Latturner & Goodwin, LLC, has 5 principals, Daniel A. Edelman, Tara L. Goodwin, Julie Clark, Heather Kolbus, and Cassandra P. Miller, and four associates. Member James O. Latturner retired in 2020 and Cathleen M. Combs at the end of 2021.

2.     **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, through both class and individual actions. He is the author of the chapters on the "Fair Debt Collection Practices Act," "Truth in Lending Act," and "Telephone Consumer Protection Act" in *Illinois Causes of Action* (Ill. Inst. For Cont. Legal Educ. 2020 and earlier editions), author of *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2008, 2011, 2014, 2019, 2022), author of *Predatory Mortgage Lending* and Servicing (Ill. Inst. for Cont. Legal. Educ. 2022), co-author of Rosmarin & Edelman, *Consumer Class Action Manual* (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999);, *Illinois Consumer Law*, in Consumer Fraud and Deceptive Business Practices Act and Related Areas Update (Chicago Bar Ass'n 2002); *Payday Loans: Big Interest Rates and Little Regulation*, 11 Loy.Consumer L.Rptr. 174 (1999); author of *Consumer Fraud and Insurance Claims*, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," *Ohio Consumer Law* (1995 ed.); co-author of *Fair Debt Collection: The Need for Private Enforcement*, 7 Loy.Consumer L.Rptr. 89 (1995); author of *An Overview of The Fair Debt Collection Practices Act*, in Financial Services Litigation, Practicing Law Institute (1999); co-author of *Residential Mortgage Litigation*, in Financial Services Litigation, Practicing Law Institute (1996); author of *Automobile Leasing: Problems and Solutions*, 7 Loy.Consumer L.Rptr. 14 (1994); author of *Current Trends in Residential Mortgage Litigation*, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); co-author of *Illinois Consumer Law* (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, *Attorney Liability Under the Fair Debt Collection Practices Act* (Chicago Bar Ass'n 1996); and author of *The Fair Debt Collection Practices Act: Recent Developments*, 8 Loy.Consumer L. Rptr. 303 (1996), among

1

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

others.  Mr. Edelman is also a frequent speaker on consumer law topics for various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conference, and the Illinois Institute for Continuing Legal Education, and he has testified on behalf of consumers before the Federal Trade Commission and the Illinois legislature.  He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Sixth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Courts for the Eastern and Western Districts of Wisconsin, and the Supreme Court of Illinois.  He is a member of the Northern District of Illinois trial bar.

3.      **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988) and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). Ms. Goodwin was Chair of the Chicago Bar Association's Consumer Law Committee from 2007 - 2010, and she has previously been on the faculty of the Practicing Law Institute's Consumer Financial Services Institute in Chicago, speaking on issues relating to the Fair Debt Collection Practices Act and mortgage litigation. Ms. Goodwin spoke at the 2016 Conference on Consumer Finance Law on mortgage servicing issues. Ms. Goodwin has also been a frequent speaker at the Chicago Bar Association, speaking on topics such as how to assist consumers with credit reporting problems, developments in class action law and arbitration agreements in consumer contracts. **Reported Cases.** *Aleksic v. Experian Information Solutions, Inc.*, 13cv7802, 2014 WL 2769122, 2014 U.S. Dist. LEXIS 83086 (N.D.Ill. June 18, 2014); *Taylor v. Screening Reports, Inc.*, 13cv2886, 2015 WL 4052824,  2015 U.S. Dist. LEXIS 86262 (N.D.Ill. July 2, 2015); *Williams v. Chartwell Financial Services, Ltd.*, 204 F.3d 748 (7th Cir. 2000); *Hillenbrand v. Meyer Medical Group*, 288 Ill.App.3d 871, 682 N.E.2d 101 (1st Dist. 1997), later opinion, 308 Ill.App.3d 381, 720 N.E.2d 287 (1st Dist. 1999); *Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2000); *Large v. Conseco Fin. Servicing Co.*, 292 F.3d 49 (1st Cir. 2002); *Flippin v. Aurora Bank, FSB*, 12cv1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Henry v. Teletrack, Inc.*, 11cv4424,  2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill.  March 7, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11cv 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917  (N.D.Ill. Feb. 9, 2012); *Bunton v. Cape Cod Village, LLC*, 09cv1044, 2009 WL 2139441, 2009 U.S. Dist. LEXIS 57801 (C.D.Ill. July 6, 2009); *Wilson v. Harris N.A.*, 06cvJuly 9, 20205840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007); *Carbajal v. Capital One*, 219 F.R.D. 437 (N.D.Ill. 2004); *Russo v. B&B Catering*, 209 F.Supp.2d 857 (N.D.Ill. 2002);  *Romaker v. Crossland Mtg. Co.*, 94cv3328,  1996 WL 254299, 1996 U.S.Dist. LEXIS 6490  (N.D.Ill. May 10, 1996);  *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill 1996). Ms. Goodwin is a member of the Illinois bar and is admitted in the Seventh, First, and D.C. Circuit Courts of Appeals, and the United States District Courts for the Northern and Central Districts of Illinois, and the Northern District of Indiana.  She is also a member of the Northern District of Illinois trial bar.

4.      **Julie Clark** (neé Cobalovic) is a graduate of Northern Illinois University (B.A., 1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644, 48 N.E.3d 1060 (Ill.Sup.Ct.) ; *Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Qualkenbush v. Harris Trust & Savings Bank*, 219 F. Supp.2d 935 (N.D.Ill. 2002); *Covington-McIntosh v. Mount Glenwood Memory Gardens*, 00cv186,  2002 WL 31369747,  2002 U.S. Dist. LEXIS 20026 (N.D.Ill., Oct. 21, 2002), later opinion, 2003 WL 22359626, 2003 U.S. Dist. LEXIS 18370 (N.D.Ill. Oct. 15, 2003); *Western Ry. Devices Corp. v. Lusida Rubber Prods.*, 06cv52, 2006 WL 1697119, 2006 U.S. Dist. LEXIS 43867 (N.D.Ill. June 13, 2006); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06cv4286, 2007 U.S. Dist. LEXIS

2

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

42380 (N.D.Ill. June 4, 2007); *Ballard Nursing Center, Inc. v. GF Healthcare Products, Inc.*, 07cv5715, 2007 WL 3448731, 2007 U.S. Dist. LEXIS 84425 (N.D.Ill. Nov. 14, 2007); *Sadowski v. Med1 Online, LLC*, 07cv2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill. May 17, 2008); *Sadowski v. OCO Biomedical, Inc.*, 08cv3225, 2008 WL 5082992, 2008 U.S. Dist. LEXIS 96124 (N.D.Ill. Nov. 25, 2008); *ABC Bus. Forms, Inc. v. Pridamor, Inc.*, 09cv3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy v. Promius Pharma, LLC*, 09cv2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Lab., Inc.*, 10cv1315, 2010 WL 4074379, 2010 U.S. Dist. LEXIS 108339 (N.D.Ill. Oct. 12, 2010); *Garrett v. Sharps Compliance, Inc.*, 10cv4030, 2010 WL 4167157, 2010 U.S. Dist. LEXIS 109912 (N.D.Ill. Oct. 14, 2010).

5.    **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude*, 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** *Clark v. Experian Info. Solutions, Inc.*, 8:00cv1217-22, 2004 WL 256433, 2004 U.S. Dist. LEXIS 28324 (D.S.C., Jan. 14, 2004); *DeFrancesco v. First Horizon Home Loan Corp.*, 06cv0058, 2006 WL 3196838, 2006 U.S. Dist. LEXIS 80718 (S.D.Ill. Nov. 2, 2006); *Jeppesen v. New Century Mortgage Corp.*, 2:05cv372, 2006 WL 3354691, 2006 U.S. Dist. LEXIS 84035 (N.D.Ind. Nov. 17, 2006); *Benedia v. Super Fair Cellular, Inc.*, 07cv1390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill. Sept. 26, 2007); *Gonzalez v. Codilis & Assocs., P.C.*, 03cv2883, 2004 WL 719264, 2004 U.S. Dist. LEXIS 5463 (N.D.Ill. March 30, 2004); *Centerline Equipment Corp. v. Banner Personnel Svc., Inc.*, 07cv1611, 2009 WL 1607587, 2009 U.S. Dist. LEXIS 48092 (N.D.Ill. June 9, 2009); *R. Rudnick & Co. v. G.F. Protection, Inc.*, 08cv1856, 2009 WL 112380, 2009 U.S. Dist. LEXIS 3152 (N.D.Ill. Jan. 15, 2009); *Pollack v. Cunningham Financial Group, LLC*, 08cv1405, 2008 WL 4874195, 2008 U.S. Dist. LEXIS 4166 (N.D.Ill. June 2, 2008); *Pollack v. Fitness Innovative Techs., LLC*, 08 CH 03430, 2009 WL 506280, 2009 TCPA Rep. 1858 (Ill. Cir. Ct., Jan. 14, 2009); *R. Rudnick & Co. v. Brilliant Event Planning, Inc.*, No. 09 CH 18924, 2010 WL 5774848, 2010 TCPA Rep. 2099 (Ill. Cir. Ct., Nov. 30, 2010).

6.    **Cassandra P. Miller** is a graduate of the University of Wisconsin – Madison (B.A. 2001) and John Marshall Law School (now University of Illinois Chicago School of Law) (J.D. *magna cum laude* 2006). **Reported Cases:** *Pietras v. Sentry Ins. Co.*, 513 F.Supp.2d 983 (N.D.Ill. 2007); *Hernandez v. Midland Credit Mgmt.*, 04cv7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill. Sept. 25, 2007); *Balogun v. Midland Credit Mgmt.*, 1:05cv1790, 2007 WL 2934886, 2007 U.S. Dist. LEXIS 74845 (S.D.Ind. Oct. 5, 2007); *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870 (N.D.Ill. 2008); *Miller v. Midland Credit Management, Inc.*, 08cv780, 2009 WL 528796, 2009 U.S. Dist. LEXIS 16273 (N.D.Ill. March 2, 2009); *Frydman v. Portfolio Recovery Associates, LLC*, 11cv524, 2011 WL 2560221, 2011 U.S. Dist. LEXIS 69502 (N.D.Ill. June 28, 2011).

7.    **Associates:**

a.    **Carly Roman (formerly Cengher)** is a graduate of the University of Oregon (B.A., 2011), the University of California (M.A., 2015), and the University of New Hampshire School of Law (J.D. 2019). She is a member of the Illinois Bar.

b.    **Stephen J. Pigozzi** is a graduate of the University of Wisconsin - Madison (B.A. 2007) and Chicago-Kent College of Law (J.D. 2018). He is a member of the Illinois Bar.

c.    **Julia Ozello** is a graduate of the University of Chicago (B.A. 2016) and Case Western University School of Law (J.D. 2020). She is a member of the Illinois Bar.

d.    **Matthew J. Goldstein** is a graduate of Lake Forest College (B.A., *magna cum laude*, 2018) and the University of Illinois Chicago School of Law (J.D., May 2021). He is a member of the Illinois Bar.

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

8.      The firm also has a dozen legal assistants and support staff.

9.      Since its inception, the firm has recovered more than $500 million for consumers. The types of cases handled by the firm are illustrated by the following:

10.     **Collection practices:** The firm has brought numerous cases under the Fair Debt Collection Practices Act, both class and individual. Decisions include: *Jenkins v. Heintz*, 25 F.3d 536 (7th Cir. 1994), aff'd 514 U.S. 291 (1995) (FDCPA coverage of attorneys); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014)(en banc); *Janetos v. Fulton, Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016); *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260 (3d Cir. 2019); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009); *Hale v. Afni, Inc.*, 08cv3918, 2010 WL 380906, 2010 U.S. Dist. LEXIS 6715 (N.D.Ill. Jan. 26, 2010); *Parkis v. Arrow Fin Servs.*, 07cv410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Foster v. Velocity Investments*, 07cv824, 2007 WL 2461665, 2007 U.S. Dist. LEXIS 63302 (N.D. Ill. Aug. 24, 2007); *Foreman v. PRA III, LLC*, 05cv3372, 2007 WL 704478, 2007 U.S. Dist. LEXIS 15640 (N.D. Ill. March 5, 2007); *Schutz v. Arrow Fin. Services*, 465 F. Supp. 2d 872 (N.D.Ill. 2006); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014), later opinion, 807 F.3d 872 (7th Cir. 2015) (collection of time-barred debts); *Sivulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012) (activities of mortgage company field agents); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004); *Peter v. GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002) (attorney letters without attorney involvement); *Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000); *Johnson v. Revenue Management, Inc.*, 169 F.3d 1057 (7th Cir.1999); *Keele v. Wexler & Wexler*, 95cv3483, 1995 WL 549048, 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. Sept. 12, 1995) (motion to dismiss), later opinion, 1996 WL 124452, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), aff'd, 149 F.3d 589 (7th Cir. 1998); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232 (2nd Cir. 1998); *Young v. Citicorp Retail Services, Inc.*, 97-9397, 1998 U.S.App. LEXIS 20268, 159 F.3d 1349 (2nd Cir., June 29, 1998) (unpublished); *Charles v. Lundgren & Assocs., P.C.*, 119 F.3d 739 (9th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), aff'g *Avila v. Van Ru Credit Corp.*, 94cv3234, 1994 WL 649101, 1994 U.S. Dist. LEXIS 16345 (N.D.Ill., Nov. 14, 1994), later opinion, 1995 WL 22866, 1995 U.S. Dist. LEXIS 461 (N.D.Ill., Jan. 18, 1995), later opinion, 1995 WL 41425, 1995 U.S. Dist. LEXIS 461 (N.D.Ill., Jan. 31, 1995), later opinion, 1995 WL 55255, 1995 U.S. Dist. LEXIS 1502 (N.D.Ill., Feb. 8, 1995), later opinion, 1995 WL 683775, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 16, 1995); *Tolentino v. Friedman*, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); *Diaz v. Residential Credit Solutions, Inc.*, 965 F.Supp.2d 249 (E.D.N.Y. 2013), later opinion, 297 F.R.D. 42 (E.D.N.Y. 2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014); *Stubbs v. Cavalry SPV I*, 12cv7235, 2013 WL 1858587, 2013 U.S. Dist. LEXIS 62648 (N.D.Ill., May 1, 2013); *Osborn v. J.R.S.-I., Inc.*, , 949 F. Supp. 2d 807 (N.D.Ill. 2013); *Terech v. First Resolution Mgmt. Corp.*, 854 F.Supp.2d 537, 544 (N.D.Ill. 2012); *Casso v. LVNV Funding, LLC*, 955 F. Supp. 2d 825 (N.D.Ill. 2013); *Simkus v. Cavalry Portfolio Services, LLC*, 11cv7425, 2012 WL 1866542, 2012 U.S. Dist. LEXIS 70931 (N.D.Ill., May 22, 2012); *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); *Ramirez v. Apex Financial Management, LLC*, 567 F. Supp.2d 1035 (N.D. Ill. 2008); *Cotton v. Asset Acceptance, LLC*, 07cv5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill., June 26, 2008); *Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800 (N.D.Ill. 2008); *Martin v. Cavalry Portfolio Servs., LLC*, 07cv4745, 2008 WL 4372717, 2008 U.S. Dist. LEXIS 25904 (N.D.Ill., March 28, 2008); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07cv3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Hernandez v. Midland Credit Mgmt.*, 04cv7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill., Sept. 25, 2007) (balance transfer program); *Blakemore v. Pekay*, 895 F.Supp.972 (N.D.Ill. 1995); *Oglesby v. Rotche*, 93cv4183, 1993 WL 460841, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 5, 1993), *later opinion*, 1994 U.S.Dist. LEXIS

4

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

4866, 1994 WL 142867 (N.D.Ill., April 18, 1994); *Laws v. Cheslock*, 98cv6403, 1999 WL 160236, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999); *Davis v. Commercial Check Control, Inc.*, 98cv631, 1999 WL 89556, 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); *Hoffman v. Partners in Collections, Inc.*, 93cv4132, 1993 WL 358158, 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); *Vaughn v. CSC Credit Services, Inc.*, 93cv4151, 1994 WL 449247, 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 WL 51402, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); *Beasley v. Blatt*, 93cv4978, 1994 WL 362185, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 11, 1994); *Taylor v. Fink*, 93 C 4941, 1994 WL 669605, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); *Gordon v. Fink*, 93cv4152, 1995 WL 55242, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); *Brujis v. Shaw*, 876 F.Supp. 198 (N.D.Ill. 1995).

11.     *Jenkins v. Heintz* is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act. Mr. Edelman argued it before the Supreme Court and Seventh Circuit. *Avila v. Rubin* and *Nielsen v. Dickerson* are leading decisions on phony "attorney letters." *Suesz v. Med-1 Solutions, LLC* is a leading decision on the FDCPA venue requirements. *McMahon v. LVNV Funding, LLC* is a leading decision on the collection of time-barred debts.

12.     **Debtors' rights**. Important decisions include: *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07cv3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied) (Illinois statute of limitations for credit card debts); *Parkis v. Arrow Fin Servs.*, 07cv410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Rawson v. Credigy Receivables, Inc.*, 05cv6032, 2006 WL 418665, 2006 U.S. Dist. LEXIS 6450 (N.D.Ill., Feb. 16, 2006) (same); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (collection of time-barred debts without disclosure); *Jones v. Kunin*, 99cv818, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000) (scope of Illinois bad check statute); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002) (failure to allow cosigner to take over obligation prior to collection action); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc) (venue abuse).

13.     **Telephone Consumer Protection Act**. The firm has brought a number of cases under the Telephone Consumer Protection Act, 47 U.S.C. §227, which prohibits "junk faxes," spam text messages, robocalls to cell phones, and regulates telemarketing practices. Important junk fax and spam text message decisions include: *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005); *Sadowski v. Med1 Online, LLC*, 07cv2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Benedia v. Super Fair Cellular, Inc.*, 07cv01390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill., Sept. 26, 2007); *Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768 (N.D.Ill. 2008); *ABC Business Forms, Inc. v. Pridamor, Inc.*, 09cv3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy, Inc. v. Promius Pharma, LLC*, 09cv2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Laboratory, Inc.*, 10cv1315, 2010 WL 3034709, 2010 U.S. Dist. LEXIS, 108339 (N.D.Ill., Aug. 3, 3010).

14.     The firm has also brought a number of cases complaining of robocalling and telemarketing abuse, in violation of the Telephone Consumer Protection Act. Decisions in these cases include: *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Balbarin v. North Star Capital Acquisition, LLC*, 10cv1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 21, 2011), *motion to reconsider denied*, 2011 U.S. Dist. LEXIS 58761 (N.D.Ill. 2011); *Sojka v. DirectBuy, Inc.*, 12cv9809 et al., 2014 WL 1089072, 2014 U.S.Dist. LEXIS 34676 (N.D.Ill., Mar. 18, 2014), later opinion, 35 F. Supp. 3d 996 (N.D.Ill. 2014). The firm has a leadership role in Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act Litigation, MDL No. 2295, and Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation, MDL No. 2286.

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

15.     **Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, which include: *Henry v. Teletrack, Inc.,* 11cv4424, 2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill. March 7, 2012).

16.     Another line of cases under the Fair Credit Reporting Act which we have brought, primarily as class actions, alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA. *Cole v. U.S. Capital, Inc.,* 389 F.3d 719 (7th Cir. 2004); *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948 (7th Cir. 2006); *Perry v. First National Bank,* 459 F.3d 816 (7th Cir. 2006).

17.     **Class action procedure:** Important decisions include *McMahon v. LVNV Funding, LLC,* 807 F.3d 872 (7th Cir. 2015); *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076 (7th Cir. 2013); *Crawford v. Equifax Payment Services, Inc.,* 201 F.3d 877 (7th Cir. 2000); *Blair v. Equifax Check Services, Inc.,* 181 F.3d 832 (7th Cir. 1999); *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997); *McMahon v. LVNV Funding, LLC,* 744 F.3d 1010 (7th Cir. 2014) (mootness); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.,* 2015 IL 118644, 48 N.E.3d 1060 (Ill.Sup.Ct.) (mootness), and *Gordon v. Boden,* 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

18.     **Landlord-tenant:** The firm has brought more than 20 class actions against landlords to enforce tenants' rights. Claims include failing to pay interest on security deposits or commingling security deposits. Reported decisions include *Wang v. Williams,* 343 Ill. App. 3d 495; 797 N.E.2d 179 (5th Dist. 2003); *Dickson v. West Koke Mill Vill. P'Ship,* 329 Ill. App. 3d 341; 769 N.E.2d 971 (4th Dist. 2002); and *Onni v. Apartment Inv. & Mgmt. Co.,* 344 Ill. App. 3d 1099; 801 N.E.2d 586 (2nd Dist. 2003).

19.     **Mortgage charges and servicing practices:** The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices. These include MDL-899, *In re Mortgage Escrow Deposit Litigation,* and MDL-1604, *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation,* as well as the Fairbanks mortgage servicing litigation. Decisions in the firm's mortgage cases include: *Hamm v. Ameriquest Mortg. Co.,* 506 F.3d 525 (7th Cir. 2007); *Johnson v. Thomas,* 342 Ill.App.3d 382, 794 N.E.2d 919 (1st Dist. 2003); *Handy v. Anchor Mortgage Corp.,* 464 F.3d 760 (7th Cir. 2006); *Christakos v. Intercounty Title Co.,* 196 F.R.D. 496 (N.D.Ill. 2000); *Flippin v. Aurora Bank, FSB,* 12cv1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Kesten v. Ocwen Loan Servicing, LLC,* 11cv6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917 (N.D.Ill. Feb. 9, 2012); *Johnstone v. Bank of America, N.A.,* 173 F.Supp.2d 809 (N.D.Ill. 2001); *Leon v. Washington Mut. Bank, F.A.,* 164 F.Supp.2d 1034 (N.D.Ill. 2001); *Williamson v. Advanta Mortg. Corp.,* 99cv4784, 1999 WL 1144940, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); *McDonald v. Washington Mut. Bank, F.A.,* 99cv6884, 2000 WL 875416, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); *GMAC Mtge. Corp. v. Stapleton,* 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); *Leff v. Olympic Fed. S. & L. Ass'n,* 86cv3026, 1986 WL 10636 (N.D.Ill. Sept. 19, 1986); *Aitken v. Fleet Mtge. Corp.,* 90cv3708, 1991 WL 152533, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. July 30, 1991), later opinion, 1992 WL 33926, 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); *Poindexter v. National Mtge. Corp.,* 94cv45814, 1995 WL 242287, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); *Sanders v. Lincoln Service Corp.,* 91cv4542, 1993 WL 1125433, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. April 5, 1993); *Robinson v. Empire of America Realty Credit Corp.,* 90cv5063, 1991 WL 26593, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); *In re Mortgage Escrow Deposit Litigation,* M.D.L. 899, 1994 WL 496707, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 9, 1994); *Greenberg v. Republic Federal S. & L. Ass'n,* 94cv3789, 1995 WL 263457, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

20.     The recoveries in the escrow overcharge cases alone are over $250 million. *Leff*

6

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

was the seminal case on mortgage escrow overcharges.

21.     The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

22.     **Bankruptcy:** The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric. *Conley v. Sears, Roebuck*, 1:97cv11149 (D.Mass); *Fisher v. Lechmere Inc.*, 1:97cv3065 (N.D.Ill.). These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. *Bessette v. Avco Financial Services*, 230 F.3d 439 (1st Cir. 2000).

23.     **Automobile sales and financing practices:** The firm has brought many cases challenging practices relating to automobile sales and financing, including:

        a.      Hidden finance charges resulting from pass-on of discounts on auto purchases. *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927 (7th Cir. 1998).

        b.      Misrepresentation of amounts disbursed for extended warranties. *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689 (7th Cir. 1998); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); *Slawson v. Currie Motors Lincoln Mercury, Inc.*, 94cv2177, 1995 WL 22716, 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 13, 1995); *Cirone-Shadow v. Union Nissan, Inc.*, 955 F.Supp. 938 (N.D.Ill. 1997) (same); *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302 (N.D.Ill. 1995); *Shields v. Lefta, Inc.*, 888 F. Supp. 891 (N.D.Ill. 1995).

        c.      Spot delivery. *Janikowski v. Lynch Ford, Inc.*, 98cv8111, 1999 WL 608714, 1999 U.S. Dist. LEXIS 12258 (N.D.Ill., Aug. 5, 1999); *Diaz v. Westgate Lincoln Mercury, Inc.*, 93cv5428, 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. Nov. 14, 1994); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

        d.      Force placed insurance. *Bermudez v. First of America Bank Champion, N.A.*, 860 F.Supp. 580 (N.D.Ill. 1994); *Travis v. Boulevard Bank*, 93cv6847, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill. 1995); *Moore v. Fidelity Financial Services, Inc.*, 884 F. Supp. 288 (N.D.Ill. 1995).
        e.      Improper obligation of cosigners. *Lee v. Nationwide Cassell*, 174 Ill.2d 540, 675 N.E.2d 599 (1996); *Taylor v. Trans Acceptance Corp.*, 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002).

        f.      Evasion of FTC holder rule. *Brown v. LaSalle Northwest Nat'l Bank*, 148 F.R.D. 584 (N.D.Ill. 1993), later opinion, 820 F.Supp. 1078 (N.D.Ill. 1993), later opinion, 92cv8392, 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

24.     These cases also had a substantial effect on industry practices. The warranty cases, such as *Grimaldi, Gibson, Slawson, Cirone-Shadow, Chandler,* and *Shields*, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

25.     **Predatory lending practices:** The firm has brought numerous cases challenging

7

predatory mortgage and "payday" lending practices, both as individual and class actions. *Jackson v. Payday Financial LLC*, 764 F.3d 765 (7th Cir. 2014), *cert. denied*, 135 S.Ct. 1894 (2015); *Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572 (Ind. Sup. Ct. 2001); *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748 (7th Cir. 2000); *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007); *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760 (7th Cir. 2006); *Laseter v. Climateguard Design & Installation LLC*, 931 F.Supp.2d 862 (N.D.Ill. 2013); *Hubbard v. Ameriquest Mortg. Co.*, 624 F.Supp.2d 913 (N.D.Ill. 2008); *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D.Ill. 2007); *Pena v. Freedom Mortg. Team, Inc.*, 07cv552, 2007 WL 3223394, 2007 U.S. Dist. LEXIS 79817 (N.D.Ill., October 24, 2007); *Miranda v. Universal Fin. Group, Inc.*, 459 F. Supp. 2d 760 (N.D.Ill. 2006); *Parker v. 1-800 Bar None, a Financial Corp., Inc.*, 01cv4488, 2002 WL 215530 (N.D.Ill., Feb. 12, 2002); *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D.Mich. 2001); *Van Jackson v. Check 'N Go of Illinois, Inc.*, 193 F.R.D. 544 (N.D.Ill. 2000), later opinion, 114 F. Supp. 2d 731 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1085 (N.D.Ill. 2000); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D.Tex. 2000); *Donnelly v. Illini Cash Advance, Inc.*, 00cv94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); *Jones v. Kunin*, 99cv818, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); *Davis v. Cash for Payday*, 193 F.R.D. 518 (N.D.Ill. 2000); *Reese v. Hammer Fin. Corp.*, 99cv716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); *Pinkett v. Moolah Loan Co.*, 99cv2700, 1999 WL 1080596, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); *Gutierrez v. Devon Fin. Servs.*, 99cv 2647, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); *Vance v. National Benefit Ass'n*, 99cv2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

26.    **Other consumer credit issues:** The firm has also brought a number of other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

a.    Phony nonfiling insurance. *Edwards v. Your Credit Inc.*, 148 F.3d 427 (5th Cir. 1998); *Adams v. Plaza Finance Co.*, 168 F.3d 932 (7th Cir. 1999); *Johnson v. Aronson Furniture Co.*, 96cv117, 1997 U.S. Dist. LEXIS 3979 (N.D.Ill., March 31, 1997), later opinion, 1993 WL 641342 (N.D.Ill., Sept. 11, 1998).

b.    The McCarran Ferguson Act exemption. *Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037 (7th Cir. 1998).

c.    Loan flipping. *Emery v. American General*, 71 F.3d 1343 (7th Cir. 1995). *Emery* limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

d.    Home improvement financing practices. *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; *Heastie v. Community Bank of Greater Peoria*, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).

e.    Insurance packing. *Elliott v. ITT Corp.*, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

27.    **Automobile leases:** The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include *Lundquist v. Security Pacific Automotive Financial Services Corp.*, 993 F.2d 11 (2d Cir. 1993); *Kedziora v. Citicorp Nat'l Services, Inc.*, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 91cv3428, 1995

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

FILED DATE: 2/28/2023 10:11 AM    2023CH01940

U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); *Johnson v. Steven Sims Subaru and Subaru Leasing*, 92cv6355, 1993 WL 761231, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 WL 13074115, 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); *McCarthy v. PNC Credit Corp.*, 2:91CV00854 (PCD), 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994); *Simon v. World Omni Leasing Inc.*, 146 F.R.D. 197 (S.D.Ala. 1992).

28.    *Lundquist* and *Highsmith* are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the *Lundquist* case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

29.    **Insurance litigation:** Often securing recovery for a class requires enforcement of the rights under the defendant's insurance policy. The firm has extensive experience with such litigation. Reported decisions in such cases include: *Record-A-Hit, Inc. v. Nat'l Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Pietras v. Sentry Ins. Co.*, 06cv3576, 2007 WL 715759, 2007 U.S. Dist. LEXIS 16015 (N.D.Ill., March 6, 2007), later opinion, 513 F. Supp. 2d 983 (N.D.Ill. 2007); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 06cv2092, 2007 WL 2608559, 2007 U.S. Dist. LEXIS 65339 (N.D.Ill., Aug. 31, 2007); *National Fire Ins. Co. v. Tri-State Hose & Fitting, Inc.*, 06cv5256, 2007 U.S. Dist. LEXIS 45685 (N.D.Ill., June 21, 2007); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06cv4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill., June 4, 2007).

30.    Some of the other reported decisions in our cases include: *Elder v. Coronet Ins. Co.*, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); *Smith v. Keycorp Mtge., Inc.*, 151 B.R. 870 (N.D.Ill. 1992); *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); *Armstrong v. Edelson*, 718 F.Supp. 1372 (N.D.Ill. 1989); *Newman v. 1st 1440 Investment, Inc.*, 89cv6708, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. Jan. 15, 1993); *Mountain States Tel. & Tel. Co.*, v. District Court, 778 P.2d 667 (Colo. 1989); *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522 (N.D.Ill. 1988); *Haslam v. Lefta, Inc.*, 93cv4311, 1994 WL 117463, 1994 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); *Source One Mortgage Services Corp. v. Jones*, 88cv8441, 1994 WL 13664, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994); *Wilson v. Harris N.A.*, 06cv5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007). *Wendorf v. Landers*, 755 F.Supp.2d 972 (N.D.Ill. 2010); *QuickClick Loans LLC v. Russell*, 407 Ill.App.3d 46; 943 N.E.2d 166 (1st Dist. 2011), *pet. denied*, 949 N.E.2d 1103 (2011) and *Adkins v. Nestle Purina Petcare Co.*, 973 F.Supp.2d 905 (N.D.Ill. 2013).

31.    *Gordon v. Boden* is the first decision approving "fluid recovery" in an Illinois class action. *Elder v. Coronet Insurance* held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

9

Hearing Date: 5/1/2023 9:00 AM - 9:05 AM
Location: <<CourtRoomNumber>>
Judge: Calendar, 9

Atty. No. 41106

FILED
2/28/2023 10:11 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH01940
Calendar, 9
21649726

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

JOSE LOPEZ,                                    )
on behalf of Plaintiff and the class            )
described herein,                              )
                                               )
                    Plaintiff,                  )
                                               )      Case No. 2023-CH-01940
        vs.                                     )
                                               )
BANK OF ORRICK                                 )
and KENDALL BANK,                              )
                                               )
                    Defendants.                 )

FILED DATE: 2/28/2023 10:11 AM 2023CH01940

## <u>PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>

Plaintiff Jose Lopez respectfully requests that the Court certify that this action, alleging

violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") and the Illinois Consumer

Fraud Act, 815 ILCS 505/2 ("ICFA"), may proceed on behalf of a class against Defendants Bank of

Orrick and Kendall Bank.

The class is defined as: (a) all individuals with Illinois addresses (b) who were sent monthly

statements on a "Vault" line of credit with a positive outstanding balance (c) at any time during a

period beginning one year (Count I) or three years (Count II) prior to the filing of this action and

ending 20 days after the filing of this action.

Plaintiff is required to file a motion for class certification with the Complaint, *Ballard RN*

*Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.,* 2015 IL 118644, 48 N.E.3d 1060, and may request

leave to supplement it later.

In support of this motion, Plaintiff states:

## <u>NATURE OF THE CASE</u>

1.      Plaintiff Jose Lopez is a resident of Chicago.

2.      Defendant Bank of Orrick is a Missouri chartered bank with a place of business at

11225 College Blvd., Suite 150, Overland Park, KS 66210. It does business under the assumed name

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

of "Vault by Bank of Orrick."

3.     Defendant Kendall Bank is a Kansas chartered bank with a place of business at 11225 College Blvd., Overland Park, KS 66210. It also does business under the assumed name of "Vault."

4.     Defendants are under common ownership and management and act in concert to make high-interest lines of credit under the name "Vault."

5.     Plaintiff Jose Lopez obtained an open-end "Vault" line of credit in June 2022.

6.     The account opening documents are issued by Kendall Bank (Exhibit A).

7.     Later documents such as monthly statements (Exhibits B through Q) purport to come from "Vault" or "Vault by Bank of Orrick" and direct inquiries to "Vault by Bank of Orrick."

8.     The obligation to issue monthly statements that comply with TILA is that of the "creditor."

9.     Plaintiff Jose Lopez borrowed money on the line of credit.

10.     Plaintiff used the money for personal, family or household purposes and not for business purposes.

11.     The "Vault" credit arrangement constitutes "open end" credit.

12.     "Open end" credit is defined in 15 U.S.C. § 1602(j) as follows:

(j)The terms "open end credit plan" and "open end consumer credit plan" mean a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance. A credit plan or open end consumer credit plan which is an open end credit plan or open end consumer credit plan within the meaning of the preceding sentence is an open end credit plan or open end consumer credit plan even if credit information is verified from time to time.

13.     The annual percentage rate on the line of credit was 379%.

14.     Mr. Lopez was sent monthly statements of which examples are attached as Exhibits B-Q. They purport to come from "Vault" or "Vault by Bank of Orrick" and direct inquiries to "Vault by Bank of Orrick."

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

15.     Both Kendall Bank, the issuer and original creditor of the line of credit, and Bank of Orrick, identified as the creditor on the monthly statements, are responsible for the contents of the monthly statements.

16.     In order to protect consumers against oppressive open-end credit obligations, TILA, at 15 U.S.C. § 1637, requires certain information about the length of time necessary to repay open end credit to appear on each monthly statement:

(b)     Statement required with each billing cycle

The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable: . . .

(11) . . .

(B)     Repayment information that would apply to the outstanding balance of the consumer under the credit plan, including—

(i)     the number of months (rounded to the nearest month) that it would take to pay the entire amount of that balance, if the consumer pays only the required minimum monthly payments and if no further advances are made;

(ii)    the total cost to the consumer, including interest and principal payments, of paying that balance in full, if the consumer pays only the required minimum monthly payments and if no further advances are made;

(iii)   the monthly payment amount that would be required for the consumer to eliminate the outstanding balance in 36 months, if no further advances are made, and the total cost to the consumer, including interest and principal payments, of paying that balance in full if the consumer pays the balance over 36 months; and

(iv)    a toll-free telephone number at which the consumer may receive information about accessing credit counseling and debt management services.

(C)

(i)     Subject to clause (ii), in making the disclosures under subparagraph (B), the creditor shall apply the interest rate or

-3-

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

rates in effect on the date on which the disclosure is made until the date on which the balance would be paid in full.

(ii)    If the interest rate in effect on the date on which the disclosure is made is a temporary rate that will change under a contractual provision applying an index or formula for subsequent interest rate adjustment, the creditor shall apply the interest rate in effect on the date on which the disclosure is made for as long as that interest rate will apply under that contractual provision, and then apply an interest rate based on the index or formula in effect on the applicable billing date.

(D)    All of the information described in subparagraph (B) shall—

(i)    be disclosed in the form and manner which the Bureau shall prescribe, by regulation, and in a manner that avoids duplication; and

(ii)    be placed in a conspicuous and prominent location on the billing statement.

(E)    In the regulations prescribed under subparagraph (D), the Bureau shall require that the disclosure of such information shall be in the form of a table that—

(i)    contains clear and concise headings for each item of such information; and

(ii)    provides a clear and concise form stating each item of information required to be disclosed under each such heading.

(F)    In prescribing the form of the table under subparagraph (E), the Bureau shall require that—

(i)    all of the information in the table, and not just a reference to the table, be placed on the billing statement, as required by this paragraph; and

(ii)    the items required to be included in the table shall be listed in the order in which such items are set forth in subparagraph (B).

(G)    In prescribing the form of the table under subparagraph (D), the Bureau shall employ terminology which is different than the terminology which is employed in subparagraph (B), if such terminology is more easily understood and conveys substantially the same meaning.

17.    This disclosure is commonly known as the "Schumer Box."

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

18.    Defendants failed to provide the "Schumer Box."

19.    It is the standard policy and practice of Defendants to fail to provide the "Schumer Box."

20.    As a result, Plaintiff paid Defendants an excessive amount of interest.

21.    Count I alleges that Defendants thereby violated TILA. Count II alleges that Defendants engaged in unfair and deceptive acts and practices, in violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by intentionally omitting required disclosures for the purpose and with the effect of inducing consumers to use unconscionably priced credit.

## REQUIREMENTS FOR CLASS CERTIFICATION

22.    Section 2-801 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, states:

Prerequisites for the maintenance of a class action.

An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

(1)    The class is so numerous that joinder of all members is impracticable.

(2)    There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3)    The representative parties will fairly and adequately protect the interest of the class.

(4)    The class action is an appropriate method for the fair and efficient adjudication of the controversy.

Although the statute was modeled after Rule 23 of the Federal Rule of Civil Procedure, some differences exist between the two. *Eshaghi v. Hanley Dawson Cadillac Co.,* 214 Ill. App. 3d 995, 999, 574 N.E.2d 760, 762 (1st Dist. 1991).

23.    The class action determination is to be made as soon as practicable after the commencement of an action brought as a class action and before any consideration of the merits. 735 ILCS 5/2-802. The circuit court has discretion as to whether an action may proceed as a class action. *Haywood v. Superior Bank,* 244 Ill. App. 3d 326, 328, 614 N.E.2d 461, 463 (1st Dist. 1993)

FILED DATE: 2/28/2023 10:11 AM    2023CH01940

(overturning the lower court's denial of class certification in a landlord-tenant case).

24.     Class actions are essential to enforce laws protecting consumers. As the court stated

in *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist. 1991):

> In a large and impersonal society, class actions are often the last barricade of consumer
> protection. . . . To consumerists, the consumer class action is an inviting procedural device to
> cope with frauds causing small damages to large groups. The slight loss to the individual,
> when aggregated in the coffers of the wrongdoer, results in gains which are both handsome
> and tempting. The alternatives to the class action  -- private suits or governmental actions -
> - have been so often found wanting in controlling consumer frauds that not even the ardent
> critics of class actions seriously contend that they are truly effective. The consumer class
> action, when brought by those who have no other avenue of legal redress, provides
> restitution to the injured, and deterrence of the wrongdoer. (574 N.E.2d at 764, 766)

25.     As demonstrated below, each of the requirements for class certification is met.

26.     Congress expressly recognized the propriety of a class action under TILA by

providing special damage provisions and criteria in 15 U.S.C. § 1640 for TILA class action cases. In

revising 15 U.S.C. § 1640 to expressly refer to class actions, Congress recognized that "potential class

action liability is an important encouragement to the voluntary compliance which is so necessary to

insure nationwide adherence to uniform disclosure." *Bantolina v. Aloha Motors*, 419 F.Supp. 1116, 1120

(D.Haw. 1976). "The possibility of class-action exposure is essential to the prophylactic intent of the

Act, and is necessary to elevate truth-in-lending lawsuits from the ineffective nuisance category to the

type of suit which has enough sting to insure that management will strive with diligence to achieve

compliance." *Bantolina*, 419 F.Supp. at 1120, citing the 1972 Federal Reserve Board annual report on

the Truth in Lending Act. Since 15 U.S.C. § 1640 was amended to provide for class actions, classes

have been certified in a substantial number of TILA actions. *Haynes v. Logan Furniture Mart, Inc.*, 503

F.2d 1161 (7th Cir. 1974); *Adiel v. Chase Fed. S. & L. Ass'n*, 810 F.2d 1051 (11th Cir. 1987); *Hughes v.

Cardinal Fed. S. & L. Ass'n*, 566 F.Supp. 834 (S.D.Ohio 1983); *Fetta v. Sears, Roebuck & Co.*, 77 F.R.D.

411 (D.R.I. 1977); *Bantolina v. Aloha Motors, Inc., supra*, 419 F.Supp. 1116, 1122 (D.Haw. 1976); *Jones v.

Goodyear Tire & Rubber Co.*, 442 F.Supp. 1157 (E.D.La. 1977); *Simon v. World Omni Leasing, Inc.*, 146

F.R.D. 197 (S.D.Ala. 1992); *Gutierrez v. Devon Financial Services, Inc.*, 99cv2647, 1999 U.S. Dist. LEXIS

FILED DATE: 2/28/2023 10:11 AM    2023CH01940

18696 (N.D.Ill., Oct. 6, 1999); *Pinkett v. Moolah Loan Co.,* 99cv2700, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); *Van Jackson v. Check 'N Go of Illinois, Inc.,* 193 F.R.D. 544 (N.D.Ill. 2000).

**Numerosity**

27.     Section 2-801(1) parallels the language of Federal Rule of Civil Procedure 23(a)(1); therefore, federal case law is instructive on the numerosity requirements under the Illinois Rules. *Wood River Area Dev. Corp. v. Germania Fed. Sav. & Loan Ass'n,* 198 Ill. App. 3d 445, 450, 555 N.E.2d 1150, 1153 (5th Dist. 1990). The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is about 10-40. *Kulins v. Malco,* 121 Ill. App. 3d 520, 530, 459 N.E.2d 1038 (1st Dist. 1984) (19 and 47 members sufficient); *Swanson v. American Consumer Industries,* 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D. Ill. 1986) (10-29 members sufficient).

28.     Illinois case law further indicates that "[t]he number of class members is relevant, not determinative." *Wood River Area Dev. Corp.,* 198 Ill. App. 3d at 450, 555 N.E. 2d at 1153. Where the class size is smaller, other factors may come into play to demonstrate that joinder is impractical, including: (1) geographical spread of class members, (2) ease of identifying and locating class members, (3) the knowledge and sophistication of class members and their need for protection, (4) the size of class members' claims, and (5) the nature of the case. *Id.* at 450-51, 555 N.E. 2d at 1153-54.

29.     It is not necessary that the precise number of class members be known: "A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Lit.,* 95 F.R.D. 321 (E.D.N.Y. 1982); *Lewis v. Gross,* 663 F.Supp. 1164, 1169 (E.D.N.Y. 1986). The Court may "make common sense assumptions in order to find support for numerosity." *Evans v. United States Pipe & Foundry,* 696 F.2d 925, 930 (11th Cir. 1983). "The court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since

FILED DATE: 2/28/2023 10:11 AM 2023CH01940

discovery is not essential to most cases in order to reach a class determination. . . . Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* (3d ed. 1995), §7.22.

30.     In the present case, Plaintiff alleges, based on the volume of Defendants' lending activity and the use of form documents, that there are more than 40 class members, making them so numerous that joinder is impracticable.

31.     While discovery will be needed to determine the precise class size, it is reasonable to infer that numerosity is satisfied. *Wood River Area Dev. Corp.*, 198 Ill. App. 3d at 450, 555 N.E.2d at 1153 (concurring with a leading scholar's assertion that a class size of 40 clearly satisfies numerosity and that a class size of 25 likely satisfies numerosity); *Swiggett v. Watson*, 441 F.Supp. 254, 256 (D.Del. 1977) (an action challenging transfers of title pursuant to Delaware motor vehicle repairer's lien, the fact the Department of Motor Vehicles issued printed forms for such transfer was in of itself sufficient to show that the numerosity requirement was satisfied); *Westcott v. Califano*, 460 F. Supp. 737, 744 (D.Mass. 1978) (in action challenging certain welfare policies, existence of policies and 148 families who were denied benefits to which policies applied sufficient to show numerosity, even though it was impossible to identify which of 148 families were denied benefits because of policies complained of); *Carr v. Trans Union Corp.*, 94cv0022, 1995 U.S. Dist. LEXIS 567, 1995 WL 20865 (E.D. Pa. Jan. 12, 1995) (Fair Debt Collection Practices Act class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); *Colbert v. Trans Union Corp.*, 93cv6106, 1995 U.S. Dist. LEXIS 578, 1995 WL 20821 (E.D. Pa. Jan. 12, 1995) (same).

**Common Questions and Predominance**

32.     A common question may be shown when the claims of the individual members of the class are based on the common application of a statute or they were aggrieved by the same or similar misconduct. *McCarthy v. La Salle Nat'l Bank & Trust Co.*, 230 Ill. App. 3d 628, 634, 595 N.E.2d 149,

-8-

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

153 (1st Dist.1992).

33.     In the present case, the predominant common questions are:

    a.     Whether Defendants' monthly statements comply with TILA

    b.     Whether Defendants, by omitting required disclosures of the length of time for repayment of their triple-digit extensions of credit, engaged in unfair and deceptive acts and practices in violation of the ICFA.

34.     Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984).

35.     The only individual issue is the identification of the class members, a matter easily ascertainable from the files of Defendants.

36.      Questions readily answerable from a party's files do not present an obstacle to class certification. *Heastie v. Community Bank*, 125 F.R.D. 669 (N.D.Ill. 1989) (court found that common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank").

**<u>Adequacy of Representation</u>**

37.     The class action statute requires that the class representative provide fair and adequate protection for the interests of the class.  That protection involves two factors:  (a) the attorney for the class must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative must not have interests antagonistic to those of the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

38.     Plaintiff understands the obligations of a class representative, and has retained experienced counsel, as is indicated by <u>Exhibit R</u>, which sets forth counsel's qualifications.

39.     There are no conflicts between Plaintiff and the class members.

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

<u>Appropriateness of Class Action</u>

40.     Efficiency is the primary focus in determining whether the class action is an appropriate method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank,* 57 F.R.D. 545 (N.D.Ill. 1972). It is proper for a court, in deciding this issue, to consider the ". . . inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 (7th Cir. 1974).

41.     In this case there is no better method available for the adjudication of the claims which might be brought by each individual consumer. The vast majority of consumers are undoubtedly unaware that their rights are being violated. In addition, the modest size of the claims makes it unlikely that consumers would be able to pay to retain counsel to protect their rights on an individual basis.

42.     The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .

*In re Folding Carton Antitrust Lit.,* 75 F.R.D. 727, 732 (N.D.Ill. 1977) (citations omitted).) Another court noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see e.g., *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985) ('Class actions...may permit the plaintiff to pool claims which would be uneconomical to litigate individually.') The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

FILED DATE: 2/28/2023 10:11 AM    2023CH01940

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 at 628, 629 (E.D.Pa 1994).

### CONCLUSION

43.    The Court should certify this action as a class action.


Respectfully submitted,


*/s/ Daniel A. Edelman*
Daniel A. Edelman


Daniel A. Edelman
Tara L. Goodwin
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com
Atty. No. 41106 (Cook)

FILED DATE: 2/28/2023 10:11 AM   2023CH01940

## CERTIFICATE OF SERVICE

     I, Daniel A. Edelman, certify that I had a copy of this document placed for service with the complaint.

                                  */s/ Daniel A. Edelman*
                                  Daniel A. Edelman