IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE LOPEZ,<br>On behalf of Plaintiff and the class<br>Described herein,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF ORRICK<br>And KENDALL BANK,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 1:23-cv-2063<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT – CLASS ACTION**

Plaintiff Jose Lopez ("Plaintiff") alleges that Defendants Bank of Orrick and Kendall Bank (collectively, "Defendants") violated the Truth in Lending Act ("TILA") and the Illinois Consumer Fraud Act ("ICFA") by failing to include repayment disclosures required under TILA in his open-end credit agreement monthly statements. Plaintiff's claim fails as a matter of law because open-end credit accounts like his are expressly excluded under TILA from the repayment disclosure requirements he seeks to impose on Defendants.

Further, Plaintiff's claim under the ICFA is dependent on a finding that Defendants committed a TILA violation – which they have not. Accordingly, Plaintiff's Complaint – Class Action ("Complaint") should be dismissed in its entirety with prejudice.

**I.      Statement of Facts from the Complaint.**

Plaintiff obtained an open-end "Vault" line of credit in June 2022, and he borrowed money on this line of credit. (Complaint ¶¶ 6, 10). Plaintiff states that his line of credit is an "open end" credit under TILA as set forth in 15 U.S.C. § 1602(j). (Complaint ¶¶ 12, 13).

1

As set forth in Plaintiff's Open-End Credit Agreement:

Your Credit Line Account is an open-end line of credit for the principal amount of $1,800.00, which will be your "Credit Limit" under this Agreement. You may borrow, repay and re-borrow amounts from time to time up to your Credit Limit, subject to your continuing eligibility under this Agreement.

…

We will make credit advances to you upon request from time to time up to your Credit Limit. As you repay advanced amounts, your available Credit Limit will be restored and will be available for future credit advances. Requests for credit advances must be made in increments of $100.00 and be for a minimum of $200.00. You may request a credit advance initially when signing this Agreement and in the future through your online account at **secure.myvaultloan.com**. You are not entitled to obtain a credit advance if (1) the request exceeds your Credit Limit, (2) your previous periodic payment was not paid in full and on time, or (3) if your Credit Line Account is not otherwise in good standing.

…

If your request for a credit advance is approved, we will process the disbursement of your credit advance proceeds within one (1) business day of the approval. You authorize us to use commercially reasonable efforts to initiate an ACH credit entry to deposit the proceeds of your credit advance into your Bank Account as described in this section.

(Exhibit A to Complaint) (bold in original).

Plaintiff admits that he received monthly statements for his "Vault" line of credit. (Complaint ¶ 15). Plaintiff alleges that his monthly statements failed to include all the required TILA repayment disclosures. (Complaint ¶¶ 17, 18, 27, 28).

## II. Plaintiff's Complaint Fails to State a Claim Under Federal Rule of Civil Procedure 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) directs a court to dismiss a complaint that fails to state a claim upon which relief can be granted. Courts considering a 12(b)(6) motion must treat all well-pleaded facts as true, but courts are "not bound to accept as true a legal conclusion couched as a factual allegation" and such "labels and conclusions" are insufficient. *Jackson v. Bank of Am. Corp.*, 711 F.3d 788, 794 (7th Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A Rule 12(b)(6) motion should be granted if the complaint fails to "to state a claim

2

that is plausible on its face." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (citing *Twombly*, 550 U.S. at 570). A plaintiff must allege "enough details about the subject-matter of the case to present a story that holds together." *Id.* (quotation omitted).

### A. Plaintiff's Alleged TILA Violation Fails as a Matter of Law.

Plaintiff alleges that Defendants have violated Section 1637(b)(11) of TILA by failing to include certain repayment disclosures. (Complaint ¶¶ 17, 18, 27, 28). Plaintiff's TILA claim fails as a matter of law because the Board of Governors of the Federal Reserve System (the "Board") has declared that Section 1637(b)(11)'s repayment disclosure requirements do not apply to open-end credit accounts.

#### 1. The Board has statutory authority to determine the scope of TILA.

Congress provided the Board with the authority to determine the scope of TILA. Transactions exempted from TILA include "[t]ransactions for which the Board, by rule, determines that coverage under this subchapter is not necessary to carry out the purposes of this subchapter." 15 U.S.C. § 1603(5).

Likewise, the "Board may exempt, by regulation, from all or part of this subchapter any class of transactions … for which, in the determination of the Board, coverage under all or part of this subchapter does not provide a meaningful benefit to consumers in the form of useful information or protection. 15 U.S.C. § 1604(f)(1). Congress directed the Board to consider the following factors when determining which classes of transactions to exempt under Section 1604(f)(1):

> (A) The amount of the loan and whether the disclosures, right of rescission, and other provisions provide a benefit to the consumers who are parties to such transactions, as determined by the Board.
>
> (B) The extent to which the requirements of this subchapter complicate, hinder, or make more expensive the credit process for the class of transactions.
>
> (C) The status of the borrower, including—

3

> > (i) any related financial arrangements of the borrower, as determined by the Board;
> >
> > (ii) the financial sophistication of the borrower relative to the type of transaction; and
> >
> > (iii) the importance to the borrower of the credit, related supporting property, and coverage under this subchapter, as determined by the Board;
>
> (D) whether the loan is secured by the principal residence of the consumer; and
>
> (E) whether the goal of consumer protection would be undermined by such an exemption.

15 U.S.C. § 1604(f)(2).

Finally, Congress declared that the reliance on any of the Board's rules, regulations, or interpretations provide a complete defense to any alleged TILA violation:

> No provision of this section, section 1607(b) of this title, section 1607(c) of this title, section 1607(e) of this title, or section 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

15 U.S.C. § 1640(f).

> **2. The Board has declared that open-end credit accounts need not include the repayment disclosures set forth in Section 1637(b)(11).**

There is no dispute that Plaintiff had an open-end credit account with Defendants. Plaintiff himself admits that he has an open-end credit account as defined in 15 U.S.C. § 1602(j). (Complaint ¶ 13). Plaintiff does not, nor could he, allege that he had a credit card issued by the Defendants to access the funds in his open-end credit account. Instead, if Plaintiff wished to obtain a credit advance, then he was required to apply for such credit advance online in increments of $100 and, if approved, Defendants would deposit the credit advance in his bank account.

4

In 2010, the Board limited the repayment disclosures listed in Section 1637(b)(11) to credit card accounts:

> Limiting the repayment disclosure requirements to credit card accounts. Under the Credit Card Act, the repayment disclosure requirements apply to all open-end accounts (such as credit card accounts, HELOCs, and general purpose credit lines). As discussed above, in the January 2009 Regulation Z Rule, the Board limited the minimum payment disclosures required by the Bankruptcy Act to credit card accounts. For similar reasons, in the October 2009 Regulation Z Proposal, the Board proposed to limit the repayment disclosures in the Credit Card Act to credit card accounts under open-end (not home-secured) consumer credit plans, as that term would have been defined in proposed § 226.2(a)(15)(ii).
>
> As proposed, the final rule limits the repayment disclosures in the Credit Card Act to credit card accounts under open-end (not home-secured) consumer credit plans, as that term is defined in § 226.2(a)(15)(ii). As discussed in more detail in the section-by-section analysis to § 226.2(a)(15)(ii), the term 'credit card account under an open-end (not home-secured) consumer credit plan' means any open-end account accessed by a credit card, except this term does not include HELOC accounts subject to § 226.5b that are access by a credit card device or overdraft lines of credit that are accessed by a debit card. Thus, based on the proposed exemption to limit the repayment disclosures to credit card accounts under open-end (not home-secured) consumer credit plans, the following products would be exempt from the repayment disclosures in TILA Section 127(b)(11), as set forth in the Credit Card Act: (1) HELOC accounts subject to § 226.5b even if they are accessed by a credit card device; (2) overdraft lines of credit even if they are accessed by a debit card; and (3) open-end credit plans that are not credit card accounts, such as general purpose lines of credit that are not accessed by a credit card.
>
> The Board adopts this rule pursuant to its exception and exemption authorities under TILA Section 105. Section 105(a) authorizes the Board to makes exceptions to TILA to effectuate the statute's purposes, which include facilitating consumers' ability to compare credit terms and helping consumers avoid the uninformed use of credit. See 15 U.S.C. § 1601(a), 1604(a). Section 105(f) authorizes the Board to exempt any class of transactions from coverage under any part of TILA if the Board determines that coverage under that part does not provide a meaningful benefit to consumers in the form of useful information or protection. See 15 U.S.C. § 1604(f)(1). The Board must make this determination in light of specific factors. See 15 U.S.C. § 1604(f)(2). These factors are: (1) the amount of the loan and whether the disclosures provide a benefit to consumers who are parties to the transaction involving a loan of such amount; (2) the extent to which the requirement

5

complicates, hinders, or makes more expensive the credit process; (3) the status of the borrower, including any related financial arrangements of the borrower, the financial sophistication of the borrower relative to the type of transaction, and the importance to the borrower of the credit, related supporting property, and coverage under TILA; (4) whether the loan is secured by the principal residence of the borrower; and (5) whether the exemption would undermine the goal of consumer protection.

As discussed in more detail below, the Board has considered each of these factors carefully, and based on that review, believes that the exemption is appropriate.

*Truth in Lending*, 75 FR 7658-01, 7677-78, 2010 WL 593303 (Feb. 22, 2010).

The Board went on to state:

2. Overdraft lines of credit and other general purpose credit lines. The final rule also exempts overdraft lines of credit (even if they are accessed by a debit card) and general purpose credit lines that are not accessed by a credit card from the repayment disclosure requirements set forth in TILA Section 127(b)(11), as revised by the Credit Card Act, for several reasons. 15 U.S.C. § 1637(b)(11). First, these lines of credit are not in wide use. The 2007 Survey of Consumer Finances data indicates that fewer families – 1.7 percent – had a balance on lines of credit other than a home-equity line or credit card at the time of the interview. (By comparison, 73 percent of families had a credit card, and 60.3 percent of these families had a credit card balance at the time of the interview.) Second, these lines of credit typically are neither promoted, nor used, as long-term credit options of the kind for which the repayment disclosures are intended. Third, the Board is concerned that the operational costs of requiring creditors to comply with the repayment disclosures for overdraft lines of credit and other general purpose lines of credit may cause some institutions to no longer provide these products as accommodations to consumers, to the detriment of consumer who currently use these products. For these reasons, the Board uses its TILA Section 105(a) and 105(f) authority (as discussed above) to exempt overdraft lines of credit and other general purpose credit lines from the repayment disclosure requirements, because in this context the Board believes the repayment disclosures are not necessary to effectuate the purposes of TILA. 15 U.S.C. § 1604(a) and (f).

*Id.* at 7678.

Similarly, the Board has issued regulations addressing repayment disclosures. The Board detailed the required repayment disclosures in each periodic statement "for a credit card account under an open-end (not home-secured) consumer credit plan." 12 C.F.R. § 226.7(b)(12)(i).

6

Section 226.7 does not provide any repayment disclosure requirements for general purpose open-end credit agreements other than credit card accounts.

Finally, Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act transferred rulemaking authority for a number of consumer financial protection laws from the Board to the Bureau of Consumer Financial Protection ("Bureau"). The Bureau, however, has made no substantive changes to Regulation Z:

> The interim final rule substantially duplicates the Board's Regulation Z as the Bureau's new Regulation Z, 12 CFR part 1026, making only certain non-substantive, technical, formatting, and stylistic changes. To minimize any potential confusion, the Bureau is preserving the numbering system of the Board's Regulation Z, other than the new part number. While this interim final rule generally incorporates the Board's existing regulatory text, appendices (including model forms and clauses), and supplements, the rule has been edited as necessary to reflect nomenclature and other technical amendments required by the Dodd-Frank Act. Notably, this interim final rule does not impose any new substantive obligations on regulated entities.

*Truth in Lending (Regulation Z)*, 76 FR 79768-01, 79768, 2011 WL 6399678 (Dec. 22, 2011). 12 C.F.R. § 226.7(b)(12) remains unchanged since it was originally issued by the Board.

The Board has exempted Plaintiff's open-end credit account from the repayment disclosures set forth in Section 1637(b)(11). The Board's rules and regulations were issued pursuant to Congressional authority, and TILA provides a complete defense to Defendants for relying on, and complying with, the Board's rules and regulations. Thus, Plaintiff's allegation that Defendants have violated TILA for failure to comply with Section 1637(b)(11) fails as a matter of law.

    **B.**    **Plaintiff's Claim under the Illinois Consumer Fraud Act fails as a matter of law.**

The sole basis for Defendants' alleged violation of the ICFA is that "Defendants intentionally omitted required disclosures for the purpose and with the effect of inducing

7

consumers to use unconsciously priced credit." (Complaint ¶ 31). The Complaint does not identify any "required disclosures" other than those set forth under TILA. As explained above, Plaintiff's open-end credit account is exempt from the repayment disclosure requirements of TILA. Accordingly, Plaintiff's alleged ICFA claim fails for the same reason as his TILA claim – Defendants were not required to provide any repayment disclosures for its open-end credit accounts.

Additionally, Defendants' compliance with TILA bars any claim under the ICFA. *See Swanson v. Bank of Am., N.A.*, 566 F. Supp. 2d 821, 828, aff'd, 559 F.3d 653 (7th Cir. 2009) (holding credit card holder could not state a claim under the ICFA because the issuer's practice complied with TILA); *Hoffman v. Grossinger Motor Corp.*, 218 F.3d 680, 684 (7th Cir. 2000) (affirming dismissal of claim under the ICFA because "compliance with the disclosure requirements in the federal Truth in Lending Act is a defense under the Illinois act."); *Najieb v. William Chrysler-Plymouth*, No. 01-C-8295, 2002 WL 31906466, at *32 (N.D. Ill. Dec. 30, 2002) (ruling defendant's compliance with TILA disclosure requirements a complete defense to liability under the ICFA); 815 ILCS 505/10b(1) (stating that the ICFA does not apply to "actions or transactions specifically authorized by laws administered by any regulatory body … acting under statutory authority of this State or United States.").

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court dismiss Plaintiff's claims with prejudice and enter judgment in Defendants' favor, and for any other available relief.

Respectfully Submitted,

/s/ Andrew J. Scavotto
Andrew J. Scavotto, Ill. Bar #6288575

8

        STINSON LLP
        7700 Forsyth Blvd., Suite 1100
        St. Louis, MO 63105
        Tel:    (314) 719-3048
        Fax:   (314) 259-3959
        Andrew.scavotto@stinson.com

        George F. Verschelden
        Michelle A. Fox
        **STINSON LLP**
        1201 Walnut, Suite 2900
        Kansas City, MO 64106
        Telephone: (816) 842-8600
        Facsimile: (816) 691-3495
        George.verschelden@stinson.com
        Michelle.fox@stinson.com

        ATTORNEYS FOR DEFENDANTS BANK OF ORRICK AND KENDALL BANK

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the above and foregoing was served via United States mail, postage prepaid, this 31st day of March, 2023 to:

    Daniel A. Edelman
    Tara L. Goodwin
    Matthew J. Goldstein
    EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
    20 South Clark Street, Suite 1500
    Chicago, IL 60603

                    /s/ Andrew J. Scavotto
                    Attorney for Defendants