IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| JOSE LOPEZ, on behalf of Plaintiff and the class described herein, | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Case No. 1:23-cv-02063 Judge Chang |
| BANK OF ORRICK and KENDALL BANK, | ) ) ) |  |
| Defendants. | ) ) |  |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

**I. DEFENDANTS ISSUE 379% LINES OF CREDIT WITHOUT DISCLOSING THE LENGTH OF TIME NECESSARY TO REPAY THEM**

This action concerns a predatory **379%** line of credit issued by Defendants over the Internet.

The Truth in Lending Act ("TILA") requires repayment disclosures for all open end credit arrangements. 15 U.S.C. § 1637(b)(11). Specifically, the creditor must disclose:

(A) A written statement in the following form: "Minimum Payment Warning: Making only the minimum payment will increase the amount of interest you pay and the time it takes to repay your balance.", or such similar statement as is established by the Bureau pursuant to consumer testing.

(B) Repayment information that would apply to the outstanding balance of the consumer under the credit plan, including—

(i) the number of months (rounded to the nearest month) that it would take to pay the entire amount of that balance, if the consumer pays only the required minimum monthly payments and if no further advances are made;

(ii) the total cost to the consumer, including interest and principal payments, of paying that balance in full, if the consumer pays only the required minimum monthly payments and if no further advances are made;

(iii) the monthly payment amount that would be required for the consumer to eliminate the outstanding balance in 36 months, if no further advances are made, and the total cost to the consumer, including interest and principal payments, of paying that balance in full if the consumer pays the balance over 36 months; and

    (iv)  a toll-free telephone number at which the consumer may receive information about accessing credit counseling and debt management services.

The repayment disclosures are commonly referred to as the "Schumer box."

  Defendants made no such disclosures. This is not disputed. Instead, Defendants claim they are exempt from this disclosure requirement.

## II. DEFENDANTS' CLAIMED EXEMPTION FROM THE DISCLOSURE REQUIREMENT

  TILA provided that the Federal Reserve Board may "by rule, determine[s] that coverage under this subchapter is not necessary to carry out the purposes of this subchapter," 15 U.S.C. § 1603(5), and "may exempt by regulation, from all or part of this subchapter any class of transactions . . . for which, in the determination of the Board, coverage under all or part of this subchapter does not provide a meaningful benefit to consumers in the form of useful information or protection." 15 U.S.C. § 1604(f)(1).

  Defendants rely on those two provisions, plus a provision in the damages section of TILA, 15 U.S.C. § 1640(f), removing liability for "any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board" or "in conformity with any rule, regulation, or interpretation thereof by an official or employee of the Federal Reserve System to issue such interpretations or approvals under such procedures as the Board may prescribe therefor . . . ." Section 1640(f) likewise depends on the existence of a "rule" or "regulation".

  In February 2010, when the statements cited by Defendants were issued, the Federal Reserve Board still had authority to issue rules and regulations implementing TILA. Five months later, on July 21, 2010, Congress enacted the Dodd–Frank Wall Street Reform and Consumer Protection Act, which created a single agency charged with protecting consumers against financial abuse – the Consumer Financial Protection Bureau – and transferred authority over TILA to it.

### III. THERE IS NO "RULE" OR "REGULATION" EXEMPTING DEFENDANTS FROM THE REPAYMENT DISCLOSURE REQUIREMENT

There are two "rules" or "regulations" that implement TILA. One is Regulation Z, now 12 C.F.R. part 1026, formerly 12 C.F.R. part 226. The other is the Official Interpretation to Regulation Z, now 12 C.F.R. part 1026 Supplement I, formerly 12 C.F.R. part 226 Supplement I. (The rules were moved from part 226 to part 1026 when the CFPB took over administration of Regulation Z and the Official Interpretation, without change in substance.) Both of these are rules adopted pursuant to the rulemaking provisions of the Administrative Procedure Act and published in the Code of Federal Regulations.

One searches in vain for anything in either Regulation Z or the Official Interpretation which exempts issuers of open-end credit arrangements other than credit cards from providing repayment disclosures. Defendants do not cite anything. It simply does not exist.

Regulation Z and the Official Interpretation state positively that issuers of credit cards must issue payment disclosures. They do **not** state that the broader statutory language applicable to all open-end credit arrangements should not be applied to certain transactions.

Defendants point to (1) the fact that TILA is broader than Regulation Z and (2) four paragraphs in the statement of basis and purpose issued when Regulation Z was amended in February 2010 that purport to exempt from the repayment disclosures open-end credit arrangements which are not credit cards.

The February 2010 statement of basis and purpose occupies 134 single-spaced pages in the Federal Register, starting at 75 Fed.Reg. 7658. The revised regulations themselves occupy another 145 pages. The language relied upon by Defendants is on pages 7677 and 7688, i.e., 19 and 20 pages into a 279 page document, most of which deals with other matters. We have attached the entire February 2010 statement and regulations as Appendix A.

The insertion by the Federal Reserve Board of such language – just before it was deprived of authority to administer TILA altogether – does not constitute a "rule" or "regulation." It also is not

3

an "interpretation" of a "rule" or "regulation" by "an official or employee of the Federal Reserve System to issue such interpretations or approvals under such procedures as the Board may prescribe therefor . . . ." The interpretation must be of a "rule" or "regulation," which does not exist here.

Significantly, rules and regulations are codified in the Code of Federal Regulations so that they are readily available to the public affected by them. Statements of the Federal Reserve Board in issuing rules and regulations are not.

Granting exemptions allowing predatory lenders to make 379% lines of credit without telling the consumer how difficult they are to pay off is not something that should be done lightly or without strict compliance with the statutory requirements for an exemption.

**IV.    DEFENDANTS' CLAIMED EXEMPTION IS CONTRARY TO THE PLAIN LANGUAGE OF TILA**

When interpreting a statute, courts look to the plain language. *United States v. Foy*, 50 F.4th 616, 622 (7th Cir. 2022). "The task of resolving the dispute over the meaning of [statutory language] begins where all such inquiries must begin: with the language of the statute itself. . . . In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989).

Here, the plain language of TILA required that the Federal Reserve Board issue a "rule" or "regulation" specifying any transactions or classes of transactions it wished to exempt along with the justification for doing so. *Board of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361 (1986). The Federal Reserve Board did not issue such a rule or regulation.

If the exercise of statutory exemption authority requires the issuance of a "rule" or "regulation," that is what is required. *Murray v. UBS Sec., LLC*, 2015 U.S. Dist. LEXIS 22024, at *18 (S.D.N.Y. Feb. 24, 2015). Statements of lesser stature will not suffice.

As a result, the exemption claimed by Defendants does not exist. The complaint states a claim under TILA.

V. **PLAINTIFF'S CONSUMER FRAUD ACT CLAIM IS ALSO VALID**

It also follows that Plaintiff's complaint also states a claim under the Illinois Consumer Fraud Act. Violations of TILA "would also violate the generalized prohibition of fraud and misrepresentation under the CFA." *Herrara v. North & Kimball Grp., Inc.,* 01cv7349, 2002 U.S. Dist. LEXIS 2640, at *11, 2002 WL 253019 (N.D. Ill. Feb. 15, 2002).

VI. **CONCLUSION**

For the reasons stated, Defendants' motion to dismiss should be denied.

Respectfully submitted,

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6297473)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## **CERTIFICATE OF SERVICE**

Daniel A. Edelman certifies that on Monday, May 1, 2023, this document was filed via ECF, causing a copy to be sent to all counsel of record.

/s/ *Daniel A. Edelman*
Daniel A. Edelman