**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE LOPEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:23-CV-02063 |
| v. | ) | |
| | ) | |
| BANK OF ORRICK and KENDALL BANK, | ) | Judge Edmond E. Chang |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Jose Lopez brought this proposed class action against the Bank of Orrick and Kendall Bank in state court alleging violations of the Truth in Lending Act (commonly referred to as TILA), 15 U.S.C. § 1637, and the Illinois Consumer Fraud and Deceptive Business Practices Act (for short, the Fraud Act), 815 ILCS 505/2. R. 1-2, Compl. ¶ 1.[1] The Banks removed the case to federal court and moved to dismiss all claims. R. 1, Defs.' Notice of Removal; R. 6, Defs.' Mot. to Dismiss.[2] For the reasons explained below, the Banks' motion to dismiss is granted on all claims, and the Complaint is dismissed with prejudice.

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]The Court has federal question jurisdiction over the TILA claim under 28 U.S.C. § 1331, and supplemental jurisdiction over the Fraud Act claim under 28 U.S.C. § 1337.

## I. Background

When deciding a motion to dismiss, the Court accepts well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Lopez obtained an open-end line of credit from the Banks in June 2022. Compl. ¶ 6. Kendall Bank issued the account-opening documents, and the terms of the credit agreement stated that the credit limit was $1,800, with an annual percentage rate of 379% for credit advances. Compl. ¶ 7; R. 1-2, Compl., Exh. A at 25 (PDF page number). Lopez does not allege that this line of credit is for a credit card account. *See* Compl. Lopez borrowed money on this line of credit and used it for personal, family, or household purposes—not business purposes. *Id.* ¶ 11. He received monthly statements from "Vault" and "Vault by Bank of Orrick." *Id.* ¶ 8.

Lopez alleges that the Banks violated TILA by failing to provide required repayment disclosures for his open-end line of credit. Compl. ¶¶ 26–29. He further alleges that the Banks intentionally omitted the required disclosures to induce customers to use highly priced credit (which a 378% APR certainly is), in violation of the Fraud Act. *Id.* ¶¶ 30–32. The Banks do not dispute that that they did not provide the repayment disclosures. Instead, they argue that TILA's implementing regulation exclude open-end lines of credit, such as the one held by Lopez, from the repayment disclosure requirements. R. 7, Defs.' Br. at 5–7. The Banks also argue that their faithful compliance with the TILA regulation is a complete defense to Lopez's Fraud Act claim. *Id.* at 8.

2

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its fact." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

Ordinarily, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

3

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "in alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). And Rule 9(b)'s heightened pleading standard applies to fraud claims brought under the Fraud Act. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). Thus, Rule 9(b) requires that Lopez's complaint "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1991) (cleaned up). Put differently, his complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli*, 631 F.3d at 441–442 (cleaned up). Having said that, context—that is, the overall factual setting of a claim—is important in evaluating what level of detail is required under Rule 9(b). *See id.* at 442.

### III. Analysis

### A. Truth in Lending Act

Lopez claims that the Banks violated TILA by failing to include certain repayment disclosures on Lopez's monthly account statements. Compl. ¶ 17. The Banks argue that the regulations promulgated by the Federal Reserve Board and later adopted by the Consumer Financial Protection Bureau (referred to here as the Board and the Bureau, respectively) limit these repayment disclosure requirements to credit

4

card accounts and exempt general purpose open-end lines of credit, including Lopez's account. Defs.' Br. at 5–7. Lopez responds with two arguments: first, that there is no regulation exempting non-credit-card accounts from the disclosure requirement, and second, that even if there is a regulation that exempts Lopez's account from the disclosure requirement, the regulation would be in violation of TILA, which requires repayment disclosures for all open-end credit plans. R. 16, Pl.'s Resp. at 3–4; R. 37, Pl.'s Resp. to CFPB Reply at 1–2. The Court invited the Bureau to file an amicus brief on this question of statutory and regulatory interpretation. *See* R. 27, Minute Entry 6/10/24; R. 31, CFPB Amicus Br.; R. 35, CFPB Reply. As explained below, consistent with the Bureau's understanding of its own rules, the Court concludes that Lopez's account is exempt from the TILA disclosure requirement and Lopez has thus failed to state a claim against the Banks.

To start, TILA was passed to mandate disclosure of credit terms so that consumers would be informed and protected against unfair credit practices. 15 U.S.C. § 1601(a). TILA requires repayment disclosures on periodic statements for all open-end consumer credit plans: "[t]he creditor of any account under an *open end consumer credit plan* shall transmit to the obligor, for each billing cycle ... a statement setting forth" a list of items, including "[r]epayment information that would apply to the outstanding balance of the consumer under the credit plan ...." *Id.* § 1637(b), 1637(b)(11)(B) (emphasis added). TILA defines an "open end credit plan" as "a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which

may be computed from time to time on the outstanding unpaid balance." *Id.* § 1602(j). TILA itself does not narrow the class of open-end credit plans to which this disclosure requirement applies. But the current regulations implementing TILA specifically state: "for a *credit card account* under an open-end (not home-secured) consumer credit plan, a *card issuer* must provide the following disclosures on each periodic statement ...." 12 C.F.R. § 1026.7(b)(12)(i) (emphases added). The issue here is whether TILA's repayment disclosure requirements validly apply *only* to credit card account issuers.

The answer is yes, given the broad authority conferred on the Board (and now the Bureau) to issue exemptions from TILA's requirements. TILA originally granted the Board authority to "prescribe regulations to carry out the purposes of the" act, which included the power to "provide for such adjustments and *exceptions* for any class of transactions" from the requirements of the Act. Consumer Credit Protection Act, Pub. L. 90-321, § 105, 82 Stat. 146, 148 (1968) (emphasis added) (now codified at 15 U.S.C. § 105(a)). The Board then issued Regulation Z to implement TILA. *See* 12 C.F.R. § 226. Both TILA and Regulation Z have been amended several times. In 2005, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act. Pub. L. No. 109-8, 119 Stat. 23 (2005). The Bankruptcy Act contained provisions amending TILA that required new disclosures on periodic statements about the effects of making only minimum payments. *Id.* § 1301, 119 Stat. 204–08. In turn, the Board issued a final rule in January 2009 to implement the amendments. Truth in Lending, 74 Fed. Reg. 5244, 5245 (Jan. 29, 2009). In the rulemaking, the Board

6

explained that the "the final rule requires the minimum payment disclosures *only* for credit card accounts." 74 Fed. Reg. at 5335 (emphasis added). The Board stated that it was making this exemption "pursuant to the Board's authority under TILA Section 105(a) to make adjustments that are necessary to effectuate the purposes of TILA." *Id*. The Board codified this rule. 12 C.F.R. § 226.7(b)(12)(i) (2010) ("General disclosure requirements. Except as provided in paragraph (b)(12)(v) of this section, a card issuer, at its option, shall comply with any of paragraphs (b)(12)(ii), (b)(12)(iii) or (b)(12)(iv) …."); *Id.* § 226.7(b)(12)(v) (2010) ("Exemptions. Paragraph (b)(12) of this section does not apply to" credit lines accessed via methods other than credit cards, among others). Responding to comments from the public, the Board explained that "§ 226.7(b)(12)(i) makes clear that the minimum payment disclosure requirements only apply to credit card accounts" and not to "general purpose lines of credit" accessed without a credit card). 74 Fed. Reg. at 5337.

The Credit Card Accountability Responsibility and Disclosure Act of 2009 also amended TILA and established minimum repayment disclosure requirements for all open-end credit plans. Pub. L. No. 111-24, § 201, 123 Stat. 1734, 1743–45 (2009). The Board issued a final rule in February 2010 to implement those provisions and—once again—limited the minimum repayment disclosures specifically to credit card accounts. Truth in Lending, 75 Fed. Reg. 7658, 7677 (Feb. 22, 2010). ("Limiting the repayment disclosure requirements to credit card accounts. ... As proposed, the final rule limits the repayment disclosures in the Credit Card Act to credit card accounts under open-end (not home-secured) consumer credit plans ...."). The Board explained

7

that the "exemption to limit the repayment disclosures to credit card accounts under open-end (not home-secured) consumer credit plans" meant that the TILA's disclosure requirement would not apply to "general purpose lines of credit that are not accessed by a credit card." *Id.* The Board again stated that it adopted this rule "pursuant to its exception and exemption authorities under TILA Section 105" and listed several factors for exempting these accounts, including their lack of widespread use amongst consumers, lack of use as long-term credit options, and the possibility that the operational costs of providing disclosures might cause financial institutions to stop offering such products altogether. *Id.* at 7677–78. The Board codified this rule. 22 C.F.R. § 226.7(b)(12)(i) (2011) ("Repayment disclosures. … [F]or a credit card account under an open-end (not home-secured) consumer credit plan, a card issuer must provide the following disclosures on each periodic statement ….").

Congress then passed the Dodd-Frank Act in 2010, which transferred rulemaking authority for TILA from the Board to the Bureau. Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1100A, 124 Stat. 1376, 2107–09 (2010). With its new-found rulemaking authority, the Bureau passed an interim final rule in December 2011 that did not make substantive changes to the Board's Regulation Z. Truth in Lending (Regulation Z), 76 Fed. Reg. 79768 (Dec. 22, 2011). The Bureau explained that "[t]he interim final rule substantially duplicates the Board's Regulation Z as the Bureau's new Regulation Z, 12 CFR part 1026, making only certain non-substantive, technical, formatting, and stylistic changes." *Id.* The rule did "not impose any new substantive obligations on regulated entities." *Id.* The Bureau

8

finalized the December 2011 interim final rule without change in April 2016 after a notice-and-comment period. Finalization of Interim Final Rules Under Consumer Financial Protection Laws, 81 Fed. Reg. 25323, 25324 (Apr. 28, 2016). The Bureau codified Regulation Z using the same language at 12 C.F.R. § 1026, including the disclosure requirement. 12 C.F.R. § 1026.7(b)(12)(i) ("Repayment disclosures …. [F]or a credit card account under an open-end (not home-secured) consumer credit plan, a card issuer must provide the following disclosures on each periodic statement …."). Since 2011, the Bureau has left the language limiting the mandatory disclosures to credit card accounts unchanged. *Compare* 12 C.F.R. § 226.7(b)(12)(i) *with* 12 C.F.R. § 1026.7(b)(12)(i).

In this case, Lopez has a general purpose open-end credit account that is not a credit card account, so the Banks are exempt from providing minimum payment disclosures. 12 C.F.R. § 1026.7(b)(12)(i); *see* 75 Fed. Reg. at 7677; CFPB Amicus Br. at 3–4. The parties agree that Lopez had an open-end credit account with the Banks that was not associated with a credit card. Compl. ¶ 12; Pl.'s Resp. at 3; Def.'s Br. at 4. Lopez argues that Regulation Z only states positively that issuers of credit cards must make disclosures but does not exempt other open-end credit arrangements from those requirements. Pl.'s Resp. at 3. But as discussed above, the Board's explanations of Regulation Z from 2009 and 2010 make clear that the rule limits the disclosures to credit card accounts *and exempts* other products like general purpose open-end lines of credit. 74 Fed. Reg. at 5335, 5337; 75 Fed. Reg. at 7677–78. Once rulemaking authority was transferred to the Bureau, the Bureau maintained Regulation Z's

9

exemption to the disclosure requirements. *See* 76 Fed. Reg. at 79768; 81 Fed. Reg. at 25324; CFPB Amicus Br. at 6.

Though TILA itself sets forth a minimum disclosure requirement for all open-end consumer credit plans, it also gave the Board—and now, the Bureau—statutory authority to issue regulations and exempt classes of transactions. 15 U.S.C. §§ 1637(b), 1604(a) ("The Bureau shall prescribe regulations to carry out the purposes of [TILA] ... and may provide for such adjustments and exceptions for all or any class of transactions, as in the judgment of the Bureau are necessary or proper to effectuate the purposes of [TILA]"), 1604(f)(1) ("The Bureau may exempt, by regulation, from all or part of this subchapter all or any class of transactions ... for which, in the determination of the Bureau, coverage under all or part of this subchapter does not provide a meaningful benefit to consumers in the form of useful information or protection."). When the Bureau exempts a class of transactions, it must consider multiple factors and "publish its rationale at the time a proposed exemption is published for comment." 15 U.S.C. § 1604(f)(2). Lopez contends that the amended Regulation Z does not exempt general purpose open-ended lines of credit because it "does not on its face state that anything is being exempted." Pl.'s Resp. to CFPB Reply at 2. But TILA does not require the Board to use the word "exemption" or "exception" in the regulation. *See* 15 U.S.C. §§ 1604(a), 1604(f). The language of the regulation specifically requires disclosures "for a credit card account under an open-end (not home-secured) consumer credit plan," and the Board's final rulemakings, adopted by the Bureau, explain that this requirement exempts all other kinds of accounts. 12 C.F.R. § 1026.7(b)(12)(i); 74

10

Fed. Reg. at 5335, 5337; 75 Fed. Reg. at 7677–78; CFPB Amicus Br. at 5–6; CFPB Reply at 1–3.

Lopez also argues that the Board's explanations of the rules in the Federal Register do not amount to "regulations" under 15 U.S.C. § 1604. Pl.'s Resp. at 4. But the Board—and now the Bureau—has the authority to promulgate regulations and exercised that authority to limit the disclosure requirement in final rulemakings. *See* 15 U.S.C. § 1604(a); 12 C.F.R. §§ 1026.7(b)(12)(i), 226.7(b)(12)(i). "[T]he Supreme Court has emphasized the broad powers that Congress delegated to the Board to fill gaps in [TILA]." *Ortiz v. Rental Mgmt., Inc.,* 65 F.3d 335, 339 (3d Cir. 1995) (citing *Mourning v. Fam. Publ'ns Serv., Inc.*, 411 U.S. 356, 365 (1973); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559–60 (1980)). The Supreme Court recognized that Congress "entrust[ed] [the Act's] construction to an agency with the necessary experience and resources to monitor its operation" and specifically delegated to the Board "broad authority to promulgate regulations necessary to render the Act effective." *Mourning,* 411 U.S. at 365. Moreover, the Board not only had the power to promulgate regulations, but also served as "the primary source for interpretation and application of truth-in-lending law." *Ford Motor Credit Co.*, 444 U.S. at 566.

Though Lopez argues that the Board's explanations of Regulation Z are mere "statements," Pl.'s Resp. at 4, the final rule exempting non-credit-card accounts is indeed codified. *See* 12 C.F.R. § 1026.7(b)(12)(i). In this particular statutory and regulatory context, the Supreme Court has held that agency rulemaking and interpretation are legitimate sources of authority. *Ford Motor Credit Co.*, 444 U.S. at 567–68

11

(stating that TILA's "§ 1640(f) signals an unmistakable congressional decision to treat administrative rulemaking and interpretation under TILA as authoritative"). More generally, the Supreme Court has also held that rules issued through a notice-and-comment process have the "force and effect of law." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015). The 2009 and 2010 final rules went through the notice-and-comment process. 74 Fed. Reg. at 5245–5246; 75 Fed. Reg. at 7658–7659. The Bureau also received comments after publishing the 2011 interim final rule and considered those comments when adopting the 2016 final rule. 81 Fed. Reg. at 25323.

A second, albeit implicit, argument in Lopez's briefing is that even if there is a regulation narrowing the disclosure requirement, it is inconsistent with TILA and thus not a valid regulation at all. *See* Pl.'s Resp. to CFPB Amicus Br. at 1–2 (citing *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024)). But this argument is improperly raised against the Banks in this case. Lopez did not challenge the lawfulness of the Bureau's regulation under the Administrative Procedure Act, 5 U.S.C. § 706, which would put at issue the arguments over statutory interpretation and regulatory policy underlying the exemption of non-credit-card accounts from the disclosure requirements. Instead, Lopez sued the Banks for allegedly violating TILA's disclosure requirements. Because there is a regulation exempting Lopez's account from the TILA disclosure requirements, Lopez has failed to state a claim against the Banks.

As a final point, TILA imposes civil liability only on those creditors that fail to comply with the Act. 15 U.S.C. § 1640(a). This liability does not "apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation

12

thereof by the Bureau." 15 U.S.C. § 1640(f). The purpose of § 1640(f) was to "relieve the creditor of the burden of choosing between the Board's construction of the Act and the creditor's own assessment of how a court may interpret the Act." *Ford Motor Credit Co.*, 444 U.S. at 567 (cleaned up). The Banks' omission of minimum repayment disclosures for Lopez's account is consistent with Regulation Z. 12 C.F.R. § 1026.7(b)(12)(i). Lopez has failed to state a TILA claim as a matter of law, so the Banks' motion to dismiss is granted.

### B. The Fraud Act

Lopez claims that the Banks violated the Illinois Consumer Fraud Act by intentionally omitting the (allegedly required) TILA disclosures to induce customers to use highly-priced credit. Compl. ¶¶ 30–32. The Banks move to dismiss the Fraud Act claim because, they argue, they complied with TILA's disclosure requirements. Defs.' Br. at 8. The Banks also argue that even if they did violate TILA, those violations would not automatically rise to a Fraud Act violation, and that Lopez failed to meet the heightened pleading standard for fraud claims. R. 17, Defs.' Reply at 5.

To bring a cause of action under the Fraud Act, Lopez must adequately allege, with particularity, that "(1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception." *Davis v. G.N. Mortg. Corp.,* 396 F.3d 869, 883 (7th Cir. 2005). The Fraud Act prohibits "unfair or deceptive acts or practices … in the conduct of any trade or commerce." 815

13

ILCS 505/2. The Act also provides an exemption for "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1).

In his briefing, the sole argument that Lopez makes in support of his Fraud Act claim is that the Fraud Act claim "follows" from the violation of TILA. Pl.'s Resp. at 5. As explained above, however, Lopez has failed to state a TILA claim. According to the Supreme Court of Illinois, "conduct which is authorized by Federal statutes and regulations, such as those administered by the Federal Reserve Board, is exempt from liability under the Consumer Fraud Act." *Lanier v. Assocs. Fin., Inc.*, 499 N.E.2d 440, 447 (Ill. 1986). In particular, Illinois law does not impose greater disclosure requirements than those required by federal law. *Id.*; *see Jenkins v. Mercantile Mortg. Co.*, 231 F. Supp. 2d 737, 752 (N.D. Ill. 2002); *MorEquity, Inc. v. Naeem*, 118 F. Supp. 3d 885, 893 (N.D. Ill. 2000). Lopez does not make any Fraud Act allegations beyond the disclosure issue, and, as explained above, the Banks complied with Regulation Z's disclosure requirements. Lopez has thus failed to state a Fraud Act claim as a matter of law.

Generally, when all federal claims are dismissed from a case, "there is a presumption that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (per curiam); *see* 28 U.S.C. § 1367(c)(3). But because Lopez's Fraud Act claim is premised entirely on his TILA claim and he does not include any other allegations of deception

14

beyond the disclosure issue, the Bank's motion to dismiss the Fraud Act claim is also granted.

## IV. Conclusion

The Banks' motion to dismiss the TILA and Fraud Act claims is granted, and the Complaint is dismissed with prejudice. Having said that, because Lopez did not have a chance to file an amended complaint, the Court invites Lopez to file a prompt motion to vacate the judgment if he believes that there are indeed additional facts that would adequately state a TILA or Fraud Act claim consistent with this Opinion. Given the nature of the dispute—a pure question of statutory and regulatory interpretation—it seems highly unlikely that he can do so (and he did not suggest otherwise in his briefing), but the Court leaves open the possibility. The status hearing of October 4, 2024, is vacated.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 26, 2024